## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Prison Legal News,

    Plaintiff,

        v.

Harley G. Lappin, Director
FEDERAL BUREAU OF PRISONS,

    Defendant.

Civil Action No. 05-1812 (RBW)

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT

Plaintiff, Prison Legal News (PLN), through counsel, respectfully submits this opposition to Defendant's Motion for summary judgment, and moves for summary judgment his favor. Defendant's motion must be denied because judgment in its favor is not supported by the law or the facts of this case. Summary judgment in PLN's favor is justified because no genuine issue of material fact exists, and PLN is entitled to judgment as a matter of law.

### I.  STATEMENT OF FACTS

PLN is an independent, monthly magazine that reports on legal and political matters involving the criminal justice system. PLN is incorporated as a nonprofit corporation under §501(c)(3) of the Internal Revenue Code. Ex. 6. Declaration of Paul Wright (Wright Dec.) ¶12. PLN's mission includes educating the public about prison conditions and encouraging the vindication of fundamental human and civil rights through the justice system. PLN is distributed

nationally, and has been recognized by courts in Florida,[1] Colorado,[2] Kansas,[3] Oregon,[4] and Washington state[5] as a nationally-circulated periodical protected by the first amendment.  PLN has been regularly published since 1990.  Wright Dec. ¶3-4.  Exhibit 7.

PLN has a circulation of approximately 4,500.  PLN's subscribers include practicing attorneys, publishers, academics, prisoners, federal courts, law libraries, and government agencies in all 50 states.  PLN is a publication known for its expertise in prison litigation.  Affidavit of Fred Cohen (Cohen Aff.)¶4.  Declaration of David Fathi (Fathi Dec.) ¶3.  Wright Dec. ¶7.  PLN's subscribers consider the publication a useful source of news and information on prison litigation.  Cohen Aff. ¶4.  Fathi Dec. ¶3.  Wright Dec. ¶7.

PLN maintains a web page to assist in distributing its materials.  Subscribers who access this web site may download articles from back issues of PLN at no further cost.  Prior to January, 2005, when PLN began charging non-subscribers for the download of back issues, as many as 60,000 visitors would access the site per month.  Wright Dec. ¶8.  Throughout 2005, PLN's website underwent substantial revision and redesign.  During the website redesign, the number of visitors dropped substantially.  PLN now averages 2,700 visitors per month.  Id.  However, some

---

[1] Prison Legal News v. Crosby, No. 3:04-cv-14-J-16TEM.(D. Fla., Nov. 16, 2004)(order denying summary judgment.)

[2] Prison Legal News v. Hood, No. 03-D-2516(PAC) (D.Colo, Nov. 12, 2004) (order denying motion to dismiss.)

[3] Waterman v. Commandant, 337 F. Supp. 2d 1237 (D. Kan. 2004).  Prison Legal News v. Simmons, LEXIS 29233 (D. Kan. 2005).

[4] Prison Legal News v. Cook, 238 F. 3d 1145 (9th Cir. 2001)

[5] Miniken v. Walter, 978 F Supp. 1356 (E.D. Wash. 1997).  Prison Legal News v. Lehman, 272 F. Supp. ed 1151 (W.D. Wash. 2003).

recent issues are available to visitors without subscription privileges. *See* Ex. 7, printout of PLN's visitor's download area.

On August 6, 2003, PLN requested documents from the Bureau of Prisons (BOP) pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2005), documenting all money the BOP paid in lawsuits and claims against it between January 1, 1996, up to and including July 31, 2003. Exhibit 1. PLN asked for a copy of the verdict or settlement in each case identifying the dollar amount of damages, the plaintiff's or claimant's identity and identifying information (i.e., names, docket number, court) for each lawsuit, administrative claim, and/or attorney fee award. PLN declared it would "analyze and distribute this information in our print magazine as well as on our website...." PLN also requested a copy of the complaint or other documents describing the facts of the case. Finally, PLN requested a fee waiver for processing its request and providing copies of the relevant documents.

On September 9, 2003, the BOP denied PLN's request for a fee waiver, stating that "(PLN) did not explain how this information would be of public interest." Exhibit 2. The BOP requested PLN pay $6,944.00 for search and review of the requested documents. The BOP stated that any costs incurred to actually copy any responsive documents would be in addition to this amount.

On October 20, 2003, PLN appealed the fee waiver denial to the United States Department of Justice (DOJ). Exhibit 3. In its appeal, PLN described how the requested information would help the public identify problems in specific BOP facilities and programs, and would provide an important overall measure of program efficiency and effectiveness within BOP. PLN stated:

> At this point BOP is the largest prison system in the country and imprisons almost 200,000 people and has facilities in almost every state along with a growing budget. Litigation against government agencies is an important barometer of how well managed, or badly run as the case may be, the agency may be as well as illustrating trends and patterns of abuse or other forms of mismanagement.

Ex. 2, p.1. The letter went on to state:

> We believe that it is simply a matter of common sense that the public is greatly interested in the amount and manner in which their tax money is spent, especially when it involves litigation payouts to prisoners, agency employees and contractors.

Ex. 2, p. 2.

PLN's letter noted that federal courts recognized this public interest when other media organizations requested similar information. Id. The letter further noted that the BOP did not attempt to contact PLN or discuss the public interest issue before denying the request.

On May 23, 2005, the DOJ denied PLN's appeal. Exhibit 4. DOJ's decision changed the rationale for denial of the fee waiver. Instead of denying a public interest in the topic, DOJ stated that the fee waiver had been properly denied because PLN had not "demonstrated that it has both the intent and the ability to disseminate the requested records to the general public." Ex. 4, p. 1.

The DOJ based this assertion on one visit to PLN's website, noting that the last issue posted to the website was seven months old. Id. DOJ also stated that "dissemination through a web site is simply a way of making the information passively available and...does not meet the burden of demonstrating...that the information will be distributed to the public."[6] Ex. 4, p. 2. The letter did not mention PLN's print magazine or number of subscribers.

---

[6] The May 23, 2005, letter did not mention site traffic or the number of visitors as a reason for denial.

The DOJ also asserted that some of the requested records, specifically complaints, verdicts, and some settlements, were publicly available. "Because these records are publicly available, the level of the public's understanding would not be enhanced to a 'significant' extent...by their disclosure to PLN." Ex. 4, p.2.

On September 15, 2005, PLN filed this lawsuit seeking injunctive and declaratory relief. On November 30, 2005, Defendant BOP filed the current motion for summary judgment.

## II.  LEGAL STANDARDS

### A.  Summary Judgment Standard.

Summary judgment is appropriate when the record shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Fed.R.Civ.P. 56(c).  The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A genuine issue is one that, if resolved, could establish a claim or defense, affecting the action's outcome. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

The substantive law determines materiality.  Id.  While the court must view all facts in the light most favorable to the non-moving party, Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970), doing so in this case does not defeat PLN's cross motion for summary judgment.

### B.  The Freedom of Information Act.

The Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2005) *et. seq.*, requires waiver of fees for production of documents when furnishing such information is in the public's interest, and is not primarily in the commercial interest of the requester.  5 U.S.C. § 552(a)(4)(A)(iii).  A requester must satisfy a six-factor test to qualify for a fee waiver.  These factors are further

identified with one of two "prongs" related to either the public interest, or the commercial interest in the information.

Under the "public interest" prong, the Agency must examine whether the requested information is likely to contribute significantly to public understanding of the operations or activities of the government. *See* Id.  Four factors are used to make this determination.

First, the information requested must concern identifiable "operations or activities of the government." Id.  Second, the requested information must be "likely to contribute" to the public's understanding of those activities or operations. Id.

Third, the disclosure of the information must contribute to the understanding of the public at large. Id. Under this factor, agencies should evaluate the identity and qualifications of the requester- *e.g.*, expertise in the subject area of the information, and the intent and ability to disseminate it to the public. *See* McClain v. United States Dep't of Justice, 13 F.3d 220, 221 (7th Cir. 1993) (stating fee waiver must be assessed in light of identity and objectives of requester); Larson v. CIA., 843 F.2d 1481, 1483 (D.C. Cir., 1988) (holding inability to disseminate information to public is sufficient basis for denying fee waiver request).

Lastly, the disclosure must contribute "significantly" to public understanding of government operations or activities.  *See* 5 U.S.C. § 552(a)(4)(A)(iii). Determining whether the level of public understanding is likely to be significantly enhanced by the disclosure of the requested information is an objective valuation.  Ettlinger v. FBI, 596 F.Supp. 867, 877 (D. Mass. 1984). Agencies are not allowed to make subjective determinations of whether the information is considered "important" enough to be made public. Id.

If the public interest requirement is satisfied, the requested information must not be primarily in the commercial interest of the requester (the "commercial interest" prong).  *See* 5 U.S.C. § 552(a)(4)(A)(iii).  Two factors are used to make this determination.  First the agency must determine if any commercial interest of the requester would be served by disclosure.  Second, the agency must weigh any commercial interest against the public interest in disclosing the information.  The agency must grant the fee waiver if the public interest outweighs the requester's commercial interest in the information.  Larson, at 1483 (citing McClellan Ecological Seepage Situation v. Carlucci, 835 F2d 1282, 1285 (9th Cir.. 1987)).

### III.  ARGUMENT

### A.   PLN Is Entitled to Judgment as a Matter of Law.

PLN meets all of the criteria for a fee waiver.  PLN satisfies the public interest prong because the requested documents relate to government operations, and PLN has specifically described how disclosure will significantly contribute to the public's understanding of the government.  Defendant admits that PLN has no significant commercial interest outweighing the public's interest in the requested information.

### 1.      Public Interest Prong

The DOJ admits that the requested documents concern the "operations or activities" of the government.  Ex. 4, p.1.  ("...the records you seek concern in part the operations or activities of the BOP...")  PLN requested documents related to payment of public monies in disputes between members of the public, inmates, and government officials, and between BOP employees or contractors, and government officials.

The requested documents are "likely to contribute" to the public's understanding of government operations and activities. The documents will describe a wide range of events related to governmental operations or activities, including accidents causing personal injury, employment or enforcement actions violating the civil rights of employees or inmates, and disputes with private contractors. PLN limited its request to those instances where BOP made payments to third parties because those cases had shown proved useful in similar investigative stories in the past. Wright Dec. ¶12.

The public at large will benefit from disclosure. PLN is a publication recognized for its expertise in prison litigation. Cohen Aff. ¶4. Fathi Dec. ¶3. Wright Dec. ¶7. PLN declared its intent to analyze this information and publish it in both the print and online editions of *Prison Legal News*. Ex. 1, Ex. 3. Wright Dec. ¶12. PLN has a proven ability to distribute the information to members of the public who can use it to affect policy and educate others. Cohen Aff. ¶1-2, 4. Fathi Dec. ¶1-3. PLN's circulation of 4,500 includes judges, lawyers, academics, journalists, libraries, law libraries, law schools, universities, prison and jail officials, and prisoners in all 50 states. Wright Dec. ¶5 Publication to this group of people is more than sufficient to establish benefit to the public.

Disclosure of these documents will significantly contribute to the public's understanding. PLN requested documents covering a period of more than six years from BOP facilities across the country. The information contained in the requested materials is precisely the kind of information which will allow PLN, and others, to make specific assessments regarding specific institutions and programs. Cohen Aff. ¶5. Fathi Dec. ¶4. Wright Dec. ¶12. The description of incidents in which BOP has paid damages makes it highly likely that these documents will also

provide information useful to address current problems, assess the effectiveness of specific programs, and curb future abuses at specific facilities. Cohen Aff. ¶5. Fathi Dec. ¶4. Wright Dec. ¶12.

The public's understanding will be significantly enhanced by PLN's publication of this information. The information PLN requested is exactly the kind of information a researcher, attorney, or reporter would find useful in assessing the performance of a government agency. Cohen Aff. ¶5 Fathi Dec. ¶4. Affidavit of Ken Silverstein (Silverstein Aff.) ¶2 Affidavit of Ian Manuel Urbina (Urbina Aff.) ¶3. Wright Dec. ¶12. PLN's FOIA request concerns disbursements of tax dollars as a result of alleged or adjudicated wrongdoing by government officials. This information is of obvious importance to the public's understanding of the government.

**2.     Commercial Interest Prong**

The BOP admitted in its May 23, 2005, letter that "PLN does not appear to have an overriding commercial interest in the records." Ex. 4, p. 1. Nothing in the record challenges PLN's assertion that it has no commercial interest in the requested material. The court should consider this part of the fee waiver test satisfied. Larson, *supra.* at 1484.

<strong>B.  The Agency's Motion for Summary Judgment Must Be Denied.</strong>

**1.     Harley Lappin is a Proper Defendant**

Defendant Lappin is a proper defendant in this action. PLN sued Mr. Lappin in his official capacity as the chief administrative officer of the BOP. Mr. Lappin has the power to grant PLN's request for a fee waiver. Bureau directors have been held to be proper defendants in cases before other courts. Gabrielli v. United States Dep't of Justice, 594 F. Supp. 309, 311

(N.D. N.Y. 1984), relying on <u>Williams v. Federal Bureau of Investigation</u>, 730 F.2d 882 (2d Cir.

1984), and, <u>Hamlin v. Kelly</u>, 433 F. Supp. 180, 181 (N.D.Ill.1977).

**2.    DOJ Improperly Analyzed the Benefits to the Public.**

      **a.    The Documents are Best Available Through BOP.**

The BOP improperly denied PLN's FOIA fee waiver request when it stated that "a

portion of the records requested [are] publicly available." Ex. 4, p. 2.  The BOP claimed that

disclosure to PLN was not "likely to contribute" (under the second test of the public interest

prong) in any "significant" manner (under the fourth test) to the public's knowledge.

The BOP has not demonstrated that this alleged availability has led to the public's

understanding the requested information.  Moreover, Defendant's own denial letter contradicts

the arguments presented in their motion.  Defendant states, "[The requested] documents are

available to any individual utilizing a simple legal search, commercial or even free search

services via the internet." Memorandum of Points and Authorities in Support of Defendant's

Motion for Summary Judgment (Def. Memo), at 9.   The denial letter admits that not all of the

requested documents are available from other sources.  Ex. 4, p. 2.  The portion of the documents

which are publicly available is limited.  Cohen Aff. ¶6.  Fathi Dec. ¶5.  Wright Dec. ¶9-10, 14.

The availability of some documents through the internet or public courthouses does not mean the

documents are in the "public domain" under FOIA.

The rationale offered by the Defendant was explicitly rejected in <u>Fitzgibbon v. Agency

for International Development,</u> 724 F. Supp. 1048 (D.D.C. 1989).  In <u>Fitzgibbon</u>, the requester

asked for a waiver of fees for copying annual reports on DOJ's FOIA compliance since the

1970's.  The agency denied the request claiming that the requested information was publicly

available in its reading rooms.  The DOJ asserted that the reports availability in its reading rooms

placed the material in the public domain, and further dissemination was not likely to significantly

contribute to the public's understanding of the operations and activities of government.

> The <u>Fitzgibbon</u> court rejected the agency's arguments.  The court stated:

> The availability of FOIA material in an agency's public reading room does not
> thrust the material into the public domain.  The public's awareness of information
> that, for all practical purposes, may be warehoused in an agency's reading room in
> the District of Columbia is likely to be dim at best, particularly to a resident in the
> wilds of western Montana.

<u>Fitzgibbon</u>, 724 F. Supp. at 1051.[7]  *See also,* <u>Carney v. United States Department of Justice</u>, 19

F.3D 807 (2d Cir. 1994) (Fee waiver appropriate though the records had previously been released

to others.)  <u>United States Department of Justice v. Reporters Committee for Freedom of the</u>

<u>Press</u>, 489 U.S. 749, 764 (1989).  ("There is a vast difference between the public records that

might be found after a diligent search of courthouse files...and a computerized summary located

in a single clearinghouse of information.")

With respect to information on litigation against the BOP, the public faces an even larger

problem than the one described in <u>Fitzgibbon</u>.  Outside of the BOP, publicly available

information is not located in one reading room, but is scattered throughout the state and federal

courts.  The BOP is the only place where all of this information is gathered and cataloged

together.  Cohen Aff. ¶6.  Fathi Dec. ¶5.  Wright Dec. ¶9-10, 14.

The BOP provides no evidence that the requested documents are available "to any

individual utilizing a simple legal search, commercial or even free services via the internet." Def.

---

[7] The court also held that release to Congress, selected media attention, and limited public distribution by
the agency were insufficient to make the information "publicly available" under FOIA.  <u>Fitzgibbon</u>, at 1050.

Memo, at 7. Administrative complaints, most settlements, and even some litigation complaints,[8]

are unavailable using internet research tools. Cohen Aff. ¶6. Fathi Dec. ¶5. Wright Dec. ¶9-10,

14. Searches of these sources would not yield the complete information available through BOP.

**b.    PLN Described the Public Benefit in Detail.**

PLN's letters to the BOP and DOJ described with specificity how the requested

information would benefit the public interest. In its August 6, 2003, letter PLN made this

connection three times:

> We believe that the requested documents will shed light on the operations of the
> BOP and help provide the public with a better understanding of how the nation's
> prison system is run and managed since damage verdicts and settlements are an
> important means of measuring respect for constitutional rights within penal
> facilities. Moreover, the payout of government money is a strong indicator to tax
> payers of how government facilities are operated.

> Successful litigation by prisoners, employees, and other claimants highlights
> shortcomings within the penal system and can help propel reform and progressive
> change.

and

> How the BOP operates its prisons on behalf of the nation's citizens and taxpayers
> and how it manages its liability are issues of important public interest and to our
> knowledge have not been reported in any other journalistic venue.

Ex. 1 at 1-2.

PLN's October 20, 2003, letter further established the required link between the public

interest and the requested information. The letter stated:

> At this point the BOP is the largest prison system in the country and imprisons
> almost 200,000 people and has facilities in almost every state along with a
> growing budget. Litigation against government agencies is an important

---

[8] *See e.g.* the docket for *Kister v. Ramsey*, 01-cv-807 (RBW)(D.D.C. settled, July 18, 2005). Neither the complaint, nor the settlement for this case are available on PACER.

barometer of how well managed, or badly run as the case may be, the agency may be as well as illustrating trends and patterns of abuse or other forms of mismanagement.

and

We believe that it is simply a matter of common sense that the public is greatly interested in the amount and manner in which their tax money is spent, especially when it involves litigation payouts to prisoners, agency employees and contractors.

Ex. 3, 1-2. PLN also points out that it is standard journalistic practice to review government litigation awards, and to describe specific instances where courts have forced disclosure of government litigation settlements. Id.

Defendant relies on Judicial Watch v. U.S. Department of Justice, 133 F.Supp.2d. 52 (D.D.C. 2000), to support their denial of a fee waiver. This reliance is completely misplaced. In Judicial Watch the requester asked for a "blanket" fee waiver of both search and copying fees. The Court held that the requestor was a "representative of the news media" and was thus entitled to a waiver of search fees under 5 U.S.C. §552(a)(4)(A)(ii)(II). Id. at 54.

Judicial Watch supports PLN's request for a waiver of the $6,944.00 in search and review fees demanded by Defendant. PLN is clearly a part of the news media. PLN asserted it was representative of the media at all stages of its FOIA request. Ex. 1 ("We are a serious legal and political journal that reports on news and litigation involving detention facilities. We have published monthly since 1990 and currently have around 3,400 subscribers in all 50 states"), Ex. 3 ("PLN is a publication which covers nothing but prison and jail issues, including litigation..."). Therefore, under Judicial Watch, the agency cannot charge for search or review costs.

Defendant also argues that Judicial Watch supports their assertion that PLN cannot be

granted a fee waiver, presumably for copying fees, because PLN has provided only "broad

conclusions that the information can be used to identify the agency's respect for constitutional

rights and the manner in which the agency operates." Def. Memo at 8. Defendant claims that

PLN does not meet the "reasonable specificity" standard cited in Judicial Watch. Id.

The "reasonable specificity" standard relied on by the Judicial Watch court was originally

described in Larson v. CIA, supra. In Larson, the court denied a fee waiver for information

relating to a KGB defector because the requestor provided no information on his means of

disseminating the requested documents, his purpose for the seeking the material, or his contacts

with major newspaper companies. Larson, at 1484.

In Judicial Watch, the requester asked for government documents related to the high

profile custody battle over Elian Gonzales. The requester stated that a waiver was justified

because disclosure of this information might "promote accountable government ... by

disseminating relevant information" that would "benefit the public by identifying areas for future

reform as well as deterring future abuses that could otherwise proliferate without scrutiny."

Judicial Watch, at 54. The court found that these assertions did not meet the "reasonable

specificity" standard. Id.

The specific and unambiguous nature of PLN's FOIA request distinguishes it from the

requests made by the plaintiffs in Larson and Judicial Watch. PLN described, both in its initial

request, and its appeal, how it met every element of the FOIA standards. As is described above,

PLN requested information related to a number of specific abuses and events at specific

institutions. PLN explicitly described this connection between the information and the public

interest in no fewer than five passages in its two letters to BOP. The facts surrounding these

incidents will shed light on any past or current problems at those institutions, not the speculative "future reform" or "future abuses" cited by the plaintiff in <u>Judicial Watch</u>.  For example, the request for complaints and verdicts in litigation where plaintiffs were paid money damages would provide information on specific instances where government officials were found legally liable for civil rights violations or other injuries.  Justifying payment of government funds is a cornerstone of accountable government.  The larger volume of information than was requested in <u>Judicial Watch</u> will allow PLN, and the public, to assess whether there are any patterns or practices which deserve further research, study, or reform.

### c.    DOJ's Inquiry into PLN's Circulation was Insufficient

The DOJ did not conduct a proper inquiry into PLN's ability to distribute the requested documents.  As a result, the DOJ's claim that PLN has not demonstrated the "intent and ability" to disseminate the requested documents is unsupported by the evidence.

In both its August 6, 2004 and October 20, 2004, letters, PLN stated that it intended to analyze and publish the requested information.  PLN further stated that it had a print circulation of 3,400 subscribers in the corrections field, with estimated total readership of 18,000 persons. These subscribers include prison administrators, judges, attorneys, and policy makers interested in prison issues.  In addition, PLN stated that it also intended publish the information through its website.  DOJ's May 23, 2005, denial letter cited no direct evidence challenging PLN's print circulation figures.  Instead, DOJ ignored PLN's print distribution claims, and focused exclusively on the content of PLN's website.

BOP made an impermissible judgment of PLN's ability to distribute information when it determined that PLN's website content formed a basis for upholding denial of a fee waiver.  The

content of PLN's web site does not call PLN's print circulation figures into question. Website content has nothing to do with circulation figures. DOJ made no attempt to contact PLN to discuss why more materials were not available on its website, whether PLN was still in publication, or any other matter. Wright Aff. ¶15. Instead, DOJ assumed that PLN not "viable" based on this one website visit.

Beginning in January, 2005, PLN redesigned its website. PLN experienced a precipitous decline in visitors during the construction of its new website. DOJ's search of PLN's website took place over three years after the initial request in which PLN claimed 60,000 monthly visitors. Had the BOP contacted PLN to discuss this apparent discrepancy, PLN could have provided an appropriate explanation. PLN could also have provided the BOP with back issues, documents and references attesting to PLN's status as a leading publication in its field and its continued publication. *See, e.g.* Ex. 5, Ex. 6, Cohen Aff. ¶4, Fathi Aff. ¶3.

DOJ cited the fact that the latest issues of PLN were not posted on PLN's website. Ex. 4, pp. 1-2. This does not support a finding that PLN is not "viable." Limiting the amount of material available for public download is necessary for a paid access website.

Despite the obvious financial loss it represents, PLN does allow access to a limited number of back issues by non-subscribers. See Ex. 7, showing links to the June, July, and August, 2005 issues of PLN. However, the public download page also lists all of the issues of PLN, dating from 1990 to the present, available for subscribers.

**d.    Defendant's Exhibit Should be Excluded.**

In support of their claims that PLN is not viable Defendant offers "Exhibit E," an alleged screen shot of PLN's web site. Def. Memo at 10. This material is irrelevant. DOJ's March 23,

2005, letter did not claim that web site traffic was connected to its decision.  As such, it cannot

be considered part of the administrative record, and should not be considered by this Court.  5

U.S.C. §552(a)(4)(A)(vii).

## IV.  HEARING REQUEST

PLN requests an oral argument on its motion.

## V.  CONCLUSION

In light of the above, this Court should deny Defendant's Motion for Summary Judgment,

and grant Plaintiff's Cross Motion for Summary Judgment.


Respectfully submitted,


Dated: December 30, 2005          By: _____/s/_____
                                      Edward J. Elder
                                      Bar No. 460588
                                      Klimaski & Associates, P.C.
                                      1819 L Street NW
                                      Suite 700
                                      Washington, DC  20036
                                       202-296-5600

                                      Attorney for Prison Legal News

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Prison Legal News,

  Plaintiff,

    v.

Harley G. Lappin, Director
FEDERAL BUREAU OF PRISONS,

  Defendant.

Civil Action No. 05-1812 (RBW)

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Pursuant to Fed. R. Civ. P. 56(e) and Local Rule 7.1(h), plaintiff Prison Legal News, through counsel, respectfully submits the following Statement of Material Facts Not in Dispute.

1.  On August 6, 2003, Prison Legal News (PLN) requested documents from the Bureau of Prisons (BOP) pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2005), documenting all money the BOP paid for lawsuits and claims against it between January 1, 1996, up to and including July 31, 2003. PLN also requested supporting documents providing details of the facts underlying these claims. PLN asked for a fee waiver for processing its request and providing copies of the relevant documents, and described the reasons a waiver should be granted. Exhibit 1.

2.  On September 9, 2003, the BOP denied PLN's request for a fee waiver, stating that "(PLN) did not explain how this information would be of public interest." The BOP demanded PLN pay $6,944.00 for search and review of the requested documents. The BOP also stated that any costs incurred to actually copy any responsive documents would be in addition to this amount. Exhibit 2.

3.      On October 20, 2003, PLN appealed this denial of the fee waiver to the United

States Department of Justice (DOJ).  In its appeal PLN further described the public

interest in the documents.  PLN also requested any decision upholding the denial specify

all reasons the denial should stand.  Exhibit 3.

4.      On May 23, 2005, the DOJ denied PLN's appeal.  On appeal, DOJ stated that the

fee waiver was properly denied because PLN had not demonstrated the intent and ability

to disseminate the requested information to the general public, and because the

documents were already in the public domain.  DOJ admitted that the requested

documents concerned the operations and activities of the government, that PLN had no

commercial interest in the requested documents, and that much of the information was

not publicly available. Exhibit 4.

5.      The documents requested by PLN are meaningfully informative and likely to

contribute to the public's knowledge.  Cohen Aff. ¶4-5. Fathi Dec. ¶4.  Silverstein Aff.

¶2.  Urbina Aff. ¶3. Wright Dec. ¶12.

6.      The disclosure of the requested information will contribute to the knowledge of

the public at large because it will be published to persons interested in the legal and

policy issues of the corrections field.  Cohen Aff. ¶3-4. Fathi Dec. ¶3.  Wright Dec. ¶4-8.

7.      Disclosure of the information in question will allow PLN to assess the

effectiveness of government activities and operations.  Cohen Aff. ¶5. Fathi Dec. ¶4.

Silverstein Aff. ¶2.  Urbina Aff. ¶3. Wright Dec. ¶12.

8.      Documents related to administrative claims, and many settlements are only

available through the BOP.  Ex. 4.  Cohen Aff. ¶6. Fathi Dec. ¶5.  Wright Dec. ¶9-10, 14.

9.           The BOP is the only agency where all of the requested information is collected.

Ex. 1.  Cohen Aff. ¶6. Fathi Dec. ¶5.  Wright Dec. ¶10, 14.

10.         In January, 2005, PLN redesigned its website.  During the website's

reconstruction the number of visitors declined to approximately 2,700 visitors per month.

PLN's website was under construction for much of 2005.  Wright Dec. ¶8.

11.         BOP did not contact PLN to verify circulation figures, or inquire about the content

of its website.  Ex. 3, p. 2.  Wright Dec. ¶15.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Prison Legal News,**

       **Plaintiff,**

          **v.**

**Harley G. Lappin, Director**
**FEDERAL BUREAU OF PRISONS,**

       **Defendant.**

**Civil Action No. 05-1812 (RBW)**

## ORDER

Upon consideration of the parties' cross motions for summary judgment, and any oppositions and replies thereto, it is hereby

**ORDERED** that the Defendant's motion for summary judgment is **DENIED**.  It is further

**ORDERED** that Plaintiff's motion for summary judgment is **GRANTED**.  The Defendant, Harley G. Lappin, shall grant the requested fee waiver for all searches and duplication costs associated with Plaintiff's August 6, 2003, Freedom of Information Act request.

The Defendant shall produce the requested documents within 30 days of this order.

Plaintiff is awarded attorneys fees and costs incurred in this case.  Plaintiff's attorney shall submit a bill of costs within 30 days of this order.

_____

Date

_____

Reggie B. Walton
United States District Judge

Copies to Counsel via
the Court's CM-ECF notification system.