UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PRISON LEGAL NEWS,<br><br>    Plaintiff,<br><br>    v.<br><br>HARLEY G. LAPPIN, DIRECTOR, FEDERAL<br>BUREAU OF PRISONS<br><br>    Defendant. | Civil Action No. 05-1812 (RBW) |

**MEMORANDUM OPINION**

    The plaintiff, Prison Legal News ("PLN"), brings this action challenging the Federal Bureau of Prison's ("BOP") refusal to grant a waiver of all search and duplication fees associated with a document request made under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2000). Complaint for Declaratory and Injunctive Relief ("Compl.") ¶¶ B, C. Currently before the Court are the parties' cross-motions for summary judgment directed to the propriety of the BOP's waiver denial.[1] For the reasons set forth below, this Court will grant the plaintiff's motion for summary judgment and deny the defendant's motion for summary judgment.

### I.   Background

    PLN is a legal journal devoted to reporting news and litigation concerning detention facilities. Compl. ¶ 5. On August 6, 2003, PLN submitted a FOIA request to the BOP seeking

---

[1] The following papers have been submitted in connection with these motions: (1) Defendant's Motion for Summary Judgment ("Def.'s Mot.") and its Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."); (2) the Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Cross Motion for Summary Judgment ("Pl.'s Opp'n"); (3) the Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Opposition to Plaintiff's Cross Motion for Summary Judgment ("Def.'s Reply"); and (4) the Plaintiff's Reply to Defendant's Opposition to Plaintiff's Cross Motion for Summary Judgment ("Pl.'s Reply").

"a copy of all documents showing all money paid by the [BOP] for lawsuits and claims against it" between January 1, 1996 and July 31, 2003.  Pl.'s Opp'n, Ex. 1.  Specifically, PLN sought "a copy of the verdict, settlement or claim in each case showing the dollar amount paid, the identity of the plaintiff/claimant and the legal identifying information for each lawsuit or claim or attorney fee award" and "a copy of the complaint . . . or the claim . . . in each incident which describes the facts underlying each lawsuit and claim."  Id.  Additionally, PLN requested a waiver of all fees associated with processing the request and providing it with copies of the responsive documents.  Id.

Under the FOIA, fees will be waived if "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).  To support its request for a fee waiver, PLN provided the following information in its letter to the BOP:

> PLN is a § 501[c](3) non-profit organization.  We are a serious legal and political journal that reports on news and litigation involving detention facilities.  We have published monthly since 1990 and currently have around 3,400 subscribers in all 50 states.  We [e]stimate our actual readership to [be] in the range of 18,000 people.  We believe that the requested documents will shed light on the operations of the BOP and help provide the public with a better understanding of how the nation's prison system is run and managed since damage verdicts and settlements are an important means of measuring respect for constitutional rights within penal facilities.  Moreover, the payout of government money is a strong indicator to tax payers of how government facilities are operated.  The information requested is plainly related to the operations and activities of the BOP.

Pl.'s Opp'n, Ex. 1.  PLN also made clear that, once produced, it would analyze and publish the requested information both in its magazine and on its website.  Id.  In a letter dated September 9, 2003, the BOP denied the fee waiver request because in the BOP's view the PLN request did not

2

"explain how [the requested documents] would be of public interest." Pl.'s Opp'n, Ex. 2. That same letter notified PLN that the estimated cost of accommodating the request was $6,944.00 plus copying fees, but this fee could likely be reduced if PLN reformulated its request. Id.

PLN appealed the BOP's decision to the United States Department of Justice's Office of Information and Privacy ("OIP") pursuant to 28 C.F.R. § 701.16(a) (2000).[2] Pl.'s Opp'n, Ex. 3. In a letter to the OIP dated October 20, 2003, PLN reasserted that the "public is greatly interested in the amount and manner in which their tax money is spent" and that "[m]edia review of government agency pay outs in litigation is a standard journalistic practice." Pl.'s Opp'n, Ex. 3. Nevertheless, on May 23, 2005, the OIP concluded that PLN's request for a fee waiver had been properly denied. Pl.'s Opp'n, Ex. 4. The OIP based its denial on two factors. First, the OIP found that PLN had not "demonstrated that it has both the intent and the ability to disseminate the requested records to the general public." Id. To support this conclusion, the OIP noted that posting information on a website does not, by itself, demonstrate that information will be communicated to the public. Id. Moreover, the OIP concluded that the PLN newsletter was also an insufficient vehicle for distributing information because the PLN website did not contain current copies of the publication. Id. Second, the OIP noted that some of the requested documents, namely complaints and verdicts, were publicly available. Id. Thus, the OIP concluded that "the level of the public's understanding would not be enhanced" by the release of information to which it already had access. Id.

---

[2] In its rejection letter to PLN, Pl.'s Opp'n, Ex. 2, the BOP informed PLN that they could appeal the decision to the OIP pursuant to 28 C.F.R. § 16.9. However, the regulation cited in this opinion is the correct provision.

On September 13, 2005, PLN filed this action seeking declaratory and injunctive relief and an order compelling the defendants to provide it with all documents responsive to its FOIA requests without any cost. Compl. at 1. Both parties have now filed motions for summary judgment. These motions are the subject of this opinion.

## II.   Standard of Review

A motion for summary judgment under Rule 56(c) will be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling on a motion for summary judgment, courts must view the evidence in the light most favorable to the non-moving party. Bayer v. Dep't of Treasury, 956 F.2d 330, 333 (D.C. Cir. 1992). However, the non-moving party cannot rely on "mere allegations or denials . . . but . . . must set forth specific facts showing that there are genuine issues for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citation and internal quotation marks omitted).

## III.   Legal Analysis

The Court is presented with two issues in resolving the motions before it. First, the Court must determine who is the proper defendant in this action. Def.'s Mem. at 5. And, second, the Court must address whether the OIP properly denied the PLN request for a fee waiver. The Court will address each question in turn.

**(A)   Who is the Proper Defendant?**

The defendant claims that the Department of Justice ("DOJ") is the only proper defendant in this FOIA action. Def.'s Mem. at 5. Specifically, the defendant argues that because the BOP is

a component of the DOJ it does not qualify as an "agency" under 5 U.S.C. § 552(f), and therefore, because the DOJ was not named as a defendant, this case should be dismissed. Id. Before confronting that question, the Court must first determine who the plaintiff has named as the defendant. The caption of the plaintiff's complaint lists as the defendant "Harley G. Lappin, Director, FEDERAL BUREAU OF PRISONS." Compl. at 1. The caption would seem to indicate that Harley Lappin is being sued in his official capacity. The text of the complaint, however, asserts a claim against the BOP. Compl. ¶¶ 3, A-C. On the other hand, the plaintiff's pleadings filed in connection with the motions currently before the Court identify Director Lappin as the intended defendant. Pl.'s Opp'n at 9. The plaintiff does not appear to recognize that the two are not interchangeable and that only an agency can be a defendant in a FOIA action. See Jefferson v. Reno, 123 F. Supp. 2d 1, 3 (D.D.C. 2000) (stating that under the FOIA, it is the agency's responsibility to produce the requested documents, and not the responsibility of an individual employee); Astley v. Lawson, No. 89-2806, 1991 WL 7162, at *9 (D.D.C. Jan. 11, 1991) ("[T]he only proper defendants in a FOIA action are the agencies that allegedly improperly withheld documents."); Whittle v. Moschella, 756 F. Supp. 589, 596 (D.D.C. 1991) (citing Petrus v. Bowen, 833 F.2d 581, 583 (5th Cir. 1987) (holding that the Court's jurisdiction is "limited to enjoining agency noncompliance, § 552(a)(4)(B), and consequently no [FOIA] claim may be asserted . . . against individual federal officials"); Sherwood Van Lines v. Dep't of Navy, 732 F. Supp. 240, 241 (D.D.C. 1990) ("The plain language of the statute does not create a cause of action against individual employees of the federal agency."). Despite the inconsistencies in the plaintiff's papers, this Court must conclude that the named defendant in this action is the BOP, as designated in the text of the complaint. Compl. ¶¶ 3, A-C.

  This Court now must determine whether the BOP is the proper defendant, or whether this action should have been commenced against the DOJ. The papers submitted by the parties provide only minimal guidance on this important issue. In fact, the defendant has offered no case authority in support of its position, and the cases cited by the plaintiff provide little useful assistance. Def.'s Mem. at 5-6; Pl.'s Opp'n at 9-10. Under the FOIA, this Court has the power "to enjoin [an] agency from withholding agency records and to order the production of any <u>agency record</u> improperly withheld." 5 U.S.C. § 552(a)(4)(B) (emphasis added). There appears to be some disagreement in this Circuit regarding what constitutes an "agency" as it pertains to the District Court's jurisdiction pursuant to the FOIA. <u>Compare</u> <u>Lair v. Dep't of Treasury</u>, No. 03-827, 2005 WL 645228, at *3 (D.D.C. Mar. 21, 2005) (holding that naming component agencies as the defendant is proper because an agency "need not be a cabinet-level agency" under the FOIA), <u>with</u> <u>Brooks v. Bureau of Prisons</u>, No. 04-0055, 2005 WL 623229, at *2 (D.D.C. Mar. 17, 2005) (holding that only cabinet-level agencies are proper defendants in FOIA actions).

  The FOIA incorporates as part of its definition of the term "agency" the definition found in the Administrative Procedure Act ("APA"), 5 U.S.C. § 551(1) (2000). <u>Cotton v. Heyman</u>, 63 F.3d 1115, 1121 (D.C. Cir. 1995). The FOIA states that the term "'agency' as defined in section 551(1) of this title includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552(f). And the APA defines the term "agency" as "each authority of the Government of the United States, <u>whether or not it is within or subject to review by another agency</u> . . . ." 5 U.S.C. § 551(1) (emphasis added). The District of Columbia Circuit recognized

that "Congress . . . incorporated in FOIA the APA definition . . . of agency to expand, rather than limit, its coverage." Cotton, 63 F.3d at 1121 (upholding District Court's decision that the Smithsonian is an "agency" under the FOIA) (citing Energy Research Found. v. Def. Nuclear Facilities Safety Bd., 917 F.2d 581, 583 (D.C. Cir. 1990) ("Congress sought to encompass entities that might have eluded the APA's definition in § 551(1), which [the] FOIA had incorporated by reference."). The Circuit Court has interpreted the APA definition of "agency" to "confer[] agency status on any administrative unit with substantial independent authority in the exercise of specific functions." Soucie v. David, 448 F.2d 1067, 1073 (D.C. Cir. 1971). There can be no doubt that the BOP exercises "substantial independent authority" in the administration of its more than 106 penal institutions and over the more than 185,000 prisoners who are detained in its facilities. See About the Bureau of Prisons, http://www.bop.gov/about/index.jsp (status as of June 7, 2006). Therefore, the BOP, despite its status as a component agency of the DOJ, is a proper defendant in this FOIA action.

**(B)    Is the Plaintiff Entitled to a Fee Waiver?**

Having concluded that the Court has jurisdiction to hear this case, it must turn now to the issue of whether the plaintiff is entitled to a fee waiver. In determining whether a party is entitled to a fee waiver, "the court shall determine the matter de novo," however, "the court's review of the matter shall be limited to the record [that was] before the agency." 5 U.S.C. § 552(a)(4)(A)(vii).

Generally, the FOIA requires those who request documents to pay for the search and duplication costs. Larson v. CIA, 843 F.2d 1481, 1482 (D.C. Cir. 1988) (citing Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 153 (1980)). However, in certain

situations those costs may be reduced or waived completely. Judicial Watch v. Dep't of Justice, 185 F. Supp. 2d 54, 58 (D.D.C. 2002) ("Judicial Watch II"); see 5 U.S.C. § 552(a)(4)(A)(ii)(II) (fee reduction for requests from educational or noncommercial scientific institutions involved in scholarly or scientific research, or from representatives of the news media); 5 U.S.C. § 552(a)(4)(A)(iii) (fee waiver for requests that are in the public interest). The public interest fee waiver provision of the FOIA provides that "[d]ocuments shall be furnished without any charge . . . if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

The burden of satisfying the "public interest standard" is on the requester. Larson, 843 F.2d at 1483 (citing McClellan Ecological Seepage Situation v. Carlucci, 835 F.2d 1282, 1284-85 (9th Cir. 1987)). Courts employ a two part test to determine whether the requester has satisfied the burden. Id. at 1483. First, the requester must establish that it does "not have a commercial interest in the disclosure of the information sought." Id. (quoting 5 U.S.C. § 552(a)(4)(A)(iii)). Second, the requester must demonstrate "that the disclosure of the information [is] 'likely to contribute significantly to public understanding of the operations or activities of the government.'" Id. (quoting 5 U.S.C. § 552(a)(4)(A)(iii)). The government concedes that PLN has satisfied the public interest requirement, therefore, the Court must only examine the second prong of the test. As to this part of the test, a requester must satisfy four factors:

> (1) the subject of the requested records must concern the "operations or activities" of the government; (2) the disclosure must be "likely to contribute" to an understanding of government operations or activities; (3) the disclosure of information must contribute to the public's understanding; and (4) the disclosure must be likely to contribute "significantly" to public understanding of government operations or activities.

Judicial Watch v. Dep't of Justice, 133 F. Supp. 2d 52, 54 (D.D.C. 2000) ("Judicial Watch I") (citing D.C. Technical Assistance Org. v. Dep't of Housing and Urban Dev., 85 F. Supp. 2d 46, 48-49 (D.D.C. 2000)).  The parties agree that the requested documents concern the "operations or activities" of the government.  Pl.'s Opp'n, Ex. 4 ("[T]he records you seek concern in part the operations or activities of the BOP . . . .").  Accordingly, this Court need only examine whether the PLN request satisfied the second, third, and fourth factors.

    (1)    The Parties' Arguments

The defendant contends that the plaintiff failed to satisfy its burden of establishing that it was entitled to a fee waiver under the second, third, and fourth prongs of the public interest test.  First, the defendant alleges that the requested information is available in the public domain through either the internet or by conducting a search of court records.  Def.'s Mem. at 7.  Therefore, argues the defendant, disclosure of the information would not contribute to an understanding of government operations or activities because it is readily available to the public.  Id.  Second, the defendant opines that PLN has failed to adequately describe the public benefit that will be derived from disclosure because its request was overly broad and lacked reasonable specificity.  Id. at 7-8.  Finally, the defendant argues that the plaintiff has not demonstrated its intent and ability to adequately disseminate the requested records to the general public.  Id. at 8-9. As support for its position, the defendant relies on the OIP's determination that the limited

information contained on the PLN website raised questions about its intent to actually communicate the information and its inability to transmit the requested information to the public. Id. at 9.

The plaintiff responds to the first argument by claiming that only a limited portion of the documents requested are available to the public and although some of the documents may be available on the internet or in courthouses, this does not mean that the documents are in the "public domain" within the context of the FOIA. Pl.'s Opp'n at 10. The plaintiff also takes exception to the defendant's allegation that its request lacked specificity, claiming that the requested documents "related to a number of specific abuses and events at specific institutions" and the connection between the requested information and the public interest was repeatedly and sufficiently communicated. Id. at 14. In response to the defendant's argument that PLN cannot adequately disseminate the requested information to the public, the plaintiff contends that the defendant misjudged the circulation level of PLN's printed material and the number of people who visit its website based on the defendant's review of the information contained on the website. Id. at 15-16. The plaintiff also asserts that it is a representative of the news media and therefore it is, at the least, entitled to a waiver of search and review costs, if not duplication fees, under 5 U.S.C. § 552(a)(4)(A)(ii)(II). Id. at 13-14. The defendant does not explicitly dispute this assertion, but by challenging the plaintiff's ability to disseminate the requested information, the defendant, in effect, challenges the validity of plaintiff's status as a member of the news media. Def.'s Mem. at 8-10.

(2)     Is the Requested Information Readily Available to the Public?

"The mere fact that material is in the public domain does not justify denying a fee waiver; only material that has met a threshold level of public dissemination will not further 'public understanding'. . . ." Campbell v. Dep't of Justice, 164 F.3d 20, 36 (D.C. Cir. 1998). For example, simply because documents are available in an agency's reading room does not negate the fact that their production is likely to contribute to the understanding of government operations or activities. See Schrecker v. Dep't of Justice, 970 F. Supp. 49, 51 n.3 (D.D.C. 1997); Fitzgibbon v. Agency for Int'l Dev., 724 F. Supp. 1048, 1050-51 (D.D.C. 1989) (recognizing the difficulty of accessing an agency's reading room). Here, the Court is compelled to conclude that the requested agency documents are not readily available to the public. The government concedes that at least some of the requested documents are not publicly available. Pl.'s Opp'n, Ex. 4 ("[A] portion of the records requested . . . is publicly available.") (emphasis added). And, to the extent that the remaining documents are available to the public, they are not available in a manner which would further public understanding. First, unlike documents centrally located in a reading room, the publicly available documents responsive to the plaintiff's request are likely dispersed throughout the more than ninety-four federal courthouses in this country.[3] See Schrecker, 970 F. Supp. at 51 n.3. Second, in many cases covered by the PLN requests, the BOP may not be a named party, which would complicate significantly the public's ability to discover those particular cases. See, e.g., Oakes v. Dalius, No. 5:03-CT-498-H, 2003 WL 23857312 (E.D.N.C. July 16, 2003) (prison warden was named defendant in case seeking

---

[3] Although there are ninety-four federal judicial districts, there is more than one courthouse in some districts.

monetary damages for alleged violation of prisoner's right to free speech); Kaiser v. Bailey, No. 01-6151, 2003 WL 21500339 (D.N.J. July 1, 2003) (prison warden was named defendant in case seeking monetary damages for alleged violations of prisoner's First and Eighth Amendment rights); Estrella v. Menifee, No. 02 Civ. 6144, 2003 WL 192177 (S.D.N.Y. Jan. 27, 2003) (prison warden was named defendant in case seeking monetary damages for alleged violations of prisoner's constitutional rights); Indelicato v. Suarez, 207 F. Supp. 2d 216 (S.D.N.Y. 2002) (case manager was named defendant in case seeking monetary damages for alleged violations of prisoner's constitutional rights). Furthermore, it should be noted that this Court's own electronic case filing ("ECF") system did not become operative until 2001, and as a test site for the ECF system this Court was one of the first to employ it. National implementation of the ECF system began in May of 2002 and still continues. See ECF Frequently Asked Questions, http://www.uscourts.gov/cmecf/cmecf_faqs.html (last visited June 16, 2006). Accordingly, the amount of the requested information that could be accessed by the public is drastically reduced for the period between 1996 and the date at which a particular district began to employ the ECF system. Moreover, there are currently thirteen of the ninety-four federal judicial districts that have yet to employ the ECF system. See Courts Accepting Electronic Filings, http://www.uscourts.gov/cmecf/cmecf_court.html (last visited June 16, 2006). In those districts, electronic access to records is restricted for the entire period of the plaintiff's request.

There is a significant difference between locating the requested information in courthouses around the country and on the internet, as opposed to having access to the information in a single document. Cf. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 764 (1989). Publication of the requested information by PLN will therefore

12

contribute far more to public understanding than if the information remains available only in its current status. See Fitzgibbon, 724 F. Supp. at 1051. Accordingly, the plaintiff has established that the requested information is likely to contribute to public understanding of government operations or activities because it has not reached a threshold level of dissemination. See Campbell, 164 F.3d at 36; Fitzgibbon, 724 F. Supp. at 1051.

(3) Was the PLN Request Reasonably Specific?

"The requester of a fee waiver bears the initial burden of identifying, with reasonable specificity, the public interest to be served . . . ." Fitzgibbon, 724 F. Supp. at 1050 (citing Nat'l Treasury Employees Union v. Griffin, 811 F.2d 644, 647 (D.C. Cir. 1987)). Two cases that have examined the reasonable specificity requirement aid the Court in making the determination that the plaintiff has satisfied this requirement. In Judicial Watch v. Rossotti, the plaintiff requested "reports, investigations, decisions, waivers and findings of fact concerning conflicts-of-interest by . . . IRS Commissioner Charles O. Rossotti." 326 F.3d 1309, 1313 (D.C. Cir. 2003). The plaintiff asserted that "'the public is always well served when it knows how government activities, particularly matters touching on legal and ethical questions, have been conducted,' and that, 'the information requested will be meaningfully informative in increasing public understanding of the IRS commissioner's involvement and interest in lucrative government contracts.'" Id. at 1313-14. In that case, the District of Columbia Circuit found that the plaintiff's letter "specifically explain[ed]" the public interest to be served. Id. at 1313. On the other hand, in Judicial Watch I, the plaintiff requested "material related in any way to the '[d]ecision(s) by Attorney General Janet Reno, the Department of Justice, the Immigration and Naturalization Service, and/or other persons and entities to return Elian Gonzales to the custody

13

of his biological father in Cuba'. . . ." 133 F. Supp. 2d at 52-53. The Judicial Watch I Court denied a public interest fee waiver request, finding that the plaintiff's assertion that the information would "promote accountable government" and "benefit the public by identifying areas for future reform as well as deterring future abuses that could otherwise proliferate without scrutiny" was "perfunctory" and "too ephemeral to satisfy the reasonable specificity standard." Id. at 54.

      The Court finds the circumstances in this case more analogous to Rossotti than Judicial Watch I. As in Rossotti, the PLN request specifically explains both the records sought and how the public will benefit from the information contained in those records. Pl.'s Opp'n, Exs. 1, 3. Moreover, in contrast to Judicial Watch I, PLN does not assert that information related to a single isolated event will benefit the public interest in the general sense of "promoting accountable government." Rather, the PLN request seeks information regarding specific events that occurred within BOP facilities that will provide insight to the public about how its federal prisons are being managed and operated, and how its tax dollars are being expended. Pl. Opp'n, Ex 1. And, PLN repeatedly specified how the requested information would benefit the public. For example, in its letters dated August 6, 2003 and October 20, 2003, PLN clearly represented that information regarding litigation and settlements can provide important insight into how well the nation's prisons are being managed. Pl.'s Opp'n, Ex. 1 ("[D]amage verdicts and settlements are an important means of measuring respect for constitutional rights within penal facilities); id., Ex. 3 ("Litigation against government agencies is an important barometer of how well managed, or badly run as the case may be, the agency may be as well as illustrating trends and patterns of

abuse or other forms of mismanagement.").[4]  The Circuit Court's sentiment in Rossotti that "we cannot imagine what else [the plaintiff] could have said to satisfy the government's appetite for specificity," id., has equal applicability here.

    (4)    <u>Does PLN Have the Intent and Ability to Disseminate The Requested Records to the General Public?</u>

In assessing whether a public interest fee waiver request should be granted, the Court "must consider the requester's ability and intention to effectively convey or disseminate the requested information to the public." Judicial Watch II, 185 F. Supp. 2d at 62.  In doing so, courts "must look to 'the scope of the requester's proposed dissemination—whether to a large segment of the public or a limited subset of persons' . . . ." VoteHemp, Inc. v. DEA, 237 F. Supp. 2d 55, 62 (D.D.C. 2002) (quoting D.C. Technical Assistance Org., 85 F. Supp. 2d at 49).  PLN clearly stated its intention to "analyze and publish" the requested information in its printed journal and on its website.  Pl.'s Opp'n, Ex. 1.  The question before the Court, therefore, is whether PLN has the ability to disseminate the information.  The government primarily argues that the finding by the OIP that the PLN website is not a viable distribution channel shows that PLN failed to demonstrate its dissemination ability.  The Court does not agree.  Regardless of the viability of the PLN website as a mechanism for distributing the requested information, with 3,400 reported subscribers and an estimated readership population of 18,000, PLN has demonstrated its ability to distribute the printed journal to the public.

---

[4] The plaintiff has also provided this Court with an affidavit and several declarations in further support of its arguments.  Affidavit of Fred Cohen; Declaration of David Fathi; Declaration of Paul Wright.  The Court's review, however, is limited to the record that was before the agency.  5 U.S.C. § 552(a)(4)(A)(vii).  There is no indication that the affidavit or declarations were before the agency, and therefore, this Court cannot consider them.

The government cites Larson in support of its position. However, Larson is not analogous to this case. In Larson, the plaintiff stated an intent to distribute requested information to a "major newspaper company." Larson, 843 F.2d at 1482. The District of Columbia Circuit found that the plaintiff had not demonstrated an intent or ability to disseminate the information because he had not identified the newspaper, the purpose for requesting the information, or any contact he had with any major newspaper. Id. PLN, unlike the plaintiff in Larson, is a publication in and of itself, and therefore does not have to rely on another entity to disseminate the information. Thus, there is no "tenuous link" between the requester and the channels through which the information will be disseminated, as was the situation in Larson. See id. at 1483 n. 5.

In Linn v. Dep't of Justice, the plaintiff asserted that his method of distribution would be to provide the requested information to federal inmate lobbying organizations with "member mailings number[ing] in the thousands each month." No. 92-1406, 1997 WL 577586, at *6 (D.D.C. May 29, 1997). While similar to Larson in that the plaintiff in Linn relied on an intermediary to disseminate the requested information, the Court noted that, unlike Larson, the plaintiff had specified the lobbying organizations that would disseminate the information. Id. Thus, the Linn Court found that the "[p]laintiff's representations that he will supply the information that he has received to organizations which can widely disseminate it to the relevant public . . ." entitled the plaintiff to a fee waiver. Id. The facts in this case compel the same conclusion. With a represented readership of "thousands each month," PLN can "widely disseminate" the requested information to the "relevant public." Id. Moreover, PLN's ability to disseminate the requested information must be considered even greater than the plaintiff in Linn

because, as noted above, PLN does not rely on an intermediary to distribute the information. Therefore, PLN has shown an intent and ability to disseminate the requested information.

## V. Conclusion

For the foregoing reasons, the Court concludes that the plaintiff has established that disclosure of the requested information is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).[5] Moreover, the plaintiff has demonstrated its intent and ability to disseminate the requested information to the relevant public. Accordingly, the plaintiff's motion for summary judgment is granted and the defendant's motion for summary judgment is denied.

**SO ORDERED** this 26th day of June, 2006.[6]

REGGIE B. WALTON
United States District Judge

---

[5] Because the Court has determined that the plaintiff is entitled to the blanket fee waiver, there is no need to analyze whether the plaintiff is entitled to a partial fee waiver as a representative of the news media under 5 U.S.C. § 552(a)(4)(A)(ii)(II).

[6] An Order consistent with the Court's ruling accompanies this Memorandum Opinion.