# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| (b)(6), (b)(7)c <br><br> (b)(6), (b)(7)c | : |
| 321 Eye St. N.W. <br> Apt. 21 <br> Washington DC 20003 | : |
| **Plaintiff** | : |
|  | **Case No.** (b)(2)Low |
| v. | **Judge: Emmet G. Sullivan** : |
| THE UNITED STATES OF AMERICA <br> DEPARTMENT OF JUSTICE <br> 950 Pennsylvania Avenue, NW <br> Washington, DC 20530 | : |
| **Defendant** | : |

## COMPLAINT

### (Negligence, Survival Action, Wrongful Death)

#### I. Parties

1.  (b)(6), (b)(7)c  was duly qualified as personal representative of the  (b)(6), (b)(7)c

deceased, by the Superior Court of the District of Columbia, in  Administration No. 675 -02

having been appointed by the court on July 5, 2002.  She was also appointed Ancilliary

administrix of the  (b)(6), (b)(7)c  by the 41st Judicial District of the Commonwealth of

Kentucky, on January 23, 2003, in Case No. 00015.  Plaintiff, is the mother of the decedent and

1

06/11/2008 08:59 FAX                                                                    ☒003

is empowered to maintain this action pursuant to D.C. Code §12-101 and KRS §411.30.

2.   [(b)(6), (b)(7)c]   is the six year old daughter of the decedent.

## II. Jurisdiction

3.   This action is brought pursuant to 28 U.S.C. 2671 *et seq.*; the common law of the District of Columbia, D.C. Code §12-101 and § 16-2701, and the common law, Constitution and Statutes of the Commonwealth of Kentucky. See: Ky Const. §241 and KRS § 411.130 . Plaintiff proceeds under the laws of the District of Columbia. In the alternative, she proceeds under the laws of the Commonwealth of Kentucky.

4.   Defendant, United States maintained and operated the Federal Correctional Institute at Manchester, Kentucky on January 30, 2002. It also maintains offices and does business in the District of Columbia.

5. Decedent, [(b)(6), (b)(7)c] was incarcerated in the Federal Correctional Institute in Manchester, Kentucky at the time of his death. He was a lifelong resident of the District of Columbia.

6.   Chantel Lockett is a resident of the District of Columbia.

7.   [(b)(6), (b)(7)c] is an adult resident of the District of Columbia.

## III. Factual Allegations

8.   [(b)(6), (b)(7)c] was a resident of the Federal Correctional Institute (F.C.I.) at Manchester Kentucky having been transferred to that facility on April 23, 2001. [(b)(6), (b)(7)c] had a long history of serious heart disease. Prior to arriving at the Manchester facility he had undergone a coronary angiogram which showed that he had a 70 percent occlusion of the right coronary artery. On September 7, 2001 he was evaluated at the Manchester Hospital Emergency Room for evaluation of chest pain. On September 22, 2001 he had further complaints of chest pain. On October 20,

2

2001 he again complained of severe chest pain. A cardiac catheterization was performed on [(b)(6), (b)(7)c] on October 29, 2001. On the January 20, 2002 [(b)(6), (b)(7)c] was sent to the Manchester Hospital Emergency Room for further evaluation of chest pain. Following examination, he was transferred to be the University of Kentucky Medical Center at Lexington where he had a stent placed in his right coronary artery. He was returned to the Manchester F.C.I. on January 25th 2002.

On the January 31st 2002 at 12:30 p.m. [(b)(6), (b)(7)c] was seen in sick call for chest pain. An E.K.G was performed at 12.37 p.m. which showed significant change from an earlier examination performed on January 20, 2002. A further E. K. G. was performed at 12.42 p.m. which revealed sinus dysrhythmia consistent with myocardial damage. [(b)(6), (b)(7)c] was seen by [(b)(6), (b)(7)c] who noted in the medical record that he "does not appear ... ill." Coldiron also reported that [(b)(6), (b)(7)c] saw no acute changes on the E.K.G. and had ordered that he be treated conservatively. [(b)(6), (b)(7)c] was sent back to his housing unit without further medical testing, treatment or observation. Upon his return, he continued to complain of acute chest pain and showed numerous signs of being in acute distress. Other inmates pushed [(b)(6), (b)(7)c] wheelchair to the officer service station, where [(b)(6), (b)(7)c] requested to return to the medical care unit because it felt like he was having a heart attack. The officer on duty ordered him to return to his room and lie down. When [(b)(6), (b)(7)c] continued to plead for medical assistance he was told that if he did not return to his room other officers would be called to take [(b)(6), (b)(7)c] to the special housing unit, known among inmates as the "hole." He received no further medical treatment until 1:37 PM at which time he was found in his cell. He was not breathing and had no palpable pulse. Efforts to revive him were unsuccessful. [(b)(6), (b)(7)c] died of a right coronary artery thrombosis due to hypertensive atherosclerotic cardiovascular disease with coronary artery stenosis.

3

A Multisystem Review of [(b)(6), (b)(7)c] medical treatment, by a review committee which included the Warden of the Manchester Facility, as well as a number of medical doctors, concluded, in March 2002, that Mr. Bassil did not receive appropriate and adequate health care, consistent with community standards. In particular, it stated that the " The deviation in standards occurred at the time of the final episode leading to death. The EKG's were not appropriately addressed and the assessment of the inmate was not comprehensive for the medical condition or complaint. "

9. Plaintiff filed an administrative claim in this matter on April 11, 2002.   This claim was denied on April 8, 2003.  Accordingly, plaintiff has exhausted her administrative remedies.

## IV.  Causes Of Action

### COUNT ONE
### (Negligence)

10.    Plaintiff hereby incorporates paragraphs 1 through 9, *supra*, by reference.

11.    The medical personnel who treated [(b)(6), (b)(7)c] on January 31, 2002, were under a duty to provide reasonable medical care which complied with the standard of care.  By failing to assess properly the EKG's, as described above, by failing to provide a reasonable period of medical observation after he presented to the infirmary, and by failing to provide any medication or other treatment whatsoever, they breached their duty to take reasonable care.

12. The medical personnel were employees of the United States, and at all times were acting within the scope of their employment.

13. The aforesaid  negligence proximately caused [(b)(6), (b)(7)c] great pain and suffering, medical expense, loss of wages, and loss of life.

4

## COUNT TWO
### (Negligence)

14.    Plaintiff hereby incorporates paragraphs 1 through 13, *supra*, by reference.

15.    The corrections personnel on duty in plaintiff's housing unit, on January 31, 2002, were under a duty to provide reasonable access to medical care to (b)(6), (b)(7)c By failing to call for medical assistance in a timely fashion, or permitting (b)(6), (b)(7)c access to the infirmary, as described above, when it was apparent and obvious that he was in extreme distress, they breached this duty.

16. The corrections personnel were employees of the United States, and at all times were acting within the scope of their employment.

17. The aforesaid negligence proximately caused (b)(6), (b)(7)c great pain and suffering, medical expense, loss of wages, and loss of life.

## COUNT THREE
### (Wrongful Death Claims)

18.    Plaintiff hereby incorporates paragraphs 1 through 17 *supra*, by reference.

19.    As a direct and proximate result of the above-described tortious acts, decedent (b)(6), (b)(7)c (b)(6), (b)(7)c died on or January 31, 2002.

20.    As a direct and proximate result of the above-described tortious conduct and the ensuing death of (b)(6), (b)(7)c his mother, suffered the loss of decedent's services and pecuniary benefits which she would have derived had decedent survived.

21. As a direct and proximate result of the above-described negligence and the ensuing death of (b)(6), (b)(7)c his minor child, (b)(6), (b)(7)c has suffered the loss of decedent's services,

companionship, comfort, guidance, care, love, affection, attention, assistance, future earnings and

other pecuniary benefits which she would have derived, had plaintiffs' decedent survived.

**WHEREFORE**, plaintiff, acting as duly appointed Personal Representative of the Estate

of [(b)(6), (b)(7)c] and as legal Representative of [(b)(6), (b)(7)c] and individually, prays for

judgment against the United States.  She also prays for an award of damages in the amount of

$2,000,000.00.

ALLEN & SPARKS, LLP

By:_____

Geoffrey D. Allen
D.C. Bar No. 288142
1822 Biltmore Street, NW
Washington, DC 20009
(202) 797-8200

Attorneys for Plaintiffs

6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| (b)(6), (b)(7)c<br><br>(b)(6), (b)(7)c<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) C.A.No. (b)(3)  (b)(3)<br>) (EGS)<br>)<br>)<br>)<br>) |

STIPULATION FOR COMPROMISE SETTLEMENT, RELEASE
OF FEDERAL TORT CLAIMS ACT CLAIMS PURSUANT
TO 28 U.S.C. § 2677 AND ORDER OF DISMISSAL OF THIS ACTION

It is hereby stipulated by and between the undersigned plaintiffs (meaning any person, other than the defendant, signing this agreement, whether or not a party to this civil action), and the United States of America, by and through their respective attorneys, as follows:

1.  The parties do hereby agree to settle and compromise each and every claim of any kind, whether known or unknown, arising directly or indirectly from the acts or omissions that gave rise to the above-captioned action under the terms and conditions set forth in this Settlement Agreement, including all claims made on behalf of the (b)(6), (b)(7)c and the individual claims of (b)(6), (b)(7)c the daughter and mother of the decedent (b)(6), (b)(7)c (b)(6), (b)(7)c

2.  The United States of America agrees to pay the cash sum of One hundred thousand dollars and 00/100 ($100,000.00), which sum shall be in full settlement and satisfaction of any and all claims, demands, rights, and causes of action of whatsoever kind and nature, arising from, and by reason of any and all known and unknown, foreseen and unforeseen bodily and personal

injuries, damage to property and the consequences thereof, resulting, and to result, from the
subject matter of this settlement, including any claims for wrongful death, for which plaintiffs or
their guardians, heirs, executors, administrators, or assigns, and each of them, now have or may
hereafter acquire against the United States of America, its agents, servants, and employees.

    3.  Plaintiffs and their guardians, heirs, executors, administrators or assigns hereby agree
to accept the sums set forth in this Stipulation of Compromise Settlement in full settlement and
satisfaction of any and all claims, demands, rights, and causes of action of whatsoever kind and
nature, including claims for wrongful death, arising from, and by reason of any and all known
and unknown, foreseen and unforeseen bodily and personal injuries, damage to property and the
consequences thereof which they may have or hereafter acquire against the United States of
America, its agents, servants and employees on account of the same subject matter that gave rise
to the above-captioned action, including any future claim or lawsuit of any kind or type
whatsoever, whether known or unknown, and whether for compensatory or exemplary damages.
Plaintiffs and their guardians, heirs, executors, administrators or assigns further agree to
reimburse, indemnify and hold harmless the United States of America, its agents, servants, and
employees from and against any and all such causes of action, claims, liens, rights, or subrogated
or contribution interests incident to or resulting from further litigation or the prosecution of
claims by plaintiffs or their guardians, heirs, executors, administrators or assigns against any
third party or against the United States, including claims for wrongful death.

    4.  This stipulation for compromise settlement is not, is in no way intended to be, and
should not be construed as, an admission of liability or fault on the part of the United States, its
agents, servants, or employees, and it is specifically denied that they are liable to the plaintiffs.

2

This settlement is entered into by all parties for the purpose of compromising disputed claims under the Federal Tort Claims Act and avoiding the expenses and risks of further litigation.

5. It is also agreed, by and among the parties, that costs, fees, expenses, taxes, and attorney's fees owed by the plaintiffs will be paid out of the settlement amount and not in addition thereto.

6. It is also understood by and among the parties that pursuant to Title 28, United States Code, Section 2678, attorney's fees for services rendered in connection with this action shall not exceed 25 per centum of the amount of the compromise settlement.

7. The persons signing this Settlement Agreement warrant and represent that they possess full authority to bind the persons on whose behalf they are signing to the terms of the settlement. It is agreed that because [(b)(6), (b)(7)c] is a minor, the plaintiffs must obtain Court approval of the settlement at their expense. In the event the Court does not approve the settlement, the entire Stipulation For Compromise Settlement And Release and the compromise settlement are null and void.

8. Payment of the settlement amount will be made by government wire transfer as per the following:

    A.    Name of Bank: Riggs Bank
    B.    Address of Bank: 1779 Columbia Road, NW
    C.    Washington, DC 2009
    D.    Routing No. 05400030
    E.    Name of Account: Allen & Sparks, LLP,
    F.    Account No. [(b)(2)Low]

Plaintiffs' attorney agrees to distribute the settlement proceeds among the plaintiffs, and to obtain a dismissal of the above-captioned action with prejudice, with each party bearing its own fees, costs, and expenses.

3

9.  This Stipulation will be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

10. The parties agree that this Stipulation for Compromise Settlement and Release, including all the terms and conditions of this compromise settlement and any additional agreements relating thereto, may be made public in their entirety, and the plaintiffs expressly consent to such release and disclosure pursuant to 5 U.S.C. § 552a(b).

Respectfully submitted,

GEOFFREY D. ALLEN, ESQ. #288142
1822D Biltmore St. N.W.
Washington D.C. 20009
(202) 797-8200

(b)(6), (b)(7)c

Plaintiff

KENNETH L. WAINSTEIN, D.C. BAR #451058
United States Attorney

R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney

PATRICIA McDONALD
PO Box 5309
Rockville, MD 20848-5309
202-639-0300

(b)(6), (b)(7)c

CLAIRE WHITAKER, DC #354530
Assistant US Attorney
444 4th St, NW Rm 4211
Washington, DC 20001
(202) 514-7137

**BY THE COURT:**

It is this _____ day of _____, 2004,

ORDERED, that this stipulation of compromise and release is APPROVED,

FURTHER ORDERED, that this case is hereby DISMISSED, with prejudice.

Distribution of the funds will be subject to a separate order.

UNITED STATES DISTRICT JUDGE

4