## Stipulation for Compromise Settlement and Release of
## Federal Tort Claims Act Claims Pursuant to 28 U.S.C. § 2672

It is hereby stipulated by and between the undersigned claimants (meaning any person, other than the United States, signing this agreement), and the UNITED STATES OF AMERICA, by and through their respective attorneys, as follows:

1. The parties do hereby agree to settle and compromise each and every claim of any kind, whether known or unknown, arising directly or indirectly from the acts or omissions that gave rise to the administrative claim arising from the death of (b)(6), (b)(7)c on August 14, 1999, while incarcerated at the Federal Correctional Institution, La Tuna, TX/NM, under the terms and conditions set forth in this Settlement Agreement.

2. The United States of America agrees to pay the sum of $190,000.00, which sum shall be in full settlement and satisfaction of any and all claims, demands, rights, and causes of action of whatsoever kind and nature, arising from, and by reason of any and all known and unknown, foreseen and unforeseen bodily and personal injuries, damage to property and the consequences thereof, resulting, and to result, from the subject matter of this settlement, including any claims for wrongful death for which claimants or their guardians, heirs, executors, administrators, or assigns, and each of them, now have or may hereafter acquire against the United States of America, its agents, servants, and employees.

3. Claimants and their guardians, heirs, executors, administrators or assigns hereby agree to accept the sums set forth in this Stipulation of Compromise Settlement in full settlement and satisfaction of any and all claims, demands, rights, and causes of action of whatsoever kind and nature, including claims for wrongful death, arising from, and by reason of any and all known and unknown, foreseen and unforeseen bodily and personal injuries, damage to

property and the consequences thereof which they may have or hereafter acquire against the United States of America, its agents, servants and employees on account of the same subject matter that gave rise to the administrative claim, including any future claim or lawsuit of any kind or type whatsoever, whether known or unknown, and whether for compensatory or exemplary damages. Claimants and their guardians, heirs, executors, administrators or assigns further agree to reimburse, indemnify and hold harmless the United States of America, its agents, servants, and employees from and against any and all such causes of action, claims, liens, rights, or subrogated or contribution interests incident to or resulting from further litigation or the prosecution of claims by claimants or their guardians, heirs, executors, administrators or assigns against any third party or against the United States, including claims for wrongful death.

4. This stipulation for compromise settlement is not, is in no way intended to be, and should not be construed as, an admission of liability or fault on the part of the United States, its agents, servants, or employees, and it is specifically denied that they are liable to the plaintiffs. This final settlement is entered into by all parties for the purposes of compromising disputed claims under the Federal Tort Claims Act.

5. It is also agreed, by and among the parties, that the respective parties will each bear their own costs, fees, and expenses and that any attorney's fees owed by the claimants will be paid out of the settlement amount and not in addition thereto.

6. It is also understood by and among the parties that pursuant to Title 28, United States Code, Section 2678, attorney's fees for services rendered in connection with this matter shall not exceed 20 per centum of the amount of the compromise settlement.

7. The persons signing this Settlement Agreement warrant and represent that they possess full authority to bind the persons on whose behalf they are signing to the terms of the settlement.

8. Payment of the settlement amount will be made by government wire transfer as per the following:

    A. Name of Bank: Wells Fargo Bank Texas, N.A.

    B. Street Address of Bank: 221 N. Kansas

    C. City, Street and Zip Code of Bank: El Paso, Texas 79901

    D. Routing Number: (b)(6)

    E. Name of Account: (b)(6)

    F. Account Number: (b)(6)

Claimants' attorney agrees to distribute the settlement proceeds among the claimants.

9. The parties agree that this Stipulation for Compromise Settlement and Release, including all the terms and conditions of this compromise settlement and any additional agreements relating thereto, may be made public in their entirety, and the claimants expressly consent to such release and disclosure pursuant to 5 U.S.C. § 552a(b).

(b)(6)  Date: 3-12-01

(b)(6)  Date: 3-12-01

(b)(6)  Date: 3-12-01

(b)(6)  Date: 3-12-01

(b)(6)

        (b)(6)

Attorney for Claimants

Date:

_____
Christopher Erlewine
General Counsel
Federal Bureau of Prisons
Attorney for United States of America

Date:  6-18-01



Cause No. 2001 - G000043

| | | |
|---|---|---|
| The Guardianship Estate of | § | The Probate Court |
| | § | |
| Griselda Retana, | § | of |
| | § | |
| A Minor | § | El Paso County, Texas |

### Agreed Order Appointing Temporary Guardian of the Estate

Came to be considered the Application of **Carolina Retana** for a Guardianship of the Estate of **Griselda Retana**, a Minor on May 15, 2001. The Court heard the evidence and reviewed the documents filed herein and finds that the allegations contained in the Application are true and that notice and citation have been given in the manner and for the length of time required by law. The Court makes the following findings of fact and conclusions of law:

1. A need exists for the appointment of a Temporary Guardian of the Estate of **Griselda Retana**, Minor.

2. The Court has venue.

3. **Carolina Retana** is not disqualified by law to serve as a Temporary Guardian of the Estate of **Griselda Retana**, Minor.

4. That the property of **Griselda Retana** will be protected by the appointment of a Temporary Guardian of the estate.

5. That the application of **Carolina Retana** was not filed for a minor person for the primary purpose of enabling the minor to establish residency for enrollment in a school or school district in which the student would not otherwise be eligible for enrollment.

6. That the estate of Griselda Retana will be unnecessarily dissipated unless immediate action is taken.

7.  That Griselda Retana's preference as to regard to her Temporary Guardian has been given due consideration.

The following are the orders of the Court:

1.  **Carolina Retana** shall be appointed as the Temporary Guardian of the Estate of **Griselda Retana**, a minor.

2.  The bond for the service of **Carolina Retana** as Temporary Guardian of the Estate of **Griselda Retana**, shall be set at $23,000.00.

3.  Upon appointment **Carolina Retana**, Applicant shall have and retain the following rights, duties, and powers:

    a.)  The power to manage **Griselda Retana's** real and personal property, including bank accounts or other deposit or investment accounts;

    b.)  The power to apply for, and manage funds from all private or governmental sources, including payroll, retirement, and/or monthly social security income;

    c.)  The power to, with prior permission of the Court, take any legal action necessary or appropriate to enforce or protect any property rights of **Griselda Retana**, to defend, pay, compromise, settle or adjust any liability for any debt or obligation owed; to settle, compromise or release any claims held or asserted;

    d.)  The power to, with prior permission of the Court, sell exchange or otherwise dispose of property of **Griselda Retana**;

    e.)  The power to manage, maintain, repair or insure property, real, personal, or mixed, tangible or intangible, or any interest therein owned by **Griselda Retana**;

    f.)  The power to, with prior permission of the Court, maintain or purchase polices of insurance insuring the life, health, property or interests of **Griselda Retana** (and including Medicare, Social Security or any other private or public welfare program) and with regard to such policies, to take such action as may be appropriate to obtain possession and control of such policies or to collect the proceeds of such policies;

    g.)  The power to cause to be prepared, to execute and to file, any tax return, claim for refund or other document which must or should be filed or to pay any tax (including penalties or interest) shown to be due by such return; to represent **Griselda Retana** before any taxing authority, in any matter, with authority to execute a waiver of any

     type to consent to extensions of any type on behalf of **Griselda Retana**; to compromise or settle any tax liability asserted against **Griselda Retana**; to make any return or report for **Griselda Retana** to any governmental agency or authority which **Griselda Retana** may be entitled or required to make.

4. Letters of Guardianship are to be issued by the Clerk of this Court upon the qualification of **Carolina Retana** in the form and manner required by law.

5. That pursuant to the agreement of the parties the Temporary Guardianship is confirmed and shall continue for a period not to exceed sixty (60) days.

6. This court hereby approves the settlement with the U.S. Government with the minor child and all wrongful death beneficiaries for the loss of Miguel Angel Retana, the minor's father while confined in La Tuna Federal Penitentiary. Upon receipt of the total settlement amount of $190,000.00 to the IOLTA account of Mark T. Davis from the U.S. Government, of which $30,000.00 represents the minor child's share, Mark T. Davis shall make distributions as follows: The following to be paid to Mark T. Davis: $6,000.00 representing a twenty percent attorney's fee for the administrative claim against the U.S. Government, $419.10 for a pro rata share of expenses incurred in the prosecution of the administrative claim and $324.00 incurred as expenses in this guardianship proceeding. Joseph F. Strelitz, attorney ad litem herein, shall be paid $750.00 for his services in representing the minor child. The remaining balance of $22,506.90 shall be held in the IOLTA account of Mark T. Davis for the benefit of the minor child until further orders of this court.

SIGNED this _23_ day of _May_, 2001.

| ORIGINAL SIGNED BY: |
| MAX HIGGS |
| PROBATE JUDGE |
| JUDGE PRESIDING |

Approved:

_____
Mark T. Davis
Attorney for Applicant

_____
Joseph F. Strelitz
Attorney Ad Litem

MAY-29-2001 07:41   BUREAU OF PRISONS   214 224 3352   P.06
TOTAL P.06

(b)(6)

(b)(6)

ATTORNEY AT LAW



September 27, 2000

**VIA FACSIMILE NO. (214) 224-3352**

**VIA FIRST CLASS MAIL**

Ms. Lisa Sunderman
Deputy Region Counsel
Federal Bureau of Prisons
South Central Regional Office
4211 Cedar Springs Road, Suite 300
Dallas, Texas 75219

     Re:  Administrative Claim No. T-SCR-99-615
        (b)(6)

Dear Ms. Sunderman:

  This letter is request for reconsideration of the above referenced claim based on additional information as contained herein. The claim was denied on July 24, 2000.

  The medical records of the deceased, as provided by the Federal Bureau of Prisons were reviewed by (b)(6) of Tucson, Arizona. (b)(6) is board certified in Internal Medicine, Cardiovascular Disease, Interventional Cardiology. I have enclosed his report for your review. After a review of the records provided, (b)(6) held the opinion that (b)(6) died of acute myocardial infarction in the presence of widespread coronary artery disease ten days after being examined by (b)(6). (b)(6) symptoms and history as presented to (b)(6) on August 4, 1999 were a 44 year old male with insulin dependant diabetes, history of "increasing angina of effort," prior abnormal EKG compatible with prior inferior infarction and a patient fulfilling the criteria for consideration as a patient with accelerating angina. The standard of care required that (b)(6) be immediately referred for further diagnostic testing, including a electrocardiogram and/or treadmill examination. These diagnostic procedures would have most probably revealed the need for possible cardiac catheterization, coronary angioplasty and/or coronary bypass surgery. (b)(6) states that had these early therapeutic coronary interventions been performed that the resulting death of (b)(6) death would have been unequivocally prevented. I hope this assists you in making a thorough evaluation of (b)(6) claim for the untimely loss of her husband.

---

8517 Lockheed Drive • El Paso, Texas 79925 • Phone (915) 779-3596 • Fax (915) 779-3630

Ms. Lisa Sunderman
Deputy Region Counsel
Federal Bureau of Prisons
September 27, 2000
Page Two

      I look forward to your prompt evaluation of this claim.  Should you have any questions or comments, please do not hesitate to contact our office.

                                Sincerely,



MTD/la
Enc.