*Summons Issued*

① 6/14/0*

UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NUNZIO DeCARLO | : | 4:00CV 1059 |
| Plaintiff | : | |
| | : | FILED |
| v. | : CIVIL ACTION | WILLIAMSPORT |
| | : NO. | |
| UNITED STATES OF AMERICA | : | JUN 13 2000 |
| Defendant | : | |

PER __KF__
DEPUTY CLERK

## COMPLAINT

Plaintiff, Nunzio DeCarlo, alleges the following:

1. This action arises under the Federal Tort Claims Act, §2671 through 2680 of Title 28 of the United States Code. This Court is vested with jurisdiction pursuant to §1346 (b) of Title 28 of the United States Code.

2. Plaintiff is an inmate of the Allenwood Federal Penitentiary located at White Deer, Lycoming County, Pennsylvania, which is within the Middle District of Pennsylvania.

3. At all times mentioned, Defendant, United States of America, by the United States Bureau of Prisons, a federal agency of Defendant, was in possession and control of the aforesaid Allenwood Federal Penitentiary, a maximum security prison in White Deer, Lycoming County, Pennsylvania.

4. On or about the 22nd day of December, 1997, the Plaintiff was in the custody of the United States of America, Bureau of Prisons, for the purpose of serving a 20- year sentence imposed by the United States District Court for the Eastern District of New York, for violation of the federal racketeering laws.

5. On or about December 22, 1997, the Plaintiff was serving the aforesaid sentence at the United States Penitentiary in White Deer, Lycoming County, Pennsylvania.

6. On December 22, 1997, at approximately 11:00 A.M., at the aforesaid penitentiary, the Plaintiff was confined in the segregated housing unit (SHU).

7. At that time he began to experience severe chest pain, a burning sensation in his left arm and an overwhelming feeling of nausea.

8. After vomiting, the Plaintiff fell to the floor and was in a semi-conscience state.

9. The Plaintiff's cell mate, (b)(6), (b)(7)c pressed the emergency alert button in the cell in order to call for staff assistance.

10. After approximately 15 minutes had expired, a SHU officer responded to the emergency call.

11. At that point, Plaintiff was able to stand on his own, but was only able to do so with great difficulty.

12. The Plaintiff made a request to the aforesaid SHU officer for prompt medical attention and indicated that he felt that he had possibly suffered a heart attack or a stroke.

13. The aforesaid SHU officer said he would notify the physician assistant and promised Plaintiff that he would return shortly.

14. After another 10 minutes had elapsed, a physician assistant arrived in Plaintiff's cell along with the aforesaid SHU officer.

15. Plaintiff explained the situation to the physician assistant, who ordered Plaintiff to the prison hospital for evaluation.

16. After several more minutes had passed, the aforesaid SHU officer obtained a set of handcuffs, a belly chain and leg irons and restrained Plaintiff with them.

17. The Plaintiff requested to be transported to the prison hospital in a wheel chair because he felt extremely weak.

18. The aforesaid SHU officer denied this request and stated to Plaintiff that if he wanted to go to the hospital he would have to walk there on his own two feet.

19. Plaintiff proceeded with the aforesaid SHU officer to the hospital. Because Plaintiff was experiencing great difficulty in walking, he again made a request to the aforesaid SHU officer for a wheel chair.

20. Again, Plaintiff's request for a wheel chair was denied and he was instructed to continue walking to the hospital by the aforesaid SHU officer and (b)(7)c an escort officer.

21. Once Plaintiff arrived at the prison hospital, he was examined by hospital administrator, Ronald A. Laino, P.A.; Assistant Hospital Administrator, R. Martinez, P.A.; and Physician (b)(7)c.

22. The aforesaid medical personnel examined Plaintiff with an EKG machine and, based on the results of the EKG test, prescribed and dispensed a sublingual nitroglycerin pill and an aspirin, which the Plaintiff took orally.

23. Subsequently, six more EKG tests were administered to Plaintiff within several hours.

24. After four of the EKG tests had concluded, sublingual nitroglycerin pills were prescribed for and provided to Plaintiff, who took them orally.

25. Plaintiff was held in a hospital holding cell, which had a toilet with a padlocked lid which prevented Plaintiff from using the said toilet during his stay in the said hospital holding cell, which amounted to more than 12 hours.

26. Plaintiff informed the aforesaid prison personnel that he believed he was on the brink of death and requested to be brought to an outside hospital for immediate medical attention by competent medical specialists.

27. Plaintiff's complaint and his request to be brought to an outside hospital was denied by Administrator Ronald A. Laino, Assistant Hospital Administrator R. Martinez, Dr. Song K. Lee, Physician and Physicians' Assistants (b)(7)c Physician Assistant Pannell and Physician Assistant (b)(7)c.

28. Shortly before midnight, Plaintiff began to experience his symptoms intensify.

29. Plaintiff advised Physician Assistant (b)(7)c that his symptoms were intensifying.

30. As a result, Physician Assistant (b)(7)c tried to insert an IV in Plaintiff's arm, which attempt was unsuccessful.

31. Plaintiff told Physician Assistant (b)(7)c that he believed that he would die from heart failure if he did not get to an outside hospital.

32. Physician Assistant (b)(7)c told Plaintiff that he would contact the hospital administrator and apprise him of his condition and would seek clearance to call for an ambulance to transport Plaintiff to the Williamsport Hospital for special medical care.

33. Physician Assistant (b)(7)c did make the telephone call and did receive clearance for the Plaintiff to be transported to the Williamsport Hospital in Williamsport, Pennsylvania.

34. The Williamsport Hospital is located approximately 20 miles from the Allenwood Federal Penitentiary.

35. On December 23, 1997, at approximately 12:30 A.M., paramedics arrived at the Allenwood Federal Penitentiary Prison Hospital.

36. The aforesaid paramedics did examine Plaintiff. One of the paramedics, a female, stated to the prison hospital staff: "Can't you see this man is having a heart attack".

37. The aforesaid female paramedic did administer an IV to Plaintiff immediately and Plaintiff was then transported to the Williamsport Hospital, Williamsport, Pennsylvania.

38. While enroute to the Williamsport Hospital, the female paramedic explained to the Plaintiff that he could have been treated with a medication that clears away blockages in the heart's arteries, if the medical staff would have called the paramedics earlier.

39. She further explained that the failure to promptly and properly medicate the Plaintiff may have exacerbated the Plaintiff's physical condition, thus making the condition life-

threatening and may have caused permanent damage to Plaintiff's heart.

40. On December 23, 1997, at approximately 1:00 A.M., Plaintiff was admitted to the Williamsport Hospital, Williamsport, Pennsylvania, where he underwent heart surgery by Dr. Trautwein, who inserted three stents into one of Plaintiff's arteries.

41. Following the surgery, Plaintiff was told that his heart condition may require a heart transplant.

42. As a direct and proximate result of Defendant's negligence, below described, which resulted in Plaintiff's failure to receive prompt and proper medical treatment of his heart condition, Plaintiff sustained permanent damage to his heart, which will or may require a future heart transplant, a lifetime of medical treatment, a lifetime of physical therapy, a lifetime of medical expenses and a lifetime of limitations on physical activities and abilities, including loss of work, and loss of Plaintiff's ability to work and thereby earn a living.

43. Plaintiff will in all likelihood require extensive medical treatment, including medications and physical therapy for the rest of his natural life and in all probability will have permanent disability as a result of the aforesaid lack of medical attention.

44. The condition from which Plaintiff suffers was proximately caused by the negligence of Defendant United States of America, United States Bureau of Prisons and John Fanello, Warden of United States Penitentiary at Allenwood, or persons acting under their authority or control, all of whom were employees of the Government, and in the following particulars:

A. The SHU staff failed to promptly respond to Plaintiff's emergency call for assistance;

B. The SHU staff's delay in transporting Plaintiff to the prison hospital;

C. The prison staff's failure to grant Plaintiff's request for a wheel chair;

D. The prison staff's insistence that Plaintiff walk to the hospital;

E. The medical staff's failure to prevent the prison staff's insistence that Plaintiff walk to the hospital;

F. The prison medical staff's failure to properly treat the Plaintiff and the failure to properly insert the IV in Plaintiff's arm;

G. The prison medical staff's unreasonable and prolonged delay in referring Plaintiff to an outside hospital.

45. Due to the aforesaid negligence of Defendant, which represents a material and gross deviation from the accepted standard of care, Plaintiff sustained permanent damage to his heart and sustained the damages aforesaid.

46. On the 15th day of July, 1999, Plaintiff filed his Administrative Tort Claim, Number T-ER-99-373, with the Federal Bureau of Prisons, Northeast Regional Office, Philadelphia, Pennsylvania, a Department of the Defendant, the United States of America.

47. On January 10, 2000, the Plaintiff's claim was denied by the aforesaid Department of Defendant and this suit is being commenced within 6 months of the aforesaid denial.

48. The aforesaid Administrative Tort Claim filed July 15, 1999, by Plaintiff, contained a claim of $10,000,000.00 in damages.

49. Because the actions of the Defendant, as aforestated, amounted to willful misconduct, were outrageous, reckless, wanton, and amounted to a complete and total disregard for the life and health of the Plaintiff, punitive damages are requested.

50. At all relevant times herein, the employees of the Government referred to in this complaint were acting within the scope of their respective offices and/or employment.

**WHEREFORE**, Plaintiff requests judgment against Defendant:

A.  for damages in the amount of $10,000,000.00 plus punitive damages;

B.  for costs of suit;

C.  for legal interest including prejudgment interest;

D.  for such other and further relief as the Court may deem just and proper, and a jury trial is demanded pursuant to 28 USC §2402.

RESPECTFULLY SUBMITTED,

_____
G. Scott Gardner
Attorney for Plaintiff
ID No. 36507
2117 West Fourth Street
Williamsport, PA 17701
(717) 322-7653



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NUNZIO DeCARLO,

    Plaintiff    :    CIVIL NO. 4: 00-CV-1059
                        (Judge Muir)

v.

UNITED STATES OF AMERICA,

    Defendant

## JUDGMENT

Pursuant to the court's judgment entered September 11, 2002 and Federal Rule of Civil Procedure 54(d)(1), costs are hereby taxed against the defendant United States of America and in favor of plaintiff Nunzio DeCarlo in the amount of $1,896.95.

ATTEST:

_Mary E. D'Andrea_
MARY E. D'ANDREA, Clerk

FILED
SCRANTON

NOV 14 2002

PER _____
      DEPUTY CLERK

AO 72A
Rev. 8/82)