## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PRISON LEGAL NEWS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | ) |
| **v.** | )   **Civil Action No. 05-1812 (RBW)** |
| | ) |
| **HARLEY G. LAPPIN, DIRECTOR,** | ) |
| **FEDERAL BUREAU OF PRISONS** | ) |
| **Defendant.** | ) |
| | ) |

## DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S  MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, defendant, the Federal Bureau of Prisons, a sub-component of the United States Department of Justice, respectfully moves for summary judgment and opposes plaintiff's motion for summary judgment.  As grounds for this its cross motion, defendant asserts that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.  A memorandum of points and authorities, an opposition to plaintiff's statement of material facts and defendant's statement of genuine issues of material fact not in dispute,  the Declaration of Willam Moorer, Paralegal Specialist, Federal Bureau of Prisons, Office of General Counsel, Freedom of Information Section, Washington, D.C., and a proposed order granting the relief sought are attached hereto.

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
WYNEVA JOHNSON, DC Bar #278515
Assistant United States Attorney
555 4th Street, N.W.,
Washington, D.C. 20530
(202) 514-7224
Attorneys for Defendant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **PRISON LEGAL NEWS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-1812 (RBW)** |
| | ) | |
| **HARLEY G. LAPPIN, DIRECTOR,** | ) | |
| **FEDERAL BUREAU OF PRISONS** | ) | |
| **Defendant.** | ) | |
| | ) | |

## DEFENDANT'S STATEMENT OF MATERIAL FACTS
## AS TO WHICH THERE IS NO GENUINE ISSUE
## AND OPPOSITION TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS

Pursuant to Local Rule 7(h), defendant hereby submits the following statement of material facts as to which there is no genuine dispute and opposition to plaintiff's statement of material facts:

1. Plaintiff's August 6, 2003 FOIA request sought the following information:  "a copy of all documents showing all money paid by the BOP for lawsuits and claims against it.  This is all funds paid out to claimants/litigants between January 1, 1996 through and including July 31, 2003.  I am requesting a copy of the verdict, settlement or claim in each case showing the dollar amount paid, the identity of the plaintiff/claimant and the legal identifying information for each lawsuit or claim or attorney fee award.  I am also requesting a copy of the complaint (if it was a lawsuit) or the claim (if it was not) in each incident which describes the facts underlying each lawsuit and claim." Declaration of Wilson Moorer ("Moorer Decl."), ¶ 3.

2. Plaintiff's FOIA Request was assigned  FOIA Request Number 2003-08557.  The Federal Bureau of Prisons (BOP) conducted its search for the documents by forwarding a copy of

plaintiff's FOIA Request to the appropriate sections of the BOP to include, but not limited to: all branches of the Office of General Counsel which consists of Commercial Law, Discrimination Complaints and Ethics (which encompasses Equal Employment Opportunity), Labor Law, Legal Administrative Branch, Legislative and Correctional Issues Branch, Litigation Branch, and Real Estate and Environmental Branch.  Moorer Decl., ¶ 4.

3.  A copy of the request was also forwarded to the six (6) BOP Regional Offices, the Administrative Division of the BOP (which consists of Contracts) and the Labor Management Relations Branch.  Each section/branch was instructed to identify any/all documents that were responsive to the FOIA Request.  Moorer Decl., ¶ 5.

4.  In response to plaintiff's request, the BOP FOIA Office searched, gathered, reviewed, and released 11,461 pages of information to the plaintiff.  The requested information was released to the plaintiff between May 4, 2007 and October 31, 2007.  There were six (6) releases of documents to plaintiff,  which contained non-redacted and redacted information as described below.  Moorer Decl., ¶ 6.

## A. EXEMPTIONS

First Release -May 4, 2007

5.  In a letter dated  May 4, 2007, BOP informed plaintiff of its release of 594 pages of responsive documents.  These pages were searched, reviewed, redacted and released in the following manner:

a. The Litigation Branch identified and provided copies of the documents found to be responsive to this request. This Branch located 27 pages of documents, of which 10 pages were released in their entirety; however, portions of the remaining 17 pages were redacted

2

pursuant to 5 U.S.C. §§552 (b)(6) and (b)(7)(C).

b. The Real Estate and Environmental Branch researched and located all records relating to this request. They searched their records for the time period January 1996 to July 2003 and found all responsive documents. This search yielded 99 pages of documents that were released in their entirety to plaintiff.

c. The Commercial law Branch completed their initial search of their documents data base to find the files they believed were responsive to this request. They did not find any files/documents that were responsive to this action. Their second search consisted of conducting a file by file search of the files from 1996 to 2003 to verify the accuracy of their data base, which also produced no responsive documents.

d. The Discrimination Complaints and Ethics Branch (which encompasses Equal Employment Opportunity) identified documents contained in their archived files from 1996 to 2003. The total of 468 pages of responsive documents were found, of which 79 pages were released in their entirety; however, portions of the remaining 389 pages were redacted pursuant to 5 U.S.C. §§552 (b)(2)Low; (b)(6); and (b)(7)(C). Moorer Decl., ¶ 7.

6. Exemption (b)(2)Low exempts from mandatory disclosure records relating solely to the internal personnel rules and practices of an agency. The types of records redacted with this exemption included the internal numbering system used by the EEOC, the Agency, and the BOP to categorize their cases and the various telephone numbers used by the BOP at its numerous institutions. This information, redacted under Exemption (b)(2), pertains entirely to internal rules of the BOP and EEOC. Moorer Decl., ¶ 8.

7. Exemption (b)(6) exempts personnel and medical files and similar files the disclosure

3

of which would constitute a clearly unwarranted invasion of personal privacy. The types of records redacted in this release included: Personal and private information of BOP staff and non-BOP staff.  Moorer Decl., ¶ 9.

8.  Exemption (b)(7)(C) provides for the withholding of records or information compiled for law enforcement purposes which could reasonably be expected to constitute an unwarranted invasion of personal privacy.  The types of records redacted in this release included: Documents provided to the plaintiff because the documents consisted of names of staff members, staff statements, names of inmates, and conclusions drawn from completed investigations.  Moorer Decl., ¶ 10.

Second Release- May 25, 2007

9.  In a letter dated, May 25, 2007, BOP informed plaintiff of its release of 1,965 pages of responsive records.  These pages were searched, reviewed, released, and redacted in the following manner:

a.  The Mid-Atlantic Regional Office (MARO) identified and requested the administrative tort claims and litigation files responsive to this request from the various National Archive Centers and reviewed the documents. This search yielded 388 pages of documents  responsive to this request of which 202 pages were released to plaintiff in their entirety; however, portions of the remaining 186 pages were redacted pursuant to 5 U.S.C. §§552 (b)(2)Low; (b)(5); (b)(6); and (b)(7)(C).

b.  The South East Regional Office (SERO) identified and requested the administrative tort claims and litigation files responsive to this request from the National Archive Center. This search yielded 309 pages of documents responsive to this request of which

4

234 pages were released to plaintiff in their entirety; however, portions of the remaining

75 pages were redacted pursuant to 5 U.S.C. §§552 (b)(2)Low; (b)(6); and (b)(7)(C ).

c. The North Central Regional Office (NCRO) identified all the relevant documents that

were responsive to this action archived at the Federal Records Center. The NCRO Legal

staff reviewed, copied, and forwarded the responsive documents to the FOIA Office

North Central Regional Office. That search yielded 1,268 pages of documents responsive

to this request, of which 960 pages were released to plaintiff in their entirety; however,

portions of the remaining 308 pages were redacted pursuant to 5 U.S.C. §§552

(b)(2)Low; (b)(5); (b)(6); and (b)(7)(C ).  Moorer Decl., ¶ 11.

10.   Exemption (b)(2)Low exempts from mandatory disclosure records relating solely to

the internal personnel rules and practices of an agency. The types of records redacted with this

exemption included the internal numbering system used by the BOP to categorize its civil cases.

The exemption was also used to redact certain banking information that would reveal account

numbers and routing numbers,  the various telephone numbers used by the BOP at its numerous

institutions and the personal telephone numbers of BOP staff and non-BOP staff.  This

information,  redacted pursuant to Exemption (b)(2), pertains entirely to internal rules of the

BOP.  Moorer Decl., ¶ 12.

11.   Exemption (b)(5) allows exemption of information intended for staff use only the

disclosure of which would tend to inhibit frank communication between prison officials or

correspondence that is deliberative in nature. The types of records redacted with this exemption

included privileged attorney-client communications between BOP Attorneys/staff and staff of the

US Attorney's Office and other staff.   These records include staff statements given for Federal

Administrative Tort Claims and information shared during the investigation of claims against the BOP. Moorer Decl., ¶ 13.

12.    Exemption (b)(6) exempts personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. The types of records redacted in this release included:  Personal and private information of BOP staff and non-BOP staff.  Moorer Decl., ¶ 14.

13.    Exemption (b)(7)(C ) provide for the withholding of records or information compiled for law enforcement purposes which could reasonably be expected to constitute an unwarranted invasion of personal privacy.  The types of records redacted in this release included: Documents which consisted of names of staff members, staff statements, names of inmates, and conclusions drawn from completed investigations.  Moorer Decl., ¶ 15.

Third Release- July 30, 2007

14.    In a letter, dated July 30, 2007, the BOP informed plaintiff of its release of 900 pages from the North East Regional Office (NERO), which identified the administrative tort claims that were responsive to this request.  These files along with the litigation files that were identified were requested from the National Archive Center.  Once the files were received, the NERO Legal staff  reviewed, copied, and forwarded the responsive documents to the FOIA Office.  After a careful review, the NERO staff determined 392 pages would be released in their entirety to plaintiff; however, portions of the remaining 508 pages were redacted pursuant to 5 U.S.C. §§552 (b)(6) and (b)(7)(C ).  Moorer Decl., ¶ 16.

15.    Exemption (b)(6) exempts personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. The types of

records redacted in this release included: Personal and private information of BOP staff and non-BOP staff.  Moorer Decl., ¶ 17.

16.   Exemption (b)(7)(C ) provide for the withholding of records or information compiled for law enforcement purposes which could reasonably be expected to constitute an unwarranted invasion of personal privacy.  The types of records redacted in this release included: Documents which consisted of names of staff members, staff statements, names of inmates, and conclusions drawn from completed investigations.  Moorer Decl., ¶ 18.

Fourth Release - August 17, 2007

17.   In a letter, dated August 17, 2007, the BOP informed plaintiff of its fourth partial release of the documents determined to be responsive to this request.  This partial release was made like the three prior releases via electronic format (e-mail).  This partial release contained responsive documents from the Bureau of Prisons South Central Regional Office (SCRO).

a.   The South Central Regional Office identified, reviewed, and copied the responsive documents from 2002 and 2003.  The remaining responsive documents from 1996 to 2001were  requested from the Federal Records Center, reviewed, copied, and forwarded  to the FOIA Office. This search yielded 1,026 pages.  After a careful review, it was determined that 393 pages could be released to plaintiff in their entirety; however, portions of the remaining 633 pages were redacted pursuant to 5 U.S.C. §§552 (b)(6) and (b)(7) (C ).  Moorer Decl., ¶ 19.

18. Exemption (b)(6) exempts personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. The types of records redacted in this release included: Personal and private information of BOP staff and non-

BOP staff.  Moorer Decl., ¶ 20.

19. Exemption (b)(7)(C ) provide for the withholding of records or information compiled for law enforcement purposes which could reasonably be expected to constitute an unwarranted invasion of personal privacy.  The types of records redacted in this release included: Documents which consisted of names of staff members, staff statements, names of inmates, and conclusions drawn from completed investigations.  Moorer Decl., ¶ 21.

Fifth Release- October 15, 2007

20.  In a letter dated October 15, 2007, the BOP released 2,502 responsive pages.  It was determined that 1,720 responsive pages could be released to plaintiff in their entirety; however, portions of the remaining 782 pages were redacted pursuant to 5 U.S.C. §§552 (b)(6) and (b)(7)(C).  Moorer Decl., ¶ 22.

21.  Exemption (b)(6) exempts personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.  The types of records redacted in this release included: Personal and private information of BOP staff and non-BOP staff.  Moorer Decl., ¶ 23.

22.  Exemption (b)(7)(C ) provide for the withholding of records or information compiled for law enforcement purposes which could reasonably be expected to constitute an unwarranted invasion of personal privacy. The types of records redacted in this release included:  Documents which consisted of names of staff members, staff statements, names of inmates, and conclusions drawn from completed investigations.  Moorer Decl., ¶ 24.

Final Release- October 30, 2007

23.  In a letter dated October 30, 2007, the BOP informed the plaintiff of its final release

of documents for this FOIA request. The total amount of pages released was 4,474 pages. After a careful review, 4,474 pages of information were released and redacted in the following manner:

a. The Labor Management Relations Branch identified files responsive to the request, and forwarded the files to the FOIA Office. This search yielded 2181 pages of documents responsive to this request of which 2,108 pages were released to plaintiff in their entirety; however, portions of the remaining 73 pages were redacted pursuant to 5 U.S.C. §552(b)(6).

b. The Labor Law Branch, which consists of offices in Washington, DC; Kansas City, KS; Phoenix, AZ; Dallas, TX; and Atlanta, GA received, identified, and reviewed the files responsive to this action. That search yielded 2,293 pages of responsive documents of which 2271 pages were released to plaintiff in their entirety; however, portions of the remaining 22 pages were redacted pursuant to 5 U.S.C. §552(b)(6). Moorer Decl., ¶ 25.

24. Exemption (b)(6) exempts personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. The types of records redacted in this release included: Personal and private information of BOP staff and non-BOP staff. Moorer Decl., ¶ 26.

25. The Memorandum In Support Of Plaintiff's Motion For Summary Judgment provides examples of only a small portion of the 11,461 pages of documents in six releases to the plaintiff in response to this FOIA request. The redactions that were taken in each of the releases consisted of redactions of the name of the complainant, the complainant's address, the EEOC case number and agency case number. Other redactions were of information relating to the core of the EEO complaint and the corrective action requested. Due to the nature and status of these records the proper exemptions, 5 U.S.C. §§552 (b)(2) Low;(b)(5), (b)(6) and (b)(7)(C) were

9

made. Moorer Decl., ¶ 27.

26.  The redactions taken in the releases to plaintiff  were redactions consisting  largely of the names, address, social security numbers, and in some cases personal information of the BOP staff members and non-BOP staff members.  Each redaction that was taken was in accordance with and pursuant to the Freedom of Information Act and the exemptions permitted within 5 U.S.C. §§552  (b)(2)Low; (b)(5); (b)(6); and (b)(7)(C ).  Moorer Decl., ¶ 29.

27.  A review of the 11,461 documents provided to plaintiff reveals that the redactions taken on the first partial release of records were more restrictive then the later releases that were made to plaintiff because of the classifications of the documents and the complexity of the information contained in those documents. Moorer Decl., ¶ 30.

28. The BOP has provided all information responsive to plaintiff's request and the redactions taken were in accordance with and pursuant to the listed  exemptions. Moorer Decl., ¶ 31.

## B. SEGREGABILITY

29. No reasonably segregable non-exempt portions were withheld from plaintiff. Accordingly, all redacted information was exempt from disclosure pursuant to a FOIA exemption or was not reasonably segregable because it was so intertwined with exempt material that segregation was not possible or its release would have revealed the underlying exempt material.  All documents which relate to plaintiff's requests were processed to achieve maximum disclosure consistent with the provisions of the FOIA.  Moorer Decl., ¶ 31.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


___/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


___/s/_____
WYNEVA JOHNSON, DC Bar #278515
Assistant United States Attorney

11

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PRISON LEGAL NEWS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No.: 05-1812 (RBW) |
| | ) | |
| HARLEY G. LAPPIN, DIRECTOR, | ) | |
| FEDERAL BUREAU OF PRISONS[1] | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

I. INTRODUCTION

Plaintiff's motion for summary judgment fails to establish any substantial challenge to the

adequacy of the search or the justifications for the exemptions asserted to withhold information

in 11,461 pages of responsive documents.

Plaintiff argues that the exemptions asserted by defendant for the responsive documents

are "far in excess of that allowed under FOIA," see Plaintiff's Motion For Summary Judgment

("Pl.'s Motion"), III. Argument at p. 10.   Specifically, plaintiff alleges that defendant's fourth

release "contained such extensive redactions it was impossible" to determine the precise subjects.

Pl's Motion, 4. Fourth Release at p. 5. Second, plaintiff alleges that defendant "failed to disclose

_____

[1] Although the Director of the Federal Bureau of Prisons and the Bureau of Prisons, a
sub-component of the United States Department of Justice are named as defendants, the
Department of Justice is the sole proper party to be sued in this action.  See Ginarte v. Mueller,
534 F.Supp.2d 135, 136 -137 (D.D.C.,2008)(citing Thomas v. Federal Aviation Admin., 2007
WL 219988, *3 (D.D.C.); Kidder v. F.B.I., 517 F.Supp.2d 17, 20 n. 1 (D.D.C.2007) ("The DOJ
is an executive agency to which the FOIA applies."))

responsive documents." Id. Specifically, plaintiff alleges that defendant's third release had "no fewer than 31" documents consisting of solely docket sheets in which no other information was provided and that PLN did not request docket sheets. Pl's Motion, 3. Third Release at p. 4. Plaintiff also alleges that the Federal Bureau of Prisons failed to include "complaints, judgments, claims forms, and vouchers" mentioned in those disclosures. Id. at p. 5. Finally, plaintiff alleges that in the fifth release, case files provided "lacked the requested settlements" including only a notice and not the settlement. Id.

Plaintiff's challenges are without merit because the exemptions asserted are applicable and FOIA does not require an agency to create and retain records, but rather to provide access to records that have been retained. Chavez-Arellano v. U.S. Dept. of Justice, 2006 WL 2346450, 5 (D.D.C.,2006)(citing Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 130, 151-52 (1980)). The BOP reasonably searched its archived records from the various branches and sections to process plaintiff's request. Through this motion, defendant United States Department of Justice on behalf of its sub-component, the BOP, hereby requests that the Court deny plaintiff's motion for summary judgment and enter judgment in defendant's favor and dismiss this matter with prejudice. As set forth below, defendant has adequately justified all materials withheld from disclosure pursuant to the relevant FOIA exemptions.

## II. PROCEDURAL BACKGROUND

On September 13, 2005, plaintiff, Prison Legal News filed this FOIA complaint challenging the Federal Bureau of Prisons' refusal to grant a waiver of all search and duplication fees associated with an August 6, 2003 FOIA request made under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2000). See Complaint for Declaratory and Injunctive Relief

2

("Compl."), ¶¶ B,C. On June 26, 2006, this Court granted plaintiff's motion for summary

judgment and granted plaintiff a fee waive for processing its request. <u>See</u> Computerized Court

PACER Docket ("R."), 18.  On September 5, 2006, this Court further ordered defendant to

"advise the Court of the of the time that will be required to process plaintiff's FOIA request by

September 15, 2006." R. Minute Order, dated September 26, 2006.  The BOP FOIA Office

searched, gathered, reviewed, and released 11,461 pages of information to plaintiff.  Declaration

of Wilson Moorer ("Moorer Decl")., ¶ 6.  The requested information was released to plaintiff

between May 4, 2007 and October 31, 2007. <u>Id</u>., ¶ 6.  There were a total of six (6) releases made.

<u>Id</u>.  Defendant submits its cross motion for summary judgment regarding those releases.

### III. FACTUAL BACKGROUND

This case arises from an August 6, 2003 FOIA request in which plaintiff requested the

following information: "a copy of all documents showing all money paid by the BOP for lawsuits

and claims against it. This is all funds paid out to claimants/litigants between January 1, 1996

through and including July 31, 2003. I am requesting a copy of the verdict, settlement or claim in

each case showing the dollar amount paid, the identity of the plaintiff/claimant and the legal

identifying information for each lawsuit or claim or attorney fee award. I am also requesting a

copy of the complaint (if it was a lawsuit) or the claim (if it was not) in each incident which

describes the facts underlying each lawsuit and claim." Declaration of Wilson Moorer ("Moorer

Decl."), ¶ 3.

Plaintiff's FOIA Request was assigned FOIA Request Number 2003-08557. The BOP

then conducted its search for the documents by forwarding a copy of plaintiff's FOIA Request to

the appropriate sections of the BOP to include, but not limited to: all branches of the Office of

3

General Counsel which consists of Commercial Law, Discrimination Complaints and Ethics

(which encompasses Equal Employment Opportunity), Labor Law, Legal Administrative Branch,

Legislative and Correctional Issues Branch, Litigation Branch, and Real Estate and

Environmental Branch. Moorer Decl., ¶ 4.

A copy of the request was also forwarded to the six (6) BOP Regional Offices, the

Administrative Division of the BOP (which consists of Contracts) and the Labor Management

Relations Branch. Each section/branch was instructed to identify any/all documents that were

responsive to the FOIA Request. Moorer Decl., ¶ 5.

A review of the material compiled in response to the FOIA Request reveals, the BOP

FOIA Office searched, gathered, reviewed, and released 11,461 pages of information to plaintiff.

The requested information was released to plaintiff between May 4, 2007 and October 31, 2007.

There were a total of six (6) releases made which contained non-redacted and redacted

information as described herein. Moorer Decl., ¶ 6.

*EXEMPTIONS*

First Release - May 4, 2007

In a letter, dated May 4, 2007, BOP informed plaintiff of its release of 594 pages of

responsive documents in the following manner:

a. The Litigation Branch identified and provided copies of the documents it found

to be responsive to this request. This Branch located 27 pages of documents of

which 10 pages were released in their entirety; however, portions of the remaining

17 pages were redacted pursuant to 5 U.S.C. §§552 (b)(6) and (b)(7)(C ).

b. The Real Estate and Environmental Branch researched and located all records

4

relating to this request. They searched their records for the time period January 1996 to July 2003 and found all responsive documents. This search yielded 99 pages of documents that were released in their entirety to plaintiff.

c. The Commercial law Branch completed their initial search of their documents data base to find the files they believed were responsive to this request. They did not find any files/documents that were responsive to this action. Their second search consisted of conducting a file by file search of the files from 1996 to 2003 to verify the accuracy of their data base, which also produced no responsive documents

d. The Discrimination Complaints and Ethics Branch (which encompasses Equal Employment Opportunity) identified documents contained in their archived files from 1996 to 2003. The total of 468 pages of responsive documents were found, of which 79 pages were released in their entirety; however, portions of the remaining 389 pages were redacted pursuant to 5 U.S.C. §§552 (b)(2)Low; (b)(6); and (b)(7)(C ). Moorer Decl., ¶ 7.

Exemption (b)(2)Low exempts from mandatory disclosure records relating solely to the internal personnel rules and practices of an agency. The types of records redacted with this exemption included the internal numbering system used by the EEOC, the Agency, and the BOP to categorize their cases and the various telephone numbers used by the BOP at its numerous institutions. This information, redacted under Exemption (b)(2), pertains entirely to internal rules of the BOP and EEOC. Moorer Decl., ¶ 8.

Exemption (b)(6) exempts personnel and medical files and similar files the disclosure of

which would constitute a clearly unwarranted invasion of personal privacy. The types of records redacted in this release included: Personal and private information of BOP staff and non-BOP staff. Moorer Decl., ¶ 9.

Exemption (b)(7)(C ) provides for the withholding of records or information compiled for law enforcement purposes which could reasonably be expected to constitute an unwarranted invasion of personal privacy. The types of records redacted in this release included: Documents provided to the plaintiff because the documents consisted of names of staff members, staff statements, names of inmates, and conclusions drawn from completed investigations. Moorer Decl., ¶ 10.

Second Release – May 25, 2007

In a letter dated, May 25, 2007, BOP informed plaintiff of its release of 1,965 pages of responsive records. These pages were searched, reviewed, redacted, and released in the following manner:

a. The Mid-Atlantic Regional Office (MARO) identified and requested the administrative tort claims and litigation files responsive to this request from the various National Archive Centers and reviewed the documents. This search yielded 388 pages of documents responsive to this request of which 202 pages were released to plaintiff in their entirety; however, portions of the remaining 186 pages were redacted pursuant to 5 U.S.C. §§552 (b)(2) Low; (b)(5); (b)(6); and (b)(7)(C ).

b. The South East Regional Office (SERO) identified and requested the administrative tort claims and litigation files responsive to this request from the

6

National Archive Center. This search yielded 309 pages of documents responsive

to this request of which 234 pages were released to plaintiff in their entirety;

however, portions of the remaining 75 pages were redacted pursuant to 5 U.S.C.

§§552 (b)(2)Low; (b)(6); and (b)(7)(C ).

c. The North Central Regional Office (NCRO) identified all the relevant

documents that are responsive to this action archived at the Federal Records

Center. The NCRO Legal staff reviewed, copied, and forwarded the responsive

documents to the FOIA Office North Central Regional Office. That search yielded

1,268 pages of documents responsive to this request, of which 960 pages were

released to plaintiff in their entirety; however, portions of the remaining 308 pages

were redacted pursuant to 5 U.S.C. §§552 (b)(2)Low; (b)(5); (b)(6); and

(b)(7)(C ). Moorer Decl., ¶ 11.

Exemption (b)(2)Low exempts from mandatory disclosure records relating solely to the

internal personnel rules and practices of an agency. The types of records redacted with this

exemption included the internal numbering system used by the BOP to categorize its civil cases.

The exemption was also used to redact certain banking information that would reveal account

numbers and routing numbers, the various telephone numbers used by the BOP at its numerous

institutions and the personal telephone numbers of BOP staff and non-BOP staff. This

information, redacted pursuant to Exemption (b)(2), pertains entirely to internal rules of the BOP.

Moorer Decl., ¶ 12.

Exemption (b)(5) allows exemption of information intended for staff use only the

disclosure of which would tend to inhibit frank communication between prison officials or

correspondence that is deliberative in nature. The types of records redacted with this exemption included privileged attorney-client communications between BOP Attorneys/staff and staff of the US Attorney's Office and other staff not of the US Attorneys Office and other staff. These records include staff statements given for Federal Administrative Tort Claims and information shared during the investigation of claims against the BOP. Moorer Decl., ¶ 13.

Exemption (b)(6) exempts personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. The types of records redacted in this release included: Personal and private information of BOP staff and non-BOP staff. Moorer Decl., ¶ 14.

Exemption (b)(7)(C ) provides for the withholding of records or information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. The types of records redacted in this release included: Documents which consisted of names of staff members, staff statements, names of inmates, and conclusions drawn from completed investigations. Moorer Decl., ¶15.

Third Release – July 30, 2007

In a letter, dated July 30, 2007, BOP informed plaintiff of its release of 900 pages from the North East Regional Office (NERO), which identified the administrative tort claims that were responsive to this request. These files along with the litigation files that were identified were requested from the National Archive Center. Once the files were received, the NERO Legal staff reviewed, copied, and forwarded the responsive documents to the FOIA Office. After a careful review, the NERO staff determined 392 pages would be released in their entirety to plaintiff; however, portions of the remaining 508 pages were redacted pursuant to 5 U.S.C. §§552 (b)(6)

and (b)(7)(C ). Moorer Decl., ¶ 16.

Exemption (b)(6) exempts personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. The types of records redacted in this release included: Personal and private information of BOP staff and non-BOP staff. Moorer Decl., ¶ 17.

Exemption (b)(7)(C ) provides for the withholding of records or information compiled for law enforcement purposes which could reasonably be expected to constitute an unwarranted invasion of personal privacy. The types of records redacted in this release included: Documents which consisted of names of staff members, staff statements, names of inmates, and conclusions drawn from completed investigations. Moorer Decl., ¶ 18.

Fourth Release – August 17, 2007

In a letter, dated August 17, 2007, BOP informed plaintiff of its fourth partial release of the documents determined to be responsive to this request. This partial release was made like the prior three releases via electronic format (e-mail). This partial release contained responsive documents from the Bureau of Prisons South Central Regional Office (SCRO). Moorer Decl., ¶19.

a. The South Central Regional Office identified, reviewed, and copied the responsive documents from 2002 and 2003. The remaining responsive documents from 1996 to 2001were requested from the Federal Records Center, reviewed, copied, and forwarded to the FOIA Office. This search yielded 1,026 pages. After a careful review, it was determined that 393 pages could be released to plaintiff in their entirety; however, portions of the remaining 633 pages were redacted

9

pursuant to 5 U.S.C. §§552 (b)(6) and (b)(7)(C ).

Exemption (b)(6) exempts personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. The types of records redacted in this release included: Personal and private information of BOP staff and non-BOP staff. Moorer Decl., ¶20.

Exemption (b)(7)(C ) provides for the withholding of records or information compiled for law enforcement purposes which could reasonably be expected to constitute an unwarranted invasion of personal privacy. The types of records redacted in this release included: Documents which consisted of names of staff members, staff statements, names of inmates, and conclusions drawn from completed investigations.  Moorer Decl., ¶21.

Fifth Release - October 15, 2007

In a letter, dated October 15, 2007, the BOP released 2,502 responsive pages. After a careful review, it was determined that 1,720 pages could be released to plaintiff in their entirety; however, portions of the remaining 782 pages were redacted pursuant to 5 U.S.C. §§552 (b)(6) and (b)(7)(C ). Moorer Decl., ¶22.

 Exemption (b)(6) exempts personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. The types of records redacted in this release included: Personal and private information of BOP staff and non-BOP staff. Moorer Decl., ¶23.

Exemption (b)(7)( C ) provides for the withholding of records or information compiled for law enforcement purposes which could reasonably be expected to constitute an unwarranted invasion of personal privacy. The types of records redacted in this release included: Documents

which consisted of names of staff members, staff statements, names of inmates, and conclusions

drawn from completed investigations. Moorer Decl., ¶24.

Final Release October 30, 2007

In a letter dated, October 30, 2007, BOP informed the plaintiff of its final release of

documents for this FOIA request. The BOP released 4,474 responsive pages in the following

manner:

a. The Labor Management Relations Branch identified files responsive to the

request and forwarded the files to the FOIA Office. This search yielded 2,181

pages of documents responsive to this request of which 2,108 pages were released

to plaintiff in their entirety; however, portions of the remaining 73 pages were

redacted pursuant to 5 U.S.C. §552(b)(6).

b. The Labor Law Branch, which consists of offices in Washington, DC; Kansas

City, KS; Phoenix, AZ; Dallas, TX; and Atlanta, GA received, identified, and

reviewed the files responsive to this action. That search yielded 2,293 pages of

responsive documents of which 2,271 pages were released to plaintiff in their

entirety; however, portions of the remaining 22 pages were redacted pursuant to 5

U.S.C. §552(b)(6). Moorer Decl., ¶25.

Exemption (b)(6) exempts personnel and medical files and similar files the disclosure of

which would constitute a clearly unwarranted invasion of personal privacy. The types of records

redacted in this release included: Personal and private information of BOP staff and non-BOP

staff. Moorer Decl., ¶26.

The Memorandum In Support Of Plaintiff's Motion For Summary Judgment provides

11

examples of only a small portion of the 11,461 pages of documents in six releases in response to this FOIA request.  The redactions that were taken in each of the releases consisted of redactions of the name of the complainant, the complainant's address, the EEOC case number and agency case number. Other redactions were of information relating to the core of the EEO complaint and the corrective action requested. Moorer Decl., ¶28.

The redactions taken in the releases to plaintiff were redactions consisting largely of the names, address, social security numbers, and in some cases personal information of the BOP staff members and non-BOP staff members. Each redaction that was taken was in accordance with and pursuant to the Freedom of Information Act and the exemptions permitted within 5 U.S.C. §§552 (b)(2)Low; (b)(5); (b)(6); and (b)(7)(C ). Moorer Decl., ¶29.

A review of the 11,461 documents provided to the plaintiff, reveals that the redactions taken on the first partial release of records were more restrictive then the later releases that were made to plaintiff, because of the classifications of the documents and the complexity of the information contained in those documents. Moorer Decl., ¶30.

 The BOP has provided all information responsive to plaintiff's request and the redactions taken were in accordance with and pursuant to the appropriate exemptions. Moorer Decl., ¶31.

## II.  ARGUMENT

### A. SUMMARY JUDGMENT STANDARD

In a FOIA action, summary judgment is appropriate when, as here, the pleadings, together with the declarations, demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Fed. R Civ. P. 56(c); Alyeska Pipeline Serv. Co, v. EPA, 856 F.2d 309, 313 (D.C. Cir. 1988) (conflict in declarations alone insufficient to preclude entry of summary judgment). The Court exercises de novo review over FOIA matters, and the burden is on the agency to justify all non-disclosures. 5 U.S.C. § 552(a)(4)(B); Department of Justice v. Reporters Comm. For Freedom of the Press, 489 U.S. 749, 755 (1989). In carrying its burden, agencies may rely on declarations of government officials which courts normally accord a presumption of expertise in FOIA as long as the declarations are sufficiently clear and detailed and submitted in good faith. Oglesby v. Department of Army, 920 F.2d 57, 68 (D.C. Cir. 1990).  In reviewing the agency declaration, the principal issue is not whether the agency's search uncovered responsive documents, but whether the search was reasonable. Oglesby, 920 F.2d at 67 n. 13 (citing Meeropol v. Meese, 790 F.2d 942, 952-53 (D.C.Cir.1986)); Moore v. Aspin, 916 F.Supp. 32, 35 (D.D.C.1996). The agency need not establish that a search for every record in the system was conducted or that such a search was perfect. See Defenders of Wildlife v. U.S. Dept. of Agriculture, 311 F.Supp.2d 44, 54 (D.D.C., 2004)(citing SafeCard Servs., Inc. v. Sec. & Exch. Comm'n, 926 F.2d 1197, 1201 (D.C.Cir.1991); Meeropol, 790 F.2d at 952, 956. Nor is the agency under a burden to establish the location of a document where "the agency is no longer in possession of the document[ ] for a reason that is not itself suspect." SafeCard Servs., 926 F.2d at 1201.   Because defendant here has

13

released all non-exempt responsive documents on claims challenged by the plaintiff, summary judgment should be granted.

**B.** **Plaintiff's Challenge to the Adequacy of BOP's Search Must Fail Because the Searches Executed For the Six Releases Were Entirely Adequate**

Plaintiff's Motion For Summary Judgment challenges the adequacy of the searches executed for the six releases by alleging that the responsive documents are "far in excess of that allowed under FOIA,"( See Pl.'s Motion") at p. 10 and that defendant "failed to disclose responsive documents." Id. at 5. Plaintiff provides examples of incomplete files and docket sheets that were not in the class of records requested to prove these assertions. Pl's Motion, 3.

In FOIA cases, "the Court's inquiry regarding the adequacy of the search focuses on the search itself, not its results." See Burnes v. CIA, No. 05-242, U.S. Dist LEXIS 20114 at *2-7 (D.D.C. Sept. 14, 2005) (attached), citing Weisberg v. United States Dept. of Justice, 240 U.S. App. D.C. 339, 745 F.2d 121, 126 (D.C. Cir. 1982). To fulfill an agency's obligations under FOIA, the agency must demonstrate that it has conducted a "search reasonably calculated to uncover all relevant documents." Steinberg v. U.S. Dept. of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). But the search need only be reasonable; it does not have to be exhaustive. Miller v. United States Dept. of State, 779 F.2d 1378, 1383 (8th Cir. 1985).

This Court has held that "a motion for summary judgment adequately underpinned is not defeated simply by bare opinion or an unaided claim that a factual controversy persists." Judicial Watch, Inc. v. HHS, 27 F. Supp. 2d 240, 243-44 (D.D.C. 1998) (explaining that plaintiff's "bare suspicion" will not call into question adequacy of agency's search).

In the instant case, plaintiff has an unreasonable suspicion that defendant artificially

14

limited the searches to limit the responsive documents by not searching or retrieving every archived settlement record; however, the declaration of Mr. Moorer shows the contrary. See Pl.'s Motion, generally. Plaintiff's assertion solely rests on the fact that the archived files produced failed to contain all the records referenced in those files.  These files, dating back nearly fifteen years,  were retrieved from the Federal Records Center for a seven year period from branches and sections of BOP around the nation. See Moorer Decl at ¶¶3-5.  In fact, due to the time period requested,  only one section could search both its files and its database, the Commercial Law Branch,  which consequently yielded no responsive records. Moorer Decl., ¶ 5(c).  Plaintiff asserts that an incomplete archived record establishes proof that defendant failed to disclose responsive documents. This is insufficient proof under FOIA.

For an agency to have improperly withheld records, it must have possession or control over the records. Chavez-Arellano v. U.S. Dept. of Justice, 2006 WL 2346450, 5 (D.D.C.,2006)(citing Nat'l Sec. Archive v. Archivist of the U.S., 909 F.2d 541, 546 (D.C.Cir.1990)).  The fact that the agency once possessed potentially responsive records that subsequently have been destroyed does not preclude the entry of summary judgment for the agency. Chavez-Arellano, 2006 WL 2346450, 5 (citing Landmark Legal Found. v. EPA, 272 F.Supp.2d 59, 65 (D.D.C.2003). FOIA does not require agencies to retain records. Wilbur v. CIA, 355 F.3d 675, 678 (D.C.Cir.2004).

Here, as explained by Wilson Moorer, Paralegal Specialist, Office of the Chief Counsel, Bureau of Prisons, Washington D.C., a reasonable, diligent, and adequate search was conducted by the various branches and sections.   An adequate  file search was carried out by BOP.  Moorer Decl. ¶¶ 12-13.  This search was conducted in good faith and  reasonably calculated to uncover

15

any responsive documents.  Id.

### B.  BOP Has Justified its Invocation of Freedom of Information Act Exemptions

**1.  BOP Properly Applied Exemption 2**

Title 5, United States Code, Section 552 (b)(2) (hereinafter Exemption 2) exempts from

mandatory disclosure records "related solely to the internal personnel rules and practices of an

agency." 5 U.S.C. § 552(b)(2). Courts have applied Exemption 2 to several categories of

information: so called "Low 2" exemptions were applied here, which includes "trivial

administrative data such as file numbers, mail routing stamps, initials, data processing notations,

and other administrative markings...." Dorsett v. U.S. Dept. of Treasury, 307 F.Supp.2d 28, 36

(D.D.C.,2004); see also Coleman v. FBI, 13 F.Supp.2d 75, 78-79 (D.D.C.1998) (citing Lesar v.

DOJ, 636 F.2d 472 (D.C.Cir.1980)).  BOP has asserted Exemption 2 of the FOIA under a low

(b)(2) exemption with respect to internal agency information that appear on responsive records.

Specifically, the types of records redacted with this exemption included the internal numbering

system used by the EEOC, the Agency, and the BOP to categorize their cases and the various

telephone numbers used by the BOP at its numerous institutions. This information, which is all

of the information that BOP has redacted from the subject documents under Exemption (b)(2),

pertains entirely to internal rules of the BOP and EEOC. Moorer Decl., ¶ 8.

Exemption 2 applies primarily to two types of materials: (1) internal agency matters so

routine or trivial that they could not be "subject to ... a genuine and significant public interest;"

and (2) internal agency matters of some public interest "where disclosure may risk

circumvention" of statutes or agency regulations. Department of Air Force v. Rose, 425 U.S. 352,

16

369-70 (1976); <u>National Treasury Employees Union v. United States Custom Service</u>, 802 F.2d

525, 528-30 (D.C. Cir. 1986); <u>Crooker v. Bureau of Alcohol, Tobacco and Firearms</u>, 670 F.2d

1051, 1073-74 (D.C. Cir. 1981).

BOP has asserted Exemption (b)(2)(low) of FOIA as to internal agency information that

appear on records that are responsive to plaintiff's request. Moorer Decl., ¶¶8 and 12.

Specifically, defendant exempted from disclosure internal agency case file numbers and other

telephone numbers. <u>Id</u>. The file and numbers appearing on the case files are used for the purposes

of indexing, storing, locating, retrieving and distributing information within the agencies of

EEOC and BOP. <u>Id</u>. While these case file numbers have internal significance, they are trivial in

nature and bear no relation to the substantive contents of the records, however they could be used

to obtain the identities of third parties. <u>Id</u>. Therefore, the disclosure of these file numbers to the

public would not assist the public in understanding how the agency is carrying out its statutory

responsibilities. Defendant also withheld the telephone number of BOP and non-BOP staff

members. <u>Id</u>. Telephone numbers relate to the internal practices of the agency in that they are to

be utilized by agency personnel in the performance of their duties. <u>Id</u>. The disclosure of these

numbers would not assist the public in understanding how the agency is carrying out its statutory

responsibilities. <u>Id</u>.

The BOP properly invoked Exemption (b)(2) (low) to protect case file numbers of EEOC

cases and the telephone numbers of BOP and non BOP staff appearing in the case files. Moorer

Decl., ¶¶ 8, 12. <u>Id</u>. Aside from the purposes of indexing, storing, locating, retrieving and

distributing information, these file numbers and telephone numbers also indicate various aspects

of the agency EEOC investigations. <u>Id</u>. The disclosure of these file numbers could assist third

parties in deciphering internal administrative information regarding third parties, which could potentially assist unauthorized parties in gaining improper access to the internal systems and enable them to review that information. This would jeopardize the integrity of the EEOC and BOP systems handing such personnel matters and would impair their ability to conduct agency business. Id. Accordingly, these file numbers and telephone numbers are properly withheld under the low (b)(2) exemption.

### b. BOP Properly Invoked Exemption 5

Section 552(b)(5) of Title 5 ("exemption 5") exempts from disclosure "inter-agency or intra-agency  memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5).  Accordingly, Exemption 5 ensures that the public cannot obtain, through FOIA, documents "which a private party could not discover in litigation with the agency." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 148 (1975), citing EPA v. Mink, 410 U.S. 73, 85-86 (1973).  The exemption incorporates the attorney-client privilege, the attorney work-product privilege, and the executive "deliberative process" privilege that protects candid internal discussion of legal or policy matters[.]"  Maricopa Audubon Society v. United States Forest Serv., 108 F.3d 1082, 1084 n.1 (9th Cir. 1997).

The privilege is designed to encourage frank and uninhibited communication among government officials in the course of creating public policy.  NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149-51 (1975); Petroleum Info Corp. V. U.S. Dept. of Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992); Access Reports v. Dept. of Justice, 926 F.2d 1192, 1194-1195 (D.C. Cir. 1991).  The deliberative process privilege remains even after a final decision has been made, because "disclosure at any time could inhibit the free flow of advice."  Federal Open Market

Comm. v. Merrill, 443 U.S. 340, 360 (1979).  The privilege protects the consultative functions of

the Government by preserving the confidentiality of opinions, recommendations, and

deliberations which constitute part of the process by which government decisions are made and

Government policies are formulated.   Jordan v. United States Dept. of Justice, 591 F.2d 753,

772 (D.C. Cir. 1978) (en banc).

Since "Exemption 5 'was intended to protect not simply the deliberative material, but also

the deliberative process of agencies,'" National Wildlife Federation v. United States Forest Serv.,

861 F.2d 1114, 1118 (9th Cir. 1988) (quoting Montrose Chemical Corp. v. Train, 491 F.2d 63,

71 (D.C. Cir. 1974)) the courts have found that even factual materials may be encompassed

within the privilege.

Documents are part of the deliberative process when they are "actually related to the

process by which policies are formulated," and "antecedent to the adoption of an agency policy."

Jordan v. United States Dep't of Justice, 591 F.2d 753, 775 (D.C. Cir. 1978).  Moreover,

documents reflecting an "agency's group thinking in the process of working out its policy and

determining what its law shall be," are exempt under FOIA Exemption 5.   Id. (quoting Sears,

Roebuck & Co. v. NLRB, 421 U.S. at 153).[2]

---

[2]        The courts have held that staff evaluations of factual circumstances and the
conclusions drawn from such submissions form "the essence of the deliberative process."
National Wildlife Federation v. United States Forest Serv., 861 F.2d 1114, 1121 (9th Cir. 1988).
Additionally, reports or other documents that summarize issues and advise superiors are
protectable under the deliberative process privilege.  See Access Reports v. Department of
Justice, 926 F.2d at 1196-97; Williams v. Department of Justice, 556 F. Supp. 63, 654 (D.D.C.
1982).  Courts consistently have held staff analysis and advice -- whether supportive or critical of
the position finally adopted by the agency -- to be protected under the deliberative process
privilege.  See, e.g., Long Beach Container Terminal, Inc. v. Occupational Safety & Health
Review Comm'n, 811 F.2d 477, 479 (9th Cir. 1987) ("because courts are usually prohibited from
inquiring into an administrator's decision making mental process, it follows that the mental

In this case, defendant invokes FOIA exemption 5, as justification for withholding

attorney-client communication between BOP attorneys/staff and staff of the US Attorney's

Office and other BOP staff.  These records include staff statements given for Federal

Administrative Tort Claims and information shared during the investigation of claims against the

BOP.  Moorer Decl., ¶ 13.  For this reason, the BOP properly withheld those records.  Id.

### c.     Defendant Has Properly Invoked FOIA Exemption (b)(6)

FOIA exemption (b)(6) provides for the withholding of matters contained in "personnel

and medical files and similar files the disclosure of which would constitute a clearly unwarranted

invasion of personal privacy." 5 U.S.C. §552(b)(6). In reviewing the term "similar files," the

Supreme Court has held that exemption (b)(6) "` [was] intended to cover detailed Government

records on an individual which can be identified as applying to that individual.'" See Stolt-

Nielsen Transp. Group Ltd. v. U.S. 480 F.Supp.2d 166, 178 -179 (D.D.C., 2007) (citing

Department of State v. Washington Post Co., 456 U.S 595, 602 (1982)) (quoting H.R. Rep. No.

1497, 89th Cong., 2d Sess. 11, reprinted in 1966 U.S. Code Cong. & Admin. News 2428); New

York Times Co. v. NASA, 920 F.2d 1002, 1005 (D.C. Cir. 1990) (en banc). To properly invoke

Exemption (b)(6), the agency must show that the information applies to a particular individual

and is personal in nature. Stolt-Nielsen Transp. Group Ltd., 480 F.Supp.2d 166, 179 (citing N.Y.

Times Co. v. NASA, 852 F.2d 602, 606 (D.C.Cir.1988)).  This broad construction of "similar

files" was necessary in view of Congress's primary purpose in enacting exemption 6, which was

_____

processes of staff members are totally irrelevant"); Nat'l Wildlife Fed'n v. Burford, 677 F. Supp.
1445, 1457-58 (D. Mont. 1985).

"to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." Washington Post Co., 456 U.S. at 599.

The BOP has invoked exemption (b)(6) in this case to withhold personal and private information of BOP staff and non-BOP staff. Moorer Decl., ¶ 14. As this information can "be identified as applying to [a particular] individual," Washington Post Co., 456 U.S. at 602, the information is contained in files that satisfy the threshold requirement of exemption (b)(6) as defined by the Supreme Court.

Once it is established that the withheld information meets the threshold requirement of exemption (b)(6), a determination must then be made as to whether disclosure would constitute a "clearly unwarranted invasion of personal privacy." This requires balancing of the individual interest in privacy against public interest in disclosure. See Department of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749 (1989) (Reporters Committee); Department of the Air Force v. Rose, 425 U.S. 352, 372 (1976). The limiting language, "clearly unwarranted invasion of personal privacy," strikes "a proper balance between protection of an individual's right of privacy and preservation of the public's right to Government information by excluding those kinds of files the disclosure of which might harm the individual." Department of the Air Force v. Rose, 425 U.S. at 372 (citations omitted).

The first step in assessing the propriety of a withholding of information under exemption (b)(6) requires an identification of the privacy interest at issue. See Reporters Committee, 489 U.S. at 763. In the usual case, the Court looks to see whether the information requested, if released, would violate a recognized privacy interest of the subject of such information. See Schell v. Department of Health & Human Services, 843 F.2d 933, 938 (6th Cir. 1988); Ripskis v.

21

Department of Housing and Urban Development, 746 F.2d 1, 3 (D.C. Cir. 1984). Here, such a

privacy interest clearly exists because the information withheld consists of the EEOC files and

information obtained for litigation including the personal identifying information of individuals.

See Moorer Decl. at ¶¶ 7,8, 12, 15, and 22.

Once a privacy interest has been found to exist, a determination regarding whether

information has been properly withheld necessitates a balancing of the individual's right to

privacy against the public's right of access to information in government files. See, e.g.,

Department of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749 (1989). If a

document invades a third party's privacy, and does not contain "official information" shedding

light on government functions, it may be withheld. Id. at 774.

Accordingly, the BOP has demonstrated that it properly withheld information that

would constitute a clearly unwarranted invasion of personal privacy. Therefore, FOIA exemption

(b)(6) was properly invoked and summary judgment on this issue should be granted in favor of

the Defendant.

### b. BOP Invoked Exemption (b)(7)(C) Properly

Exemption 7(C) of the FOIA exempts from mandatory disclosure information compiled

for law enforcement purposes when disclosure "could reasonably be expected to constitute an

unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C) . "[T]he term 'law

enforcement purpose' is not limited to criminal investigations but can also include civil

investigations and proceedings in its scope." Mittleman v. Office of Personnel Management, 76

F.3d 1240, 1243 (D.C. Cir. 1996), cert. denied, 519 U.S. 1123 (1997), citing Pratt v. Webster,

673 F.2d 408, 420 n.32 (D.C. Cir. 1982). BOP is considered a law enforcement agency, see

Duffin v. Carlson, 636 F.2d 709, 713 (D.C.Cir.1980) (concluding that BOP is a "criminal law enforcement authority").  When, however, a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies."  Keys v. U.S. Dept. of Justice, 830 F.2d 337, 340 (D.C. Cir. 1987), citing Pratt, 673 F.2d at 418.  A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least 'a colorable claim' of its rationality.'"  Keys, 830 F.2d at 340, quoting Pratt, 673 F.2d at 421.

Once the agency has demonstrated that the records were compiled for law enforcement purposes, the Court must next consider whether the release of information withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  This determination necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files.  See, e.g., U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 776-780 (1989).

The Supreme Court has made clear that "whether disclosure of a private document under Exemption 7( C ) is warranted must turn on the nature of the requested document and its relationship to 'the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny,' Department of Air Force v. Rose, [425 U.S. 352, 372 (1976)], rather than on the particular purpose for which the document is being requested."  Reporter's Committee, 489 U.S. at 772 (internal quotation marks omitted).  Information that does not directly reveal the operations or activities of the government "falls outside the ambit of the public interest that the FOIA was enacted to serve."  Id. at 775.  That public interest is to "shed[] light on an agency's performance of its statutory duties."  Id. at 772.  The plaintiff bears the burden of

23

establishing that the "public interest in disclosure is both significant and compelling in order to overcome legitimate privacy interests." Perrone v. FBI, 908 F. SUPP. 24, 26 (D.D.C. 1995), citing Senate of Puerto Rico v. Department of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987).

Exemption 7(C) consistently has been held to protect the identities of suspects and other persons of investigatory interest who are identified in agency records in connection with law enforcement investigations. Reporters Committee, 489 U.S. at 780; Computer Professionals for Social Responsibility v. U.S. Secret Service, 72 F.3d 897, 904 (D.C. Cir. 1996) (noting "'strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity'" (quoting Dunkelberger v. Dept. of Justice, 906 F.2d 779, 781 (D.C. Cir. 1990)). Indeed, an agency may categorically assert Exemption 7(C) to protect the identities of witnesses or other persons mentioned in law enforcement files in such a way as to associate them with criminal activity. Reporters Committee, 489 U.S. at 780; Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 893, 895-896 (D.C. Cir. 1995); SafeCard Services, 926 F.2d at 1206.

The records deemed responsive to the plaintiff's FOIA request are the names of staff members, staff statements, names of inmates, and conclusions drawn from completed investigations for such matters like administrative tort claims. Moorer Decl., ¶¶ 8, 13, 16, 19, and 22. The records requested from settlements all administrative matters handled by BOP for a seven year period contained records compiled during law enforcement investigations. Id. 5 U.S.C. § 552 (b)(7)(C ) sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. These files contain names and other identifying

24

information which would reveal the identity of and disclose personal information about individuals who were involved. The individuals are protected from the disclosure of their identities. Id..

In making the determination to withhold this information, the BOP attempted to balance the individuals' privacy interests against any discernible public interest in disclosure of the individuals' identities. In this instance, the privacy interests outweighed any potential public interest. Thus, disclosure of certain identities would be an unwarranted invasion of their personal privacy. Id. There is no public interest to be served by releasing the identities of third parties from this internal law enforcement investigation.

## C. SEGREGABILITY.

The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue sua sponte." Trans-Pacific Policing Agreement v. United States Customs Service, 177 F.3d 1022, 1028 (D.C. Cir. 1999). The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); Mead Data Cent., Inc. v. United States Dept. of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements". Mead Data, 566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed. Id. All that is required is that the

25

government show "with 'reasonable specificity'" why a document cannot be further segregated.

Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996).

Moreover, the agency is not required to "commit significant time and resources to the separation

of disjointed words, phrases, or even sentences which taken separately or together have minimal

or no information content." Mead Data, 566 F.2d at 261, n.55.

In this case, BOP  has demonstrated with reasonable specificity that all reasonably

segregable information has been released.  The declaration of Wilson Moorer, Paralegal

Specialist, FOIA Division at the Federal Bureau of Prisons  within the U.S. Department of

Justice describes in detail the non-segregable information, and the reasons why partial releases

cannot be made. Moorer Declaration ¶ 31.  In sum, the BOP has properly responded to plaintiff's

FOIA request and has provided plaintiff with all of the reasonably segregable nonexempt

information to which it is entitled.

### III.  **CONCLUSION**

_____For the foregoing reasons, defendant BOP respectfully requests entry of summary

judgment.

Respectfully submitted,


_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


__/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


__/s/_____
WYNEVA JOHNSON, DC Bar #278515
Assistant United States Attorney
555 4th Street, N.W.,
Washington, D.C. 20530
(202) 514-7224

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this __ day of July, 2008 a copy of the foregoing Defendant's

Cross Motion for Summary Judgment and Opposition to Plaintiff's Motion For Summary

Judgment, Statement of Material Facts and Opposition to Plaintiff's Statement of Material Facts,

Memorandum in Support, all attachments, and proposed order has been served by first class

United States mail, postage prepaid, to:

_____
Wyneva Johnson
Assistant United States Attorney