IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PRISON LEGAL NEWS )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>HARLEY G. LAPPIN, Director, )<br>Federal Bureau of Prisons )<br>)<br>Defendant. )<br>_____ ) | Civil Action No. 05-1812 (RBW) |

**DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF MATERIAL FACTS AS TO <u>WHICH THERE IS NO GENUINE ISSUE</u>**

Pursuant to Local Rule 7(h), Defendant Federal Bureau of Prisons (BOP) hereby submits Defendant's Second Supplemental Statement of Material Facts as to which there is no Genuine Dispute supported by the Supplemental Declarations of: Kimberly Blow, Administrative Technician for the Litigation Branch of the Office of General Counsel, BOP, Washington, D.C.; Renée Brinker-Fornshill, Assistant General Counsel for Litigation Branch of the Office of General Counsel, BOP, Washington, D.C.; Kathleen White, Senior Equal Employment Opportunity Specialist for the Discrimination and Ethics Branch of the Office of General Counsel, BOP, Washington, D.C.; Deidre J. Williams, Paralegal Specialist for Labor Law Branch of the Office of General Counsel, BOP, Washington, D.C; Cynthia Lawler, Paralegal Specialist for the Real Estate and Environmental Law Branch of the Office of General Counsel, BOP, Washington, D.C.; Docia M. Casillas, Supervisory Labor Management Relations Specialist for the Labor Management Relations Section, BOP, Washington, D.C.; LeeAnn Tufte, Paralegal Specialist for the North Central Regional Office, BOP, Kansas City, Kansas; Michael

D. Tafelski, Deputy General Counsel for the Northeast Regional Office, BOP, Philadelphia, Pennsylvania; Alecia S. Sillah, Senior Paralegal for the Mid-Atlantic Regional Office, BOP, Annapolis, Maryland; Karen Summers, Paralegal Specialist for the South Central Regional Office, BOP, Dallas, Texas; Christine M. Greene[1], Paralegal Specialist for the Southeast Regional Office, BOP, Atlanta, Georgia; Vickie Petricka, Supervisory Paralegal Specialist for the Western Regional Office, BOP, Dublin, California. These declarations describe the search for documents in response to the following Freedom of Information Act (FOIA) request:

> A copy of all documents showing all money paid by the BOP for lawsuits and claims against it. This is all funds paid out to claimants/litigants between January 1, 1996 through and including July 31, 2003. I am requesting a copy of the verdict, settlement or claim in each case showing the dollar amount paid, the identity of the plaintiff/claimant and the legal identifying information for each lawsuit or claim or attorney fee award. I am also requesting a copy of the complaint (if it was a lawsuit) or the claim (if it was not) in each incident which describes the facts underlying each lawsuit and claim.

In addition, this Second Supplemental Statement of Material Facts Not in Dispute is also supported by the May 14, 2010 Supplemental Declaration of Wilson Moorer and Vaughn Index.

THE SEARCH

*OFFICE OF GENERAL COUNSEL – LITIGATION BRANCH*

1. Kimberly Blow conducted a search for responsive records in the Litigation Branch of the Office of General Counsel. The only responsive records maintained in the Litigation Branch of the Office of General Counsel are located in Content Manager, a computer database that contains information about cases against the Bureau. Supplemental Blow Decl. at ¶3. The only

---

[1] Ms. Greene is providing a Supplemental Declaration for the previously filed Declaration of Georgeanne Osborn.

2

means of creating an accurate and complete list of responsive records maintained in Central Office was to review Content Manager. Id. at ¶4.

2. Ms. Blow conducted the review of Content Manager by utilizing the pre-formatted search criteria for searching Content manager. The criteria used were date range and case resolution. Ms. Blow restricted the dates of the search to January 1, 1996, through and including, July 31, 2003. She restricted the case resolution to "settled". Id. at ¶5.

3. Based on Ms. Blow's review of Content Manager, all responsive claims maintained in the Central Office – Litigation Branch were identified. Id. at ¶5.

4. Ms. Reneé Brinker Fornshill also conducted a search for records in the Office of General Counsel, Litigation Branch. Supplemental Fornshill Decl. at ¶6.

5. Ms. Brinker Fornshill reviewed the database and file cabinet in her search for relevant documents. Id. at ¶4. She conducted a review by searching in the electronic tort claim database for the words "approved" and "payment" as search terms, in which two tort claim letters were identified. Id. at ¶5.

*OFFICE OF GENERAL COUNSEL – DISCRIMINATION COMPLAINTS AND ETHICS BRANCH*

6. Kathleen White conducted the search for documents in the Discrimination Complaints and Ethics Branch of the Office of the General Counsel by searching Lawpack for all EEO complaints that had the description of "SETT", which indicates "Settlement" from January 1, 1996 through and including July 31, 2003.[2] Lawpack does not make the distinction as to whether settlements are monetary or non-monetary. For each case that had a settlement

---

[2] Lawpack is a web based database program used to log, categorize and maintain lawsuits filed against the BOP by inmates and civilians.

indicated, the hard copy of the complaint file was retrieved from the file room and the complaint and settlement were manually retrieved to determine if the terms of the settlement were monetary or non-monetary. This search and review process took several weeks to complete. Supplemental White Decl. at ¶5.

7. Ms. White's review of approximately 190 EEO complaints that had settlements entered from January 1, 1996 through and including July 31, 2003 revealed that all responsive claims maintained in Central Office had been identified. The Lawpack Database is the only source that would reveal responsive documents maintained by the Central Office. Id. at ¶6.

*OFFICE OF GENERAL COUNSEL – LABOR LAW BRANCH*

8. Deidre J. Williams conducted the search for records in the Labor Law Branch of the Office of General Counsel. In conducting the search for documents, the only means of creating an accurate and complete list of responsive records maintained in the Labor Law Branch was to review quarterly reports sent to the Labor Law Branch which had been prepared by attorneys assigned to the Labor Law Branch. The respective quarterly reports chronologically track and identify the status of every case assigned to each Labor Law Branch attorney. The quarterly reports are sent to Ms. Williams via electronic mail, printed and maintained in paper format in her office. Supplemental Williams Decl. at ¶4.

9. Ms. Williams conducted the search for documents by gathering the hard copies of the quarterly reports prepared by the attorneys for the relevant time period, specifically from January 1, 1996, through and including July 31, 2003. Her review of the quarterly reports involved reviewing each report to identify every case wherein a decision, verdict, or settlement involved monetary damages or attorney's fees had been noted. Id. at ¶5.

10. Ms. Williams' review of the quarterly reports revealed that all responsive claims maintained in the Labor Law Branch had been identified. The quarterly reports are the only source that would reveal responsive documents maintained by the Labor Law Branch. Id. at ¶6.

*OFFICE OF GENERAL COUNSEL – REAL ESTATE AND ENVIRONMENTAL LAW BRANCH*

11. Cynthia Lawler conducted the search for documents in the Real Estate and Environmental Branch of the Office of General Counsel (REEL). The only means of creating an accurate and complete list of responsive records maintained in the Real Estate and Environmental Law Branch was to review the real estate and environmental files. The documents reviewed were located in the office filing system. The files are arranged in alphabetical order by institution/region. Supplemental Lawler Decl. at ¶4.

12. A list of relevant files were determined by the attorneys in the office. Ms. Lawler reviewed each file to determine accurate dates and relevancy to the request. The relevancy of the documents was confirmed by the attorneys in the office. Id. at ¶5.

13. Ms. Lawler's review of the real estate and environmental files revealed that all responsive claims maintained in REEL had been identified. The real estate and environmental files are the only source that would reveal responsive documents maintained by REEL. Id. at ¶6.

*LABOR MANAGEMENT RELATIONS OFFICE*

14. Docia M. Casillas conducted the search for documents in the Labor Management Relations Office. In conducting the search for documents, the only means of creating an accurate and complete list of responsive records maintained in the Labor Management Relations Office was to look inside file cabinets and review case files which would have included all settlements or decisions maintained at the time the Labor Management Relations Office received

5

the request. Supplemental Casillas decl. at ¶4.  Each case file was reviewed for decisions and settlements that were issued during the specified period of time. Id. at ¶5.

15.  All responsive claims maintained in the Labor Management Relations Branch were identified during the office's review of all case files.  The decisions and settlements are the only source that would reveal responsive documents maintained by the Labor Management Relations Branch.  Id. at ¶6.

## *NORTH CENTRAL REGIONAL OFFICE*

16.  Leeann Tufte conducted the search for records in the North Central Regional Office (NCR).  The only means of creating an accurate and complete list of responsive records maintained in the NCR was to review the Federal Tort Claim Act (FTCA) databases for all paid claims between January 1, 1996, through July 31, 2003, and review the NCR Monthly Reports for this time period. Supplemental Tufte Decl. at ¶4.

17.  In conducting the search for records, Ms. Tufte requested an electronic search of the FTCA database for any claims that were paid during the described time period.  This entailed a search of two databases.  First, the "LAWPACK" database covered the time period for October, 2000, through, the July 31, 2003.  Second, for records prior to October of 2000, the "dBase" system was searched for the requested information.[3]  A query was run in LAWPACK by identifying only those FTCA claims that had an amount awarded for payment.  It was then narrowed to exclude inmate property claims. Id. at ¶5.  A query was run in dBase by identifying only those FTCA claims that were greater than $0 in the amount paid.  Id. at ¶5.

18.  The two search lists produced all FTCA claims that were paid by the NCR for the specific time period.  It was then narrowed to exclude inmate property claims.  This narrowing

---

[3] dBase was the database used by the BOP prior to LAWPACK.

was done by reviewing the databases for each FTCA claim and identifying each specific claimant as either inmate, staff or civilian. All FTCA claims with inmate claimants were excluded from the search. Id. at ¶5.

19. The search reports provided the FTCA number, name, register number, amount paid, closed date, institution, and the type of claim. All of the FTCA files for this time period were either stored at the NCR file room or the Federal Records Center (FRC). No copies of the claim or payment records were maintained in the database. The office was required to retrieve all hard paper files for each claim. For the time period in question these records were kept in paper format. The paper version is currently and for the time period in question, the official BOP record. Id. at ¶5.

20. There are no electronic databases maintained for litigation files in the North Central Region. The only documents which would identify any litigation cases that were awarded a settlement of verdict awarding payment are the monthly reports. The monthly reports contained a section for reporting any adverse decisions of settlements or judgment awards. The monthly reports in the Regional Counsel's office are maintained in hard paper format. A hard bound binder for each year, containing twelve monthly reports, are maintained in the NCR file room. Each binder for 1996-2002, and the subsequent twelve monthly reports located in those binders, were reviewed for any cases listed as adverse decision or settlement/verdict awarded. The 2003 binder and monthly reports were searched for the months of January through July. The office review revealed that fifty-one (51) cases were listed in the monthly reports that could possibly be responsive. Id. at ¶5.

21. The generated search report in LAWPACK identified ninety-eight (98) claims as responsive. The generated search report in dBase identified nineteen (19) claims as responsive.

22. The NCR file room was searched for those FTCA claim files that were stored in the office and had not been shipped to the FRC. All FTCA claims for 2003 were in the NCR file room and filed numerically by claim number. Twenty-one (21) of the ninety-eight files were located in the NCR file room and the responsive documents (claim form (SF-95), and proof of payment, voucher for payment form, etc.) were copied for submission as responsive. Id. at ¶5.

23. The remaining FTCA files required retrieval from the Federal Records Center (FRC). The Regional Counsel's office in the NCR maintains a hard bound logbook for all archived legal files (litigation and FTCA files) mailed to the FRC, since 1999. Both the archive logbook and correspondence from the FRC identifies the location of each file stored at the FRC for each separate year. Id. at ¶5.

24. The NCR also contacted each Consolidated Legal Center (CLC) for assistance in searching any of their litigation files for the remaining files for responsive records to those files which were not located in the NCR file room or at the FRC. CLC staff located six (6) of the litigation case files. Once these records were received from the NCR file room, FRC and the CLC, the responsive documents (complaint, stipulation or order revealing verdict or settlement) were copied for submission as responsive. Of the fifty-one (51) cases identified, forty-one (41) cases were located and their subsequent responsive records were provided for submission. Id. at ¶5.

*NORTHEAST REGIONAL OFFICE*

25. In conducting the search for documents at the Northeast Regional Office (NERO), the most thorough method to identify responsive cases was through the use of the monthly reports, maintained on-site at the NERO, which reflect litigation cases in which a settlement or judgment occurred. Supplemental Declaration of Michael Tafelski at ¶4.

26. In determining which responsive administrative tort claim records existed, the NERO staff developed a list of administrative tort claim files in which the Bureau paid money damages to claimants for the relevant time period. The most thorough method to identify responsive tort records was the Tort Information Management System (TIMS) program, which was utilized by the Bureau from 1992 until October 1999 and the Lawpack database from November 1999 until October 2007. These electronic file systems were used for Federal Tort Claims Act (FTCA), CECA, and BOPCA administrative claims, and identified settlement offers. Id. at ¶4.

27. The search for litigation matters was conducted by a review of an electronic version of each monthly report for the entire time period in question (January 1, 1996, through July 31, 2003.). For tort claims, a review was conducted of the databases for claims paid the entire time period in question (January 1, 2996, through July 31, 2003.) excluding property claims. Id. at ¶5.

28. Mr. Tafelski's review of the electronic monthly reports, PACER, TIMS and Lawpack revealed that all responsive claims maintained in the Northeast Regional Office had been identified. The electronic monthly reports, PACER, TIMS and Lawpack were the sources that would reveal responsive documents maintained by the Northeast Region. Id. at ¶6.

## *MID-ATLANTIC REGIONAL OFFICE*

29. Alecia Sillah conducted the search for records in the Mid-Atlantic Regional Office. The only means of creating an accurate and complete list of responsive records maintained in the Mid-Atlantic Regional Office was to review the Mid-Atlantic Regional Office's Monthly Reports from January 1996 through July 2003. Each monthly report provides the litigation and tort claim settlements paid to a complainant/plaintiff. The monthly reports were reviewed and the cases were identified that were settled during the requested time period. Ms. Sillah then searched the litigation files in the office for the specific cases.

30.  Ms. Sillah requested the files from the Federal Records Center, Suitland, Maryland 20746, as most of the files were archived.  After receipt of the boxes from archives, Ms. Sillah searched and retrieved from each box the responsive litigation and tort claim settlement files. Supplemental Sillah Decl. at ¶4.

*SOUTH CENTRAL REGIONAL OFFICE*

31.  Karen Summers responded on the search for documents in the South Central Regional Office (SCRO).  For the time period in question, the official Bureau record for litigation and administrative claim files were kept in paper format. Summers decl. at ¶4.

32.  The list for responsive documents was generated through use of the monthly reports, maintained on-site at the SCRO, which reflect litigation cases in which a settlement or judgment occurred.  The monthly reports contain a section entitled, Cases with Settlement or Awards.  This section of each monthly report was manually reviewed to develop the list in which the Bureau paid money damages and/or attorney's fees to litigants or claimants for the relevant time period. Id. at ¶5.

33.  In searching for the responsive administrative claim records, the Tort Information Management System (TIMS) program, utilized by the Bureau of 1992 until October 1999, and the Lawpack database, containing information from November 1999 until October 2007, were searched.  The databases were used to generate a list of administrative claim files where settlement offers were made.  The institution financial management staff was contacted, and thereafter, forwarded settlement documentation for those claims that had been paid.  Id. at ¶6.

*SOUTHEAST REGIONAL OFFICE*

34.  Christine Greene provided a Supplemental Declaration to the previously filed Declaration by Georganne Osborn for the search for documents in the Southeast Regional Office

(SERO). The only means of creating an accurate and complete list of responsive records maintained in SERO was to generate a report utilizing the Lawpack database for all responsive administrative torts. All Tort Claims processed by SERO for the time period in question were logged into Lawpack. Greene Decl. at ¶4.

35. Ms. Osborn also conducted a search of responsive litigation documents by reviewing the Southeast Regional log. This log contains the relevant information for litigation processed by SERO office for the time period in question. Ms. Osborn's review of the log revealed that all responsive claims were identified. Id. at ¶5. The log and Lawpack search report are only sources that would reveal responsive documents maintained by SERO. Id. at ¶6.

## *WESTERN REGIONAL OFFICE*

36. Vickie Petricka conducted the search for documents in the Western Regional Office by reviewing Lawpack and the Western Regional Counsel's monthly reports. Supplemental Petricka Decl. at ¶4.

37. In the search on Lawpack, a query was run for the time period in question for claims paid in the Western Regional Office. The staff reviewed the monthly reports for the time period in question for claims paid. The review of Lawpack and the Regional Counsel's monthly reports revealed that all responsive files for the Western Region were identified. At the time, the Lawpack database and the Regional Counsel's monthly report were the only sources that would reveal responsive documents maintained by the Western Region. Id. at ¶5.

THE EXEMPTIONS

**SUPPLEMENTAL DECLARATION OF WILSON MOORER**

38. Mr. Moorer personally reviewed the 11,461 pages of responsive documents that were forwarded to him. Supplemental Moorer Decl. at ¶8 (May 14, 2010).

39. The exemptions applied by Mr. Moorer are set forth in the attached *Vaughn Index*. Exemptions (b)(6), (b)(7)(C), and (b)(2) Low were applied to the releases on May 4, 2007 (594 pages were released-188 in their entirety and 416 with redactions); on May 25, 2007 (1965 pages were released-1396 in their entirety and 569 with redactions); on July 30, 2007 (900 pages were released-392 in their entirety and 508 with redactions); August 17, 2007 (1026 pages were released-393 in their entirety and 633 with redactions); on October 15, 2007 (2502 pages were released-1720 in their entirety and 782 with redactions); and on October 30, 2007 (4474 pages were released-4379 in their entirety and 95 with redactions). Id. at ¶9.

40. The Vaughn Index is separated into categories of documents as the exemptions were applied to each respective category. Federal Tort Claims Act (FTCA) documents included Standard Form SF-95 and Settlement Vouchers.  Litigation documents included complaints filed in district courts, settlement documents generated in connection with claims filed in district court, and judgements reached in connection with claims filed in district court.  EEOC documents included Complaint of Discrimination Form DOJ201, Settlement Agreements, Order of Dismissal, Settlement or Comprise Agreement, Notice of Settlement, Agency Offer of Resolution, Order of Stipulation and/or Merit Systems Protection Board Settlement Agreements. Labor Management Relations document is  the Merit Systems Protection Board Appeal Form. Labor Law documents included Settlement, Settlement Agreements, Judgements, and Joint Stipulation of Entry of Final Judgment.  Each category contained a number of general correspondence which included e-mails, facsimile cover sheets, letters. Id. at ¶10.

Tort Claim Form, SF 95

a.      All personal names, all personal addresses, all personal telephone numbers, all personal social security numbers, and other personal information were exempted pursuant to (b)(6) and (b)(7)(C) and applied to protect the personal information of individuals who filed a tort claim and the personal information of BOP staff who filed a tort claim. The disclosure of this information would constitute an unwarranted invasion of personal privacy of the individuals;

Tort Claim Judgments

b.      All personal names, all personal addresses, and personal social security numbers were exempted pursuant to (b)(6) and (b)(7)(C) and applied to protect the personal information of individuals and BOP staff who received financial judgments for tort claim they filed. The disclosure of this information would constitute an unwarranted invasion of personal privacy of the individuals;

Tort Claim Settlements

c.      All personal names, all personal addresses, all personal social security numbers, and personal banking information were exempted pursuant to (b)(6) and (b)(7)(C) and applied to protect the personal information of individuals and BOP staff who received financial settlements for tort they filed. The disclosure of this information would constitute an unwarranted invasion of personal privacy of the individuals;

Litigation

d.      All personal addresses, all personal telephone numbers, all personal social security numbers, and all personal vehicle information were exempted pursuant to (b)(6) and (b)(7)(C) and applied to protect the personal information of individuals and BOP staff named as defendants in litigation. The disclosure of this information would constitute an unwarranted invasion of personal privacy of the individuals;

Complaint of Discrimination, Form DOJ 201

e.      All personal names, all personal addresses, all personal telephone numbers, EEOC file/Agency file numbers, and personal identifying information of the complainants and a summary of the complaint were exempted pursuant to (b)(6) and (b)(7)(C) and applied to protect portions of the complaint that revealed personal information regarding the complainant, the circumstances regarding the complaint, and information regarding BOP staff.  The disclosure of this information would constitute an unwarranted invasion of personal privacy of the individuals;

### EEO Settlements and Judgments

f. All personal names and EEOC file/Agency file numbers were exempted pursuant to (b)(6), (b)(7)(C) and (b)(2) Low.  Exemptions (b)(6) and (b)(7)(C) were applied to protect the names of individual complainants who filed complaints of discrimination against the BOP and received a settlement. Exemption (b)(2)Low was applied to the EEOC file number and agency file number of complaints filed against the BOP where a judgement/settlement was entered.  The disclosure of this information would constitute an unwarranted invasion of personal privacy of the individuals;

### Labor Management Relations

g. Personal identifying psychiatric/medical information of individual appellants who filed complaints against the BOP were exempted pursuant to (b)(6)and applied to protect the personal psychiatric and medical records of individuals who have filed a labor grievance against the BOP. The disclosure of this information would constitute an unwarranted invasion of personal privacy of the individuals; and

### Labor Law

h. All social security numbers were exempted pursuant to (b)(6) and applied to protect the social security numbers of individuals who have filed a grievance against the BOP. The disclosure of this information would constitute an unwarranted invasion of personal privacy of the individuals.

*See Vaughn Index.*

                    Respectfully submitted,

                    RONALD C. MACHEN JR.
                    United States Attorney
                    for the District of Columbia

                    RUDOLPH CONTRERAS
                    Chief, Civil Division

                    By: _____
                    WYNEVA JOHNSON, D.C. BAR
                    Assistant U.S. Attorney
                    555 4th Street, N.W.
                    Washington, D.C. 20530
                    (202) 514-7224
                    wyneva.johnson@usdoj.gov

Of Counsel:

C. Darnell Stroble
Assistant General Counsel
FOIA/Privacy Act – Central Office
Federal Bureau of Prisons