**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **PRISON LEGAL NEWS** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 05-1812 (RBW)** |
| ) | |
| **HARLEY G. LAPPIN, Director,** ) | |
| **Federal Bureau of Prisons** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S RENEWED CROSS-MOTION FOR SUMMARY JUDGMENT AND
PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT[1]**

**I. INTRODUCTION**

Plaintiff filed an August 6, 2003 Freedom of Information Act (FOIA) request with the

Federal Bureau of Prisons (BOP) and sought the following information:

> A copy of all documents showing all money paid by the BOP for
> lawsuits and claims against it.  This is all funds paid out to
> claimants/litigants between January 1, 1996 through and including
> July 31, 2003.  I am requesting a copy of the verdict, settlement or
> claim in each case showing the dollar amount paid, the identity of
> the plaintiff/claimant and the legal identifying information for each
> lawsuit or claim or attorney fee award.  I am also requesting a copy
> of the complaint (if it was a lawsuit) or the claim (if it was not) in
> each incident which describes the facts underlying each lawsuit
> and claim.

Wilson J. Moorer, Paralegal Specialist, BOP Office of General Counsel, Freedom of

Information Act Section, Washington D.C., conducted the search for the responsive documents

to the request.  In response to Plaintiff's FOIA request, the BOP searched all branches of the

---

[1] Although Plaintiff designates its pleading as a "Renewed Motion for Summary Judgment, Plaintiff has attached no
Statement of Material Facts Not in Dispute.

BOP's Office of General Counsel, six BOP Regional offices, the BOP's Administrative Division and the BOP's Labor Management Relations Branch.  Defendant did not withhold any responsive documents in their entirety.  The BOP initially released 8,468 pages of documents without redactions and 2,993 pages of documents with redactions.  The releases were dated May 4, 2007 (594 pages), May 25, 2007 (1,965 pages), July 30, 2007 (900 pages), August 17, 2007 (1,026 pages), October 15, 2007 (2,502 pages), and October 30, 2007 (4,474 pages).

In its Cross-Motion for Summary Judgment, Reply, Motion for Reconsideration, and twelve declarations describing the search for documents, Defendant argued that it conducted a reasonably adequate search for the records requested, that the exemptions were properly applied, and that all responsive documents were produced.

In a February 25, 2010 Order, this Court found that the Defendant had failed to establish the adequacy of its search, in that the previously filed declarations "fall short of explaining, in reasonable detail, the scope and method of the search."  Order at 8.

The Court further stated that Defendant had not justified all exemptions that it sought in the Declarations of Wilson Moorer.  The Court found that "Mr. Moorer lacks the personal knowledge necessary to speak to the information redacted, and he also fails to note how the exemptions specifically apply to each redacted document." Order at 10.

In response to this Court's February 25, 2010 Order, Defendant submitted a May 14, 2010 Supplemental Declaration by Wilson Moorer in which Mr. Moorer advised the Court that he personally redacted the information in the initial release of 2,993 pages and invoked the exemptions sought. Supplemental Declaration of Wilson Moore at ¶ 8.  In addition, as the Court had indicated that a Vaughn Index would be helpful, a Vaughn Index was attached to Mr.

Moorer's Declaration which set forth the exemptions sought for each category of document. May 14, 2010 Supplemental Declaration of Wilson Moore at ¶¶ 9-10.[2]

In response to the Court's concerns regarding the adequacy of the search, Defendant submitted twelve additional declarations which provided the specificity and detail of the searches in the individual twelve offices. These declarations outlined the responsive documents maintained in each of the respective offices and the manner in which each office conducted a search for documents responsive to the Plaintiff's FOIA request.  Supplemental declarations were attached by Kimberly Blow (Office of General Counsel – Litigation Branch), Dorcia M. Casillas (Labor Management Relations Office), Renee Brinker Fornshill (Office of General Counsel – Litigation Branch), Christine M. Greene (Southeast Regional Office), Cynthia Lawler (Office of General Counsel – Real Estate and Environmental Law Branch), Vickie Petricka (Western Regional Office), Alevia S. Sillah (Mid-Atlantic Regional Office), Karen Summers (South Central Regional Office), Michael D. Tafelski (Northeast Regional Office), LeAnn Tufte (North Central Regional Office), Kathleen White (Office of General Counsel – Discrimination Complaints and Ethics Branch) and Deidre J. Williams (Office of General Counsel – Labor Law Branch).[3]

Defendant then renewed its Cross-Motion for Summary Judgment and argued that the May 14, 2010 Supplemental Declaration of Wilson Moorer, with the Vaughn Index, and the Supplemental twelve declarations addressed the Court's concerns with regard to the adequacy of the search and the basis for the exemptions sought herein.  In addition, Defendant attached a May 28, 2010 Declaration by Wilson Moorer to its Renewed Cross-Motion for Summary Judgment. In the May 28, 2010 Declaration, Moorer described a new supervisory review of the 2,993 pages

---

[2] For the Convenience of the Court, Mr. Moorer's May 14, 2010 Supplemental Declaration and Vaughn Index are attached to this Reply.
[3] These supplemental declarations will be referred to below as "Supp Decl."

containing redactions, which resulted in 422 additional pages of documents released to Plaintiff.[4] Thus, based on its previous Memoranda, the Moorer Supplemental Declaration, Second Supplemental Declaration, Third Supplemental Declaration, discussed <u>infra</u>, and Vaughn Index, Defendant submits that it has conducted a reasonable and adequate search for documents, that the exemptions were properly applied, that all responsive documents have been provided and summary judgment should be granted for Defendant.

## II.   PLAINTIFF HAS FAILED TO SUBMIT A RESPONSE TO DEFENDANT'S SECOND SUPPLEMENTAL STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

Plaintiff has failed to submit a Response to Defendant's Statement of Material Facts Not in Dispute filed with Defendant's Renewed Cross Motion for Summary Judgment.  Local Rule 7(h) requires that an opposition to a motion for summary judgment "be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement."  When a non-moving party fails to comply with Local Rule 7(h), the Court may assume that the facts identified by the moving party are admitted.  See Local Civ. Rule 7(h).

In the Opposition, Plaintiff states "[p]ursuant to Local Rule 7(h), a concise Statement of Genuine Issues setting forth all material facts as to which there exists genuine issues necessary to be litigated is incorporated herein and supported by the affidavit of Paul Wright.  Opposition at 1.  Plaintiff's Statement, however, does not comply with the Local Rule 7(h).

"[L]egal conclusions "cloaked" as facts are not sufficient to create a genuine issue of material fact.   And, of course, the parties are obligated, pursuant to Local Rule 108(h) [now

---

[4] For the Convenience of the Court, Moorer's May 28, 2010 Declaration is attached to this Reply, and is now designated as the Second Supplemental Declaration.

Local Civ. R. 7(h) and 56.1], to identify the material facts and point to evidence of record that supports their respective positions.  Jackson v. Finnegan, Henderson, Farabow, Garrett, 101 F.3d 145, 150-51 (D.C. Cir. 1996)."  United States v. BCCI Holdings, 977 F. Supp. 1, 6 (D.D.C. 1997), aff'd mem., 159 F.3d 637 (D.C. Cir. 1998).  Accordingly, the facts presented in Defendant's Statement of Material Facts Not in Dispute should be deemed admitted.

### III.    BOP SEARCHED FOR AND PROVIDED ALL RESPONSIVE RECORDS TO THE PLAINTIFF.

#### A.    BOP properly searched for responsive records.

Plaintiff PLN argues that the BOP has not conducted a reasonable and adequate search for documents.  Plaintiff contends that the items received pursuant to the request are incomplete, that 10 "cases" that were received on May 28, 2010 were incomplete, that they did not meet the terms of the approved FOIA request, and that there were numerous instances throughout the 11,000 plus pages that do not provide the information it requested.  Plaintiff's Opposition at 6. To the contrary, as we set forth below, BOP has conducted an adequate, extensive search for documents and the documents resulting from that search have been provided to Plaintiff.

The standard of review in relation to a challenge to the search conducted by an agency is whether the search was reasonably calculated to uncover all relevant information related to the FOIA request.  An agency is entitled to summary judgment once it demonstrates that no material facts are in dispute that it conducted a search of records in its custody or control, Kissinger v. Reporters Committee for Freedom of the Press, 445 U.S. 136, 150-51 (1980), that was reasonably calculated to uncover all relevant information, Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. 1984), which either has been released to the requestor or is exempt from disclosure.  Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001).

The BOP is required to show that its search "us[ed] methods which can be reasonably expected to produce the information requested," Oglesby v. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990).  In the absence of contrary evidence, such affidavits or declarations reflecting a search reasonably calculated to uncover all relevant information are sufficient to demonstrate an agency's compliance with the FOIA.  Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982).

The BOP has submitted twelve declarations indicating that all offices maintaining records within the scope of the Plaintiff's request were asked to search for responsive records. Additionally, Defendant has twice presented declarations from each of the individuals who searched for material responsive to the request.  These declarations outline the offices of the BOP that would possess responsive information, the type of responsive documents that these offices maintained, the nature of the search conducted to retrieve responsive information to the Plaintiff's FOIA request, and the results of that search.

Each of these offices searched the locations that they reasonably believed would reveal responsive documents and provided the information to Wilson Moorer.   Each of the declarations clearly show that the searcher properly determined where responsive records were reasonably likely to be found and searched those locations.   See Supplemental Declaration of Kimberly E. Blow, Administrative Technician, Litigation Branch, Office of General Counsel, BOP, ("Blow Decl." ¶3); Declaration of Renee Brinker-Fornshill, Assistant General Counsel, Litigation Branch, BOP, Washington, D.C., ("Brinker Fornshill Decl." ¶3),  Declaration of Christine Greene, Paralegal Specialist, BOP, Coleman Consolidated Legal Center, ("Greene Decl." ¶3), Declaration of LeeAnn Tufte, Paralegal Specialist, BOP, Kansas City, Kansas, ("Tufte Decl." ¶¶3 and 6); Declaration of Alecia D. Sankey, Senior Paralegal Specialist, BOP, Office of General Counsel, Freedom of Information Act Section, Washington, D.C., ("Sankey Decl." ¶3);

Declaration of Kathleen White, Senior Equal Employment Opportunity Specialist, BOP, Central Office Washington, DC., ("White Decl." ¶3), Declaration of Karen Summers, Paralegal Specialist , BOP, South Central Regional Office in Dallas, Texas, (Summers' Decl." ¶3); Declaration of Vickie Petricka, Supervisory Paralegal Specialist, BOP, Western Regional Office in Dublin, California, ("Petricka Decl." ¶3); Declaration of Deidre J. Williams, Paralegal Specialist, BOP, Washington, D.C., Labor Law Branch, ("Williams' Decl." ¶3); Declaration of Docia M. Casillas**,** Supervisory Labor Management Relations Specialist, BOP, Washington, D.C., ("Casillas' Decl."¶3); Declaration of Michael D. Tafelski, Deputy General Counsel, BOP, Northeast Region, ("Tafelski Decl." ¶3), Declaration of Cynthia Lawler Paralegal Specialist, BOP, Washington, D.C., ("Lawler Decl."¶3).

Plaintiff also argues that documents appear to be missing from the response, and makes vague reference to documents that should exist but have not been provided.  Plaintiff gives no specific examples of what documents appear to be missing, save for missing "Litigation Reports" which will be discussed <u>infra</u>.  Plaintiff makes vague reference to documents that "should" exist but have not been provided.  There are, however, neither regulations nor guidelines as to what should be maintained in these types of files.  Each of the searchers, in their individual declarations, have indicated that they provided all responsive documents to Wilson Moorer.  See Declaration of Kimberly E. Blow, Administrative Technician, Litigation Branch, Office of General Counsel, BOP, ("Blow Decl." ¶6); Declaration of Renee Brinker-Fornshill, Assistant General Counsel, Litigation Branch, BOP, Washington, D.C., ("Brinker Fornshill Decl." ¶6), Declaration of Christine Greene, Paralegal Specialist, BOP, Coleman Consolidated Legal Center, ("Greene Decl." ¶7), Declaration of LeeAnn Tufte, Paralegal Specialist, BOP, Kansas City, Kansas, ("Tufte Decl." ¶7); Declaration of Alecia D. Sankey, Senior Paralegal Specialist, BOP,

Office of General Counsel, Freedom of Information Act Section, Washington, D.C., ("Sankey Decl." ¶3); Declaration of Kathleen White, Senior Equal Employment Opportunity Specialist, BOP, Central Office Washington, DC., ("White Decl." ¶7), Declaration of Karen Summers, Paralegal Specialist , BOP, South Central Regional Office in Dallas, Texas, (Summers' Decl."); Declaration of Vickie Petricka, Supervisory Paralegal Specialist, BOP, Western Regional Office in Dublin, California, ("Petricka Decl." ¶6); Declaration of Deidre J. Williams, Paralegal Specialist, BOP, Washington, D.C., Labor Law Branch, ("Williams' Decl." ¶7); Declaration of Docia M. Casillas**,** Supervisory Labor Management Relations Specialist, BOP, Washington, D.C., ("Casillas' Decl."¶7); Declaration of Michael D. Tafelski, Deputy General Counsel, BOP, Northeast Region, ("Tafelski Decl." ¶7), Declaration of Cynthia Lawler Paralegal Specialist, BOP, Washington, D.C., ("Lawler Decl." ¶7).  Thus, Plaintiff's suggestion that more documents "should exist" amounts to nothing more than speculation.

    As Plaintiff has presented no contrary evidence, the above declarations reflecting a search reasonably calculated to uncover all relevant information are sufficient to demonstrate the agency's compliance with the FOIA.  <u>Perry</u>, 684 F.2d at 127.  It must be remembered that a search need not be exhaustive, <u>Miller v. United States Dep't of State</u>, 779 F.2d 1378, 1383 (8th Cir. 1985), and the adequacy of a search is not determined by its results, but by the method of the search itself.  <u>Weisberg v. United States Dep't of Justice</u>, 745 F.2d at 1485.  Thus, an agency's failure to find a particular document (assuming that the document still exists or ever existed) does not necessarily indicate that its search was inadequate.  <u>Wilbur v. CIA</u>, 355 F.3d 675, 678 (D.C. Cir. 2004).  Thus, there is no basis for any claim by Plaintiff that the BOP has not conducted an adequate search for documents.

**B.      Litigation reports prepared by BOP legal staff in anticipation of litigation were not requested by the Plaintiff and are not responsive to the FOIA request.**

PLN argues that the BOP withheld litigation reports responsive to its request.  Plaintiff, however, did not request litigation reports in its below FOIA request.

> A copy of all documents showing all money paid by the BOP for lawsuits and claims against it.  This is all funds paid out to claimants/litigants between January 1, 1996 through and including July 31, 2003.  I am requesting a copy of the verdict, settlement or claim in each case showing the dollar amount paid, the identity of the plaintiff/claimant and the legal identifying information for each lawsuit or claim or attorney fee award.  I am also requesting a copy of the complaint (if it was a lawsuit) or the claim (if it was not) in each incident which describes the facts underlying each lawsuit and claim.

Even if litigation requests are considered part of Plaintiff's FOIA request, under the most liberal construction of Attorney Work product prepared in anticipation of litigation, Litigation Reports are exempt from disclosure as privileged attorney/client communications or as attorney work product.  Torres v. U.S. Parole Commission, No. 86-2949, 1987 WL 10241 at *1 (D.D.C. April 16, 1987) ("relevant caselaw has placed presentence reports and litigation reports within Exemption 5 [work product privilege] of FOIA.").  Although PLN erroneously received some Litigation Reports during the release of information, exemption 5 has been construed to exempt those documents.[5]  Litigation reports prepared by the BOP are reports prepared by the BOP for Assistant United States Attorneys as a result of litigation filed against the BOP and represents the agency's legal analysis of the merits of a case, proposed legal theories concerning a case, and proposed resolutions of a case.  See Watson v. Dept. of Justice, 799 F.Supp. 193, 195 (D.D.C. 1992) ("The work-product privilege extends to government as well as private attorneys."); Exxon Corporation v. Federal Trade Commission, 663 F.2d 120, 129-30 (D.C. Cir. 1980)

---

[5] Exhibits 3 and 4 attached to Plaintiff's Opposition are monthly reports, which simply list litigation activity.

(holding FTC's Economic Report "falls squarely within the work product rule because it was an 'in-depth evaluation of aspects of the theory of the case and the evidence supporting these aspects, discussions of possible future litigation strategies . . . .'").  Thus, they are exempt from disclosure pursuant to (b)(5).  FOIA Exemption 5 incorporates the work-product doctrine and protects against the disclosure of attorney work product. The work-product doctrine shields materials prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  Fed. R. Civ. P. 26(b)(3); Tax Analysts v. IRS, 117 F.3d 607, 620 (D.C.Cir.1997). And, as the Supreme Court has made clear, the doctrine should be interpreted broadly and held largely inviolate. See Judicial Watch, Inc. v. Dep.'t of Justice, 432 F.3d, 366, 369 (D.C. Cir. 2005). In Tax Analysts, the court explained that "[a]ny part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under Exemption 5. 117 F.3d at 620. In other words, factual material is itself privileged when it appears within documents that are attorney work product.  Thus, if a document is fully protected as work product, then segregability is not required.

   **C.    The BOP is not required to organize responsive documents in a specified order.**

   PLN argues that the documents submitted by the BOP were not organized in any particular manner and that PLN has to wade through over 11,000 plus pages of documents. Plaintiff asserts "[o]f the BOP's 11,000 plus pages of materials, most are useless due to disorganization, incompleteness and limitless redactions to prevent disclosure."  Opposition at 5-

6.  PLN did not make this argument to the Court prior to the Court's February 25, 2010 Order after it received documents in 2007.[6]

PLN asserts that it seeks the requested data in an organized form and requests that BOP "provide it with a spreadsheet, showing the dates, types of cases, locations, how resolved and amounts paid.  The dates and amounts paid are statistics readily available to the BOP from the U.S. Treasury Department."  Opposition at 14.  In a proposed Order attached to the Opposition, Plaintiff asks that Defendant be required to provide "a summary spreadsheet in Microsoft Word, Excel, or PDF electronic format, listing for each case the complaining party's name, the nature of the complaint(s), and dates each claim was filed, and when a settlement, release, or court's order resolving each claim was entered, the amounts paid by the BOP to resolve each claim, and further specifying the released pages containing the documentation related to each case."  Plaintiff's Proposed Order.

FOIA "was not intended to reduce government agencies to full-time investigators on behalf of requesters."  Judicial Watch, Inc. v. Export-Import Bank, 108 F.Supp.2d 19, 27 (D.D.C.2000) (internal quotation marks omitted). As such, agencies are not required to "organize documents to facilitate FOIA responses." Goulding v. IRS, Civ. No. 97 C 5628, 1998 WL 325202, at *5 (N.D. Ill. June 8, 1998) (citing N. L. R. B. v. Sears, Roebuck & Co., 421 U.S. at 161-62).

Plaintiff provides no legal support that the BOP is required to provide documents in a particular order.  Although the BOP agrees that pages should be provided in numerical order or in the order they are maintained by the agency, there is no case law or statutory requirement that

---

[6] Plaintiff has attached no documents to Plaintiff's Opposition which are "useless due to disorganization."  Although PLN states that at least 10 incomplete cases do not meet the terms of the FOIA request, PLN neither annexes the 10 cases that it references nor does PLN describe with any specificity the 10 cases for Defendant to refute Plaintiff's assertion.

an agency organize thousands of documents in a requested order or format.  The responsive records provided to plaintiff were obtained from fourteen BOP litigation and administrative offices nationwide. There is no National requirement that records be maintained in a specified format or that the files contain specified documents.  Plaintiff does not allege that the BOP provided pages within a document out of order or in an unusual fashion.  Simply put, having made an extremely broad request for documents, Plaintiff should not be heard to complain that it got what it asked for.

Mr. Moorer reviewed and forwarded the documents in the order they were received from the responsive offices.  Mr. Moorer did not send documents to PLN in a disorganized manner. He described the manner in which the documents were reviewed and forwarded to Plaintiff.

> 4.  Each office that had documents forwarded via e-mail, on CD, or as a hard copy.  Due to the number of offices sending information, the various formats that the information was sent, and the volume of responsive documents sent to me, I created a file folder on my computer with the name of each office.  If the office originally sent the responsive records to me as an e-mail with the documents attached as a Portable Document Format (PDF), I merely saved the PDFs in that office's file folder on my computer. If the office sent the documents to me as a PDF on a CD, I saved the PDF in that office's file folder on my computer.  If the office sent me hard copies of responsive records, I scanned the documents to create PDF files and then saved those PDF files in that office's file folder on my computer.  I subsequently reviewed each office's file folder and the PFDs within each respective file folder for release consideration.  Where applicable, I redacted PDF documents in accordance with FOIA standards and saved the redacted document as a separate PDF within that office's file folder.

> 5.  Plaintiff's assertion that the 11,000 plus documents were forwarded to them in a disorganized manner is inaccurate. Although I did not merge documents from the various offices that sent responsive records to create a specific organizational structure, I did send to PLN the documents in the manner that the documents were received by me from the various offices.  It is not the practice of the FOIA section to organize large volumes of

> responsive records in a particular order because there is no
> certainty if our organizational structure of the records will meet the
> requester's needs.  In my experience, am unaware of any FOIA
> guidelines that organize responsive documents in any certain
> manner.

See Moorer Declaration dated September 1, 2010.  Here, the documents were presented to PLN

in an adequate manner for a review of the material contained therein.

Moreover, PLN's request that the responsive documents be presented with a spreadsheet

showing the dates, types of cases, how resolved, amounts paid in the form of a matrix is simply

not required by the FOIA.  The general underlying policy of FOIA is to provide access to records

maintained by the government pursuant to a valid FOIA request.  The Plaintiff has cited no case

law to indicate that FOIA requires an agency to create records which do not exist, to make

records easily comprehensible by the Plaintiff, or to organize the records in a manner that the

Plaintiff believes is more commensurate with its intended purpose for the records it seeks.  In

fact, the BOP is not required to create explanatory materials.  See NLRB v. Sears, Roebuck &

Co., 421 U.S. 132, 162 (1975) (holding that agency is not required to create explanatory

materials); Jackson v. DOJ, No. 05-1889, 2006 WL 2598054, at *2 (D.D.C. September 11, 2006)

(stating that "questions about the authenticity and correctness of the released records are beyond

the scope of the court's FOIA jurisdiction"); Citizens Professive Alliance v U.S. Bureau of

Indian Affairs, 241 F.Supp. 2d 1342, 1365 (D.N.M. 2002) ("Defendants may be required to

disclose material pursuant to FOIA, but Defendants are not required to * * * explain any records

produced.")  Here, based on the Plaintiff's request, over 11,000 records were discovered as a

result of the broad request filed by the Plaintiff.  The Plaintiff should not now complain that there

are too many records, they cannot determine if the records meet their needs, or that it will be

time consuming to go through all of the records.  Thus, Plaintiff's request that the documents

should be provided in a specific format should be rejected, and the plaintiff's challenge to the BOP search for documents, based on the order in which they were received, should be rejected.

Finally, Plaintiff states that his FOIA request involves "matters that were likely resolved with a pay-out of tax payer dollars" and that his FOIA request seeks "documentation for BOP issues that were settled or adjudicated with tax payer money." Opposition at 5 and 10.

Plaintiff argues that Defendant has not provided the information. To the contrary, Defendant has provided the information in numerous documents. As the Third Supplemental Declaration by Mr. Moorer states:

> PLN was provided this information via various documents which included, but was not limited to tort claim judgments, tort claim vouchers for payments, district court settlements, Equal Employment Opportunity Commission settlements, Merit Systems Protection Board settlements, and labor law settlements/judgments. These documents reflected the amounts paid and funds provided to the individuals who had a cause of action against the BOP.

See Third Supplemental Moorer Declaration at ¶8.

Thus, Plaintiff's argument that Defendant neither conducted a reasonable search for documents nor provided responsive documents fails.

### D.   BOP is not required to search or produce records maintained by other agencies or entities.

Plaintiff argues that the BOP has not submitted any evidence to demonstrate that the BOP has searched the U.S. Treasury's website to obtain information concerning the BOP's submissions made to the U.S. Treasury's Judgment Fund.

"The agency must show that it made a good faith effort to conduct a search for the requested records, using methods which reasonably can be expected to produce the information requested." See Moore v. Aspin, 916 F.Supp. 32, 35 (D.D.C. February 22, 1996), citing Oglesby

v. Department of the Army, 920 F.2d 57, 68 (D.C.Cir.1990).  Further, "[t]here is no requirement

that an agency search every record system."  Moore, 916 F.Supp. at 35.

An agency is only required under FOIA to conduct a search of its records pursuant to a

valid FOIA request filed to the specific agency.  The BOP conducted a search of its records; it is

not required to search the records of the U.S. Department of Treasury to determine if BOP files

are complete and then supplement those files.  If  PLN has determined that the U.S. Department

of Treasury may have responsive records, it should file a FOIA request to that agency.  See

generally Bonaparte v. DOJ, No. 07-0749, 2008 WL 2569379, at**1 (D.D.C. June 27, 2008)

(finding search adequate where it revealed records had been transferred to component of the

National Archives and Records Administration (NARA), stating that requester could request

records from NARA).

### IV. BOP PROPERLY APPLIED FOIA EXEMPTIONS.

Plaintiff argues that the BOP fails to justify the exemptions applied to the 2,993 pages of

redacted documents.  Specifically, the Plaintiff alleges that the BOP justified its exemptions via a

generic categorical statement in the BOP's Vaughn Index that "the disclosure of the information

would constitute an unwarranted invasion of personal privacy of the individuals."  According to

the Plaintiff, this statement "does not demonstrate with reasonably specific detail that [the

BOP's] justification for nondisclosure logically fall within the claimed exemptions, as ordered

by [the] Court."  Opposition at 8.  Plaintiff argues that the BOP fails to connect each redaction

with specific reasons for nondisclosure, as required by the Court and supporting case law.  In

support of its argument, the Plaintiff heavily relies on state law cases, which the Plaintiff alleges

have held that settlement records were not exempt from disclosure.

A.      **The BOP withheld no documents in full.**

Contrary to the Plaintiff's assertion that the BOP has improperly withheld information, the Moorer declaration, dated July 11, 2008 , again, plainly and clearly outlined the number of documents released with redactions and those released in full. See generally Declaration of Wilson Moorer, dated July 11, 2008. The declaration cites no documents withheld in their entirety. See generally Declaration of Wilson Moorer, dated July 11, 2008, and Moorer Declaration, October 23, 2008, ¶5.

B.      **BOP Properly applied Exemption 7( C )**

Personal privacy interests are protected by Exemption 7(C).  The application of Exemption 7(C) is limited to information compiled for law enforcement purposes.  And, courts have held that Exemption 7 applies to a variety of records and information.  Law enforcement for FOIA purposes is not strictly limited to criminal investigations but also includes within its scope civil investigations.  Schiller v. INS, 205 F. Supp. 2d 648, 659 (W.D. Tex. 2002).  It is well established that the "law" to be "enforced" within the meaning of the term "law enforcement purposes" includes both civil and criminal statutes as well as those statutes authorizing administrative proceedings. See Rugiero v. U.S. Dep't of Justice, 257 F.3d 534, 550 (6th Cir. 2001); Rural Housing Alliance v. U.S. Dept. of Agriculture, 498 F.2d 73, 81(D.C. Cir. 1974).

EEOC records have been found to be compiled for law enforcement purposes.  Watkins Motor Lines, Inc. v. EEOC, No. 8:05-1065, 2006 WL 905518, at *3 (M.D. Fla. Apr. 7, 2006) (stating that because "the records were compiled while the EEOC was investigating an alleged violation of federal law, the records were compiled for law enforcement purposes") .  Likewise, Exemption 7 could be used for arbitration and other union related documents. See Aircraft Gear Corp. v. NLRB, No. 92-C-6023, slip op. at 10 (N.D. Ill. Mar. 14, 1994) (stating that documents

created in connection with NLRB unfair labor practices cases and union representation case meet threshold).

It is clear also that certain information contained in Tort Claims or other administrative claims are compiled for law enforcement purposes.  For example, Tort Claims, can have an indeterminable range of subject matter from a dinged car to a slip and fall, to claims of physical or sexual assault.  In Maydak v. U.S. Dep't of Justice, 362 F. Supp. 2d 316, 323 (D.D.C. 2005), the court found that there was "no dispute" that records involving alleged or actual assaults at federal penitentiary were compiled for law enforcement purposes. Thus, these records can be protected from disclosure.

In addition, EEO files are compiled pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e et seq.), The Age Discrimination in Employment Act of 1967, as amended(29 U.S.C. § 621 et seq.),The Rehabilitation Act of 1973, as amended (29 U.S.C. § 791et seq.), Fair Labor Standards Amendments of 1974 and 1978 and the Civil Service Reform Act of 1978.   Work-related personal property claims are processed under the Military and Civilian Employees Claims Act (CECA), 31 U.S.C. § 3721, or under the Bureau of Prisons Claims Act (BOPCA), 31 U.S.C. § 3722, unless the claim involves government negligence.  Tort Claim files are compiled pursuant to 28 U.S.C. §§ 2671-2680, Tort Claims Procedure.

Here, Exemption 7(C) was applied to the following categories of documents set forth in the Vaughn Index set forth below: Tort claims forms, Tort Judgments, Tort Claim Settlements, Litigation, Complaint of Discrimination, and EEO Settlements and Judgments.  These documents were compiled for law enforcement purposes.[7]

---

[7] The Plaintiff appears to suggest that the Form SF 95 allows the disclosure of information and that the information should be released.  The voluntary disclosure of the information on the Tort claim forms, however, relates to the disclosure of information by the claimaint to the agency, but the agency still has a duty to protect the privacy information from release to third parties.

### Tort Claim Form, SF 95

a.    All personal names, all personal addresses, all personal telephone numbers, all personal social security numbers, and other personal information were exempted pursuant to (b)(7)(C) and applied to protect the personal information of individuals who filed a tort claim and the personal information of BOP staff who filed a tort claim. The disclosure of this information would constitute an unwarranted invasion of personal privacy of the individuals;

### Tort Claim Judgments

b.    All personal names, all personal addresses, and personal social security numbers were exempted pursuant to (b)(7)(C) and applied to protect the personal information of individuals and BOP staff who received financial judgments for tort claim they filed. The disclosure of this information would constitute an unwarranted invasion of personal privacy of the individuals;

### Tort Claim Settlements

c.    All personal names, all personal addresses, all personal social security numbers, and personal banking information were exempted pursuant to (b)(7)(C) and applied to protect the personal information of individuals and BOP staff who received financial settlements for tort they filed. The disclosure of this information would constitute an unwarranted invasion of personal privacy of the individuals;

### Litigation

d.    All personal addresses, all personal telephone numbers, all personal social security numbers, and all personal vehicle information were exempted pursuant to (b)(7)(C) and applied to protect the personal information of individuals and BOP staff named as defendants in litigation. The disclosure of this information would constitute an unwarranted invasion of personal privacy of the individuals;

### Complaint of Discrimination, Form DOJ 201

e.    All personal names, all personal addresses, all personal telephone numbers, EEOC file/Agency file numbers, and personal identifying information of the complainants and a summary of the complaint were exempted pursuant to (b)(7)(C) and applied to protect portions of the complaint that revealed personal information regarding the complainant, the circumstances regarding the complaint, and information regarding BOP staff. The disclosure of this information would constitute an unwarranted invasion of personal privacy of the individuals;

EEO Settlements and Judgments

    f.        All personal names and EEOC file/Agency file numbers were exempted pursuant to (b)(7)(C).  Exemptions (b)(7)(C) were applied to protect the names of individual complainants who filed complaints of discrimination against the BOP and received a settlement.  The disclosure of this information would constitute an unwarranted invasion of personal privacy of the individuals.

See Vaughn Index.

The above information, redacted by the BOP pursuant to Exemption 7(C), is personal in nature and the public's need to know does not outweigh this interest.  Plaintiff's allegation that the exempted personal information is not properly protected under Exemption 7(C) lacks merit.

    C.    **BOP properly applied Exemption 6**

Personal privacy interests are also protected by Exemption 6.  Exemption 6 permits the government to withhold all information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."

To warrant protection under Exemption 6, information must meet the threshold requirement, that is, it must fall within the category of personnel and medical files and similar files. United States Department of State v. Washington Post Co., 456 U.S. 595 (1982). The threshold is met if the information applies to any particular, identifiable individual.

Exemption 6 was applied to the information released to the Plaintiff only in relation to :

Tort Claim Form, SF 95

    a.        All personal names, all personal addresses, all personal telephone numbers, all personal social security numbers, and other personal information were exempted pursuant to (b)(6) and applied to protect the personal information of individuals who filed a tort claim and the personal information of BOP staff who filed a tort claim. The disclosure of this information would constitute an unwarranted invasion of personal privacy of the individuals;

19

Tort Claim Judgments

b.　All personal names, all personal addresses, and personal social security numbers were exempted pursuant to (b)(6) and applied to protect the personal information of individuals and BOP staff who received financial judgments for tort claim they filed. The disclosure of this information would constitute an unwarranted invasion of personal privacy of the individuals;

Tort Claim Settlements

c.　All personal names, all personal addresses, all personal social security numbers, and personal banking information were exempted pursuant to (b)(6) and applied to protect the personal information of individuals and BOP staff who received financial settlements for tort they filed. The disclosure of this information would constitute an unwarranted invasion of personal privacy of the individuals;

Litigation

d.　All personal addresses, all personal telephone numbers, all personal social security numbers, and all personal vehicle information were exempted pursuant to (b)(6) applied to protect the personal information of individuals and BOP staff named as defendants in litigation. The disclosure of this information would constitute an unwarranted invasion of personal privacy of the individuals;

Complaint of Discrimination, Form DOJ 201

e.　All personal names, all personal addresses, all personal telephone numbers, EEOC file/Agency file numbers, and personal identifying information of the complainants and a summary of the complaint were exempted pursuant to (b)(6) and applied to protect portions of the complaint that revealed personal information regarding the complainant, the circumstances regarding the complaint, and information regarding BOP staff.  The disclosure of this information would constitute an unwarranted invasion of personal privacy of the individuals;

EEO Settlements and Judgments

f.　All personal names and EEOC file/Agency file numbers were exempted pursuant to (b)(6) and were applied to protect the names of individual complainants who filed complaints of discrimination against the BOP and received a settlement;

Labor Management Relations

g.     Personal identifying psychiatric/medical  information of individual appellants who filed complaints against the BOP were exempted pursuant to (b)(6)and applied to protect the personal psychiatric and medical records of individuals who have filed a labor grievance against the BOP.   The disclosure of this information would constitute an unwarranted invasion of personal privacy of the individuals; and

Labor Law

h.     All social security numbers were exempted pursuant to (b)(6) and applied to protect the social security numbers of individuals who have filed a grievance against the BOP. The disclosure of this information would constitute an unwarranted invasion of personal privacy of the individuals.

See Vaughn Index.

The focus of the inquiry under Exemption 6 is whether disclosure of the records at issue "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. §§ 552(b)(6). This requires a balancing of the public interest in disclosure against the individual's right to privacy.  See Dep't of the Air Force v. Rose, 425 U.S. 352, 372 (1976); Fund for Constitutional Gov't v. Nat'l Archives & Records Serv., 656 F.2d 856, 862 (D.C. Cir. 1981).

In other words, application of Exemption 6 involves identifying the relevant privacy interests in non-disclosure and the public interest in disclosure, and determining whether, on balance, disclosure would work a clearly unwarranted invasion of person privacy. Reed v. NLRB, 927 F.2d 1249, 1251 (D.C.Cir.1991), cert. denied, 502 U.S. 1047 (1992) (quoting United States Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989).

Tort cases and EEO cases involved personal injury which is personal by nature.  There is a clearly established privacy interest in names and claim descriptions. Painting and Drywall Work Preservation Fund, Inc. v. Dep't of Housing and Urban Dev., 936 F.2d 1300, 1303 (D.C.Cir.1991) (holding that the disclosure of names and addresses of construction workers from

payroll records submitted by contractors would constitute a substantial invasion of privacy not outweighed by the public interest in disclosure); Sherman v. U.S. Dep't of the Army, 244 F.3d 357, 363-64 (5th Cir. 2001) (protecting social security numbers of soldiers even though Army publicly disclosed SSNs in some circumstances, because individuals rather than government hold privacy interest in that information). Nat'l Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873, 879 (D.C. Cir. 1989); see also Int'l Bhd. of Elec. Workers Local No. 5 v. HUD, 852 F.2d 87, 89 (3d Cir. 1988) (perceiving no public interest in disclosure of employees' social security numbers); DOD v. FLRA, 510 U.S. 487, 500 (1994) (finding privacy interest in federal employees' home addresses).

To the extent that some of these claims may be filed by BOP staff, the cases in which the release of staff names are not protected, are easily distinguished. The cases in which staff names are not protected by Exemption 6 address related issues, such as the release of a staff member's name that worked on a particular project. The staff names on an EEO complaint or a CECA claim, are personal in nature. They are claims filed by an individual and should be evaluated similarly to a claim filed by non-legal staff. Purely personal details pertaining to government employees are protected under Exemption 6. Plain Dealer Publ'g Co. v. U.S. Dep't of Labor, 471 F. Supp. 1023, 1028-30 (D.D.C. 1979).

Indeed, innocuous information can be enough to trigger the protections of Exemption 6. See Dep't of State v. Wash. Post Co., 456 U.S. 595, 600 (1982). The information need not be intimate or embarrassing to qualify. Horowitz v. Peace Corps, 428 F.3d 271, 279 (D.C. Cir.2005),  cert. denied, 126 S. Ct. 1627 (2006); Nat'l Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873, 875 (D.C. Cir. 1989); Knight v. NASA, No. 2:04-2054, 2006 WL 3780901, at 5 (E.D. Cal. Dec. 21, 2006); see also Appleton v. FDA, 451 F. Supp. 2d 129, 145

(D.D.C. 2006) ("Individuals have a privacy interest in personal information even if it is not of an embarrassing or intimate nature."). Some or all information in a claim summary may be personal in nature. As a result, the redactions to the claim summary portion of the various claims were determined on a case-by-case basis using a line-by-line review. See Declaration of Wilson Moorer July 11, 2008,¶¶ 15-18.

Here, again, Plaintiff's argument lacks merit as the Opposition does not make any specific challenges to the information that was withheld by citing to the specific documents where Plaintiff believes that an improper exemption was applied.  It is evident that the Plaintiff has not examined each of the documents as the BOP has done, but would rather have the court conclude that the BOP incorrectly exempted information from release without any sound legal basis for such an argument.  PLN fails to recognize that there must exist a nexus between the information and public interest advanced by the disclosure.  Indeed, the release of individual names, under the present circumstances, does not provide more information about the government's activities. The withholding of individual claims filed by employees sheds no new light on the agency's performance.  Indeed, the public interest in disclosure is limited to showing what the government is up to—personal information about claimant does not advance that interest.[8]

---

[8] Individual claims filed and lawsuits won by BOP employees do not shed any light on agency policies, practices and procedures because the mere fact that an agency has a number of tort claims does not necessarily reflect that the agency is engaged in wrongdoing. Even knowing the success rate of such lawsuits does not reflect on agency policies, practices and procedures. Further, the fact that an agency has settled a claim does not necessarily mean that the agency, for example, engaged in the prohibited EEO act, but could merely reflect an appropriate balancing of the litigation risk versus the interest of the agency and a legal determination that settlement is in the best interest of the agency.

Clearly the information redacted by the BOP pursuant to Exemption 6 is private in nature and the public's need to know does not outweigh this interest.  As a result, the plaintiff's allegation that the exemptions are not properly protected under Exemption 6 lacks merit.

## VI. CONCLUSION

Based on the foregoing, and its previous Memoranda, Defendant requests that the Court find that Defendant has conducted an adequate search for documents, that all responsive documents have been produced, and that all exemptions have been properly made and summary judgment should be entered for Defendant.

Respectfully submitted,

RONALD C. MACHEN JR.
United States Attorney
for the District of Columbia

RUDOLPH CONTRERAS
Chief, Civil Division

By: ____/s/_____
WYNEVA JOHNSON, D.C. BAR #278515
Assistant U.S. Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7224
wyneva.johnson@usdoj.gov

Of Counsel:

C. Darnell Stroble
Assistant General Counsel
FOIA/Privacy Act – Central Office
Federal Bureau of Prisons