# EXHIBIT

# 2

EXHIBIT 2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Prison Legal News ,**

       **Plaintiff,**

                                               **Civil Action No. 05-1812 (RBW)**

                                                    **v.**

**Harley G. Lappin, Director**
**FEDERAL BUREAU OF PRISONS,**

       **Defendant.**

## DECLARATION OF PAUL A. WRIGHT

I, Paul Wright, pursuant to 28 U.S.C. § 1746, make this Unsworn Declaration Under Penalty of Perjury, and declare that the statements made below are true, and state:

1.  My name is Paul Wright.  I am the Editor of Prison Legal News.

2.  The address for my Vermont office is 1037 Western Avenue, West Brattleboro, VT 05303.

3.  I have been the editor of Prison Legal News (PLN) since its founding in 1990.

4.  PLN is an independent, monthly magazine that reports on legal and political matters involving the criminal justice system. It has published monthly since May, 1990; approximately 246 issues.

5.  PLN's subscribers include judges, lawyers, academics, journalists, libraries, law schools, universities, prison and jail officials and prisoners, among others. PLN currently has approximately 7,000 subscribers in all 50 states.

6.  In addition to our print magazine, PLN also maintains a website at

EXHIBIT 2

www.prisonlegalnews.org which contains all back issues of PLN in PDF format as well as all articles in a searchable database. Unconstrained by the economic limits of printing and postage, PLN's web site contains many more articles which have not been published in print as well as assorted other publications such as a brief bank, publications by government agencies and much more. Our website receives around 100,000 visitors per month.

7.      PLN is a respected journal in the field of detention facility litigation and reports on specialized, detailed information as well as investigative stories based largely on government records.  While PLN's circulation is small compared to general interest magazines, readers turn to PLN for its specialized coverage.  PLN has the ability to disseminate the information it gleans from its FOIA requests to an audience specifically interested in prison and jail litigation. Researchers such as the *Congressional Quarterly*, law reviews, legislative aides and others, regularly use our website to research detention facility issues and cite Prison Legal News as the source.

8.      PLN regularly reports on verdicts and settlements in prison and jail litigation. Both I, and PLN associate editor Alex Friedman, spend a substantial amount of time tracking down verdicts and settlements in detention facility cases in order to be report them in PLN.  PLN and its staff regularly use legal research services such as WestLaw, Lexis and public records services such as PACER.

9.      In my experience as a journalist and legal writer, going back to 1990, I have found that the vast majority of prison and jail settlements are not reported in any news or public archive or publication. The only people having knowledge of such settlements are

EXHIBIT 2

usually the parties. While the verdicts are contained in court records these are typically not reported on Lexis or Westlaw unless there is an appeal or the trial court decides to publish a ruling on a post trial motion. PLN reports on these verdicts and settlements as an important part of our news coverage because it allows prisoners to know if they have suffered compensable injury, and it allows attorneys to fairly evaluate a case at both the intake and settlement stages.

10.     PLN is a project of the Human Rights Defense Center, a § 501(c)(3) non profit organization. Our charter includes educating the public about prison conditions and encouraging the vindication of fundamental civil and human rights through the civil justice system. An agency's litigation track record over a multi year period is a useful analytical tool to determine how well or poorly run an agency is. PLN has used the results of similar public records requests to publish comprehensive analytical pieces on sexual assault, medical care, parole supervision and similar issues involving the Washington state Department of Corrections. These articles were published in PLN's print magazine and on our website and have subsequently been picked up by larger media outlets.

11.     PLN frequently files public records requests with agencies around the country. In most cases, the documents we request are promptly provided.

12.     In 2003 PLN submitted the Freedom of Information Act request to the defendants in this action to obtain documents that have provided the basis for similar investigative stories in the past. Agency verdict and settlement information provides a useful benchmark for citizens to determine how well or poorly the federal government is

EXHIBIT 2

managing its prison system, the largest in the country and one of the largest in the world.

13.     It has been my experience that when the documents are provided they are in a sufficient, complete and utilitarian format.

14. PLN has made hundreds of public record requests since its inception in 1990. I have significant experience in reviewing those received records.

15.     The defendant's released documents, including the latest releases received on May 28, 2010, supported by several affidavits from those administering the releases, were not provided in a manner that allows for coherent organization. The documents consisted of several hundred PDF files containing complaints, tort claims, judgments, settlement agreements and similar documents for cases finalized between 1996 and 2003.

16.     The documents were not organized by year. Nor was the initiating document (e.g., the complaint) grouped together with the finalizing document (e.g., the settlement agreement) for each case. Rather, the documents were grouped together in no discernable order.

17.     Many of the case files did not contain a complete set of documents responsive to PLN's FOIA request, or I was unable to locate all of the documents because they were received in such disarray. For example, for a number of cases, I was unable to locate the final documents and was forced to sort those case files by year filed as opposed to year finalized. Even with extensive sorting and analysis it is apparent that many documents which I requested were not provided in whole or in part.

18. Many of the documents produced were also heavily redacted. This included many documents where all the parties' identifying information, case or file number, and

EXHIBIT 2

underlying facts were completed redacted from the record. In these instances, I was unable to sort the documents in any meaningful way. Despite requests to the defendants, they refuse to produce the documents with identifying information of parties' names, case or docket numbers, underlying facts, etc. For documents to have newsworthy value they need identifying information which can be cited by users, especially when the documents are cited to the courts. At a minimum, identifying information is the case name, the case number, the court the pleading was filed in and the underlying facts that gave rise to the claim. This is precisely the information that the BOP has redacted in the bulk of the documents disclosed to date. The redaction of the underlying facts is especially troubling since knowing what happened is the only way the public can understand why the government is paying taxpayer money to plaintiff litigants. From an analytical standpoint, knowing the identity of the defendants is an important way to determine which government employees regularly engage in unlawful behavior resulting in multiple lawsuits.

19.     A number of the produced records also appear to be duplicative of one another, although this is not entirely clear due to the fact that many of the records are extensively redacted as described above.

20.     I have reviewed the affidavits submitted by the BOP in this action by employees who purport to have conducted a thorough search of agency records for the documents I have requested. The affidavits indicate the BOP has not engaged in any type of significant search for the documents I have requested.

EXHIBIT 2

21.  It is my knowledge that the BOP's Office of General Counsel in its regional offices tracks all litigation filed against the BOP and its employees and is familiar with all litigation resulting in settlements or verdicts involving the same. The regional counsel in turn submit detailed reports on litigation to BOP's general counsel at BOP headquarters in Washington DC. It appears that no one has reviewed or asked to review copies of the BOP general counsel reports or regional general counsel reports which have the information I have requested in this FOIA request which would allow the BOP to readily locate the documents I have requested.

21.     In addition to the general counsel reports, I understand that all funds paid by the United States government and its agencies must be submitted to the US treasury for the issuance of a check.

22.     The US Treasury maintains a website which, since 2004 (one year after the date of this request) lists all payments made by agency. The website, http://fms.treas.gov/judgefund/reports.asp lists payments made by agency and then traces it to cases. I have not received any information to indicate that any of the BOP affiants in this case have reviewed or tried to search the BOP submissions made to the US Treasury judgment fund to locate records responsive to my FOIA request in this case.

22.     In my opinion and experience, the manner in which the documents were produced in this case is exceptional in their lack of organization and extensive redaction. I have never encountered such disorganization in records produced by a government agency in response to a records request. This is compared to virtually identical document requests to the state prison systems of California and Texas, among others, which are similar in

EXHIBIT 2

size to the Bureau of Prisons. I found the documents produced by the defendants in this case to be of little analytical utility and difficult to comprehend due to these facts.

I understand that a false statement in this declaration will subject me to penalties for perjury. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on July ⸺ , 2010.

Signed: ⸺⸺⸺⸺⸺⸺
Paul Wright