# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| PRISON LEGAL NEWS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1812 (RBW) |
| | ) | |
| HARLEY G. LAPPIN, Director, | ) | |
| Federal Bureau of Prisons, | ) | |
| | ) | |
| Defendant. | ) | |

_____

## <u>MEMORANDUM OPINION</u>

This Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2006), action is before the

Court on Defendant Federal Bureau of Prison's (the "Bureau" or "BOP") Renewed Cross-Motion

for Summary Judgment and Memorandum in Support ("Def.'s Renewed Mot.").  The plaintiff

opposes the motion and cross moves for summary judgment.  <u>See</u> Plaintiff's Opposition to

Defendant's Renewed Cross-Motion for Summary Judgment/Plaintiff's Renewed Motion for

Summary Judgment ("Pl.'s Opp'n").  For the reasons explained below, both parties' motions are

granted in part and denied in part.[1]

## I. BACKGROUND

In 2003, the plaintiff, Prison Legal News ("PLN"), a non-profit legal journal, filed a

FOIA request with the BOP in which it sought:

---

[1]       In addition to the parties' cross motions, the Court considered the following filings, and their attached
exhibits, in resolving the parties' cross motions: the Defendant's July 14, 2008 Cross Motion for Summary Judgment
and Opposition to Plaintiff's Motion for Summary Judgment ("Def.'s July 2008 Mot."); the Defendant's Motion for
Reconsideration and Memorandum in Support and Response to the Court's March 26, 2009 Order ("Def.'s Mot. for
Recons."); the Defendant's Reply to Plaintiff's Opposition to Defendant's Renewed Cross-Motion for Summary
Judgment and Plaintiff's Renewed Motion for Summary Judgment ("Def.'s Reply"); and the Plaintiff's Response to
the Defendant's "Reply to Plaintiff's Opposition to Defendant's Renewed Cross-Motion for Summary Judgment and
Plaintiff's Renewed Motion for Summary Judgment" ("Pl.'s Resp.").

> A copy of all documents showing all money paid by the BOP for lawsuits and claims against it. This is all funds paid out to claimants/litigants between January 1, 1996 through and including July 31, 2003. I am requesting a copy of the verdict, settlement or claim in each case showing the dollar amount paid, the identity of the plaintiff/claimant and the legal identifying information for each lawsuit or claim or attorney fee award. I am also requesting a copy of the complaint (if it was a lawsuit) or the claim (if it was not) in each incident which describes the facts underlying each lawsuit and claim.

Def.'s Renewed Mot. at 1. Upon not receiving all of the information requested, the plaintiff brought suit, pursuant to the FOIA, challenging the adequacy of the defendant's search for responsive records and the defendant's withholding of records under several FOIA exemptions. See Prison Legal News v. Lappin, 603 F. Supp. 2d 124, 125 (D.D.C. 2009) (Walton, J.). The Court denied the defendant's first motion for summary judgment in March of 2009 because the sole affidavit submitted in conjunction with the defendant's motion failed to show that the Bureau's search was adequate or that it was properly withholding documents under the FOIA's exemptions. Id. at 127, 129.

The defendant then moved for reconsideration of the March 2009 Opinion and Order on the basis that an electronic transmittal error prevented the Court from receiving additional supporting affidavits. See February 25, 2010 Order at 1-2. Upon reviewing the additional declarations, the Court concluded that "the Bureau's declarations suggest that the officials made a good faith effort to conduct the search . . . [but that] the declarants f[e]ll short of explaining, in reasonable detail, the scope and method of the search." Id. at 8. Further, the Court found that "none of the newly filed declarations" addressed the validity of the Bureau's reliance on the FOIA exemptions. Id. at 10. The Court noted that it was unaware whether the Bureau had created a Vaughn index,[2] and observed that a Vaughn index would help put the Court in the position to assess the propriety of the exemptions invoked by the Bureau. Id. at 11-12. Finding

---

[2]    See Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973).

that the additional affidavits did not provide sufficient information for the Court to independently

determine if the Bureau's search was adequate, id. at 9, or whether the exemptions it relied upon

to withhold information were properly invoked, id. at 12, the Court denied the defendant's

motion for reconsideration.  Id.

In conjunction with its current motion for summary judgment, the Bureau has submitted

supplemental declarations that it believes "contain the specificity and detail requested by the

Court in its February 25, 2010 Order."  Def.'s Renewed Mot. at 3.  The defendant makes clear,

however, that it has conducted no additional searches for responsive records.  Id. at 2.

## II.  STANDARD OF REVIEW

Courts will grant a motion for summary judgment under Rule 56(c) of the Federal Rules

of Civil Procedure if "the pleadings, the discovery and disclosure materials on file, and any

affidavits, show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  To prevail on a motion for

summary judgment in a case brought under the FOIA when the adequacy of an agency search is

challenged, the "defending 'agency must show beyond material doubt that it has conducted a

search reasonably calculated to uncover all relevant documents.'"  Morley v. C.I.A., 508 F.3d

1108, 1114 (D.C. Cir. 2007) (quoting Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1351

(D.C. Cir. 1983)); see Summers v. U.S. Dep't of Justice, 140 F.3d 1077, 1080 (D.C. Cir. 1998)

(explaining the "peculiar nature of the FOIA" as it relates to summary judgment review).  And

courts apply a reasonableness test to determine the adequacy of a search methodology.  Morley,

508 F.3d at 1114.  Thus, a "FOIA search is sufficient if the agency makes 'a good faith effort to

conduct a search for the requested records, using methods which can be reasonably expected to

produce the information requested.'"  Baker & Hostetler LLP v. U.S. Dep't of Commerce, 473

F.3d 312, 318 (D.C. Cir. 2006) (quoting Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995)).  "Agency affidavits [submitted in FOIA cases] are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'"  SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal citation omitted).  Accordingly, once the agency has "shown that its search was reasonable, the burden is on the requester to rebut that evidence by a showing that the search was not conducted in good faith."  Moore v. Aspin, 916 F. Supp. 32, 35 (D.D.C. 1996) (citing Miller v. U.S. Dep't of State, 779 F.2d 1378, 1382).  This rebuttal can be done either by contradicting the defendant's account of the search procedure or by presenting evidence showing the agency's bad faith.  Moore, 916 F. Supp. at 35-36.

When an agency seeking "summary judgment on the basis of . . . agency affidavits" asserts through those affidavits that it has properly withheld documents or parts of a document pursuant to a FOIA exemption, the agency's affidavits must "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).  Further, consistent with congressional intent tilting the scales in favor of full disclosure, courts impose a substantial burden on an agency seeking to avoid disclosure based on the FOIA exemptions.  Morley, 508 F.3d at 1114 (internal citations and quotations omitted).  Consequently, "exemptions from disclosure must be narrowly construed . . . and conclusory and generalized allegations of exemptions are unacceptable."  Morley, 508 F.3d at 1114-15 (citing Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency, 610 F.2d 824, 830 (D.C. Cir. 1979)) (internal quotation marks omitted).

Nonetheless, "[w]hen disclosure touches upon certain areas defined in the exemptions, . . . the [FOIA] recognizes limitations that compete with the general interest in disclosure, and that, in appropriate cases, can overcome it."[3]  Nat'l Archives and Records Admin. v. Favish, 541 U.S. 157, 172 (2004).

## III.  ANALYSIS

A.  The Adequacy of the Bureau's Search

The defendant submits that its supplemental explanations of the search conducted in response to the plaintiff's FOIA request contain the level of specificity and detail requested by the Court in its February 25, 2010 Order.[4]  Def.'s Renewed Mot. at 2, 3; see id., Exhibits ("Exs.") 2-3, 5-16.  The plaintiff, on the other hand, argues that the Bureau "has not conducted a reasonable and adequate search for documents," Pl.'s Opp'n at 5, but offers no critique of the search methods employed by the Bureau and provides little explanation as to why the Court should find the Bureau's search inadequate.  Instead, the plaintiff states that of the "11,000[-]plus pages of materials [produced by the Bureau], most are useless due to . . . disorganization, incompleteness and limitless redactions."  Id.  Additionally, the plaintiff avers that "[a]fter careful review of the items received," id. at 6, it knows the response to its "request is incomplete. . . . [because t]here are numerous instances throughout the 11,000-plus pages that do not provide the information that was requested in 2003."  Id.  The plaintiff seems, at least in part, to base its

---

[3]      Where an agency establishes the applicability of an exemption, it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record.  Assassination Archives and Research Ctr. v. CIA, 334 F.3d 55, 58 (D.C. Cir. 2003) (citing 5 U.S.C. § 552(b)).  Segregability would now not seem to be an issue because the government has already made that assessment.  Def's Reply at 14. However, the government's obligation to assess segregability is ongoing and segregation could be necessary if, for example, the Court ultimately determines that some of the non-disclosed information does need to be disclosed.  See Sussman v. U.S. Marshals Serv., __ F. Supp. 2d __, __, 2010 WL 3452343, *5 (D.D.C. September 1, 2010) (considering whether redacted information was reasonably segregable from information to which an exemption applied).

[4]      The February 25, 2010 Order stated that the declarations then before the Court "fail[ed] to identify any search terms used, specify how the search was conducted, or detail with specificity what the search yielded."  Id. at 9.

argument that the search remains incomplete on its possession of several litigation reports prepared by the Bureau. See Pl.'s Opp'n at 6 ("To support its assertion, PLN is in possession of what are commonly known as 'litigation reports.' . . . It is clear from the 1996 and 1997 litigation reports that someone is keeping track of the [Bureau's] litigation records."); Pl.'s Resp. at 6 ("These reports were used by Plaintiff as a 'checks and balances' to [e]nsure, in part, that the [Bureau] was complying with [the] FOIA request."). The plaintiff's opposition to the adequacy of the Bureau's search is therefore seemingly rooted in the purported disorganization of the documents it received and its belief, formed after its review of the several copies of the Bureau's litigation reports it received, that additional responsive documents have not been produced.

While still not providing the level of specificity or detail a model agency FOIA response should contain, the supplemental declarations submitted by the defendant do contain sufficient detail to "afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow [this Court] to determine if the search was adequate." Oglesby v. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990). One improvement over the earlier submissions is that all of the supplemental declarations explain the search methodologies employed by the various Bureau offices in response to the plaintiff's FOIA request. For example, one declarant who previously merely stated that she "utilized a pre-formatted search created by computer staff responsible for maintaining the database" in response to the plaintiff's FOIA request, Def.'s Mot. for Recon., Ex. 4 (Declaration of Kimberly E. Blow) ("Blow Decl.") ¶ 4, stated in her new declaration that "[t]he only responsive records maintained in [the] Litigation Branch of the Office of [the] General Counsel would be located in Content Manager[,] which is a computer database that contains information about cases against the Bureau," Def.'s Renewed Mot., Ex. 5 (Declaration of Kimberly Blow) ("Blow Decl. II") ¶ 3, that "[t]he only means of creating an accurate and

complete list of responsive records maintained in [the] Central Office was to review Content Manager," id., Ex. 5 (Blow Decl. II) ¶ 4, and that she "conducted this review by utilizing the pre-formatted search criteria for searching Content Manager" for the period of time requested by the plaintiff, id., Ex. 5 (Blow Decl. II) ¶ 5. Ms. Blow also indicated that she "restricted" her search to those cases that had "settled." Id., Ex. 5 (Blow Decl. II) ¶ 5. The Court understands the term "settled" to mean resolved or completed, not simply that the matter was resolved with an out-of-court settlement. This understanding finds support in another declarant's indication that the Bureau's databases make no distinction between monetary and non-monetary settlements, Def.'s Renewed Mot., Ex. 7 (Declaration of Kathleen White) ("White Decl. II") ¶ 5 ("Lawpack does not make the distinction as to whether settlements were monetary or non-monetary."), coupled with her explanation that she "understood that the [plaintiff's FOIA] request . . . sought copies of all documents showing all money paid by the Bureau of Prisons for lawsuits and claims against it." Id., Ex. 7 (White Decl. II) ¶ 2 (emphasis added). Moreover, the plaintiff has not challenged the adequacy of the defendant's search on the basis that it inappropriately limited its search to documents resulting from out-of-court settlements.

Likewise, other declarants have now also supplemented their prior declarations by including the search terms they employed in conducting the electronic database searches they made. See Def.'s Renewed Mot., Ex. 6 (Declaration of Renee Brinker-Fornshill) ("Fornshill Decl. II") ¶ 5 (explaining that she "conducted a review by searching in the electronic tort claim database for the words 'approved' and 'payment'"); id., Ex. 7 ("White Decl. II") ¶ 5 ("I conducted this review by searching Lawpack for all EEO complaints that had the description of 'SETT,' which indicates 'Settlement,' from January 1, 1996 through and including July 31, 2003."). Further, as many of the potentially responsive records were maintained in only paper format, the

Court appreciates that the declarants can provide only limited detail regarding their physical examination of paper records. In other words, there are only so many ways to describe the review of indices cataloging boxes of documents and the actual act of retrieving and reviewing files stored in boxes; therefore, the level of detail required to explain the process employed to review paper documents understandably may not rise to the level necessary to describe the examination of electronic databases in which a variety of search methods or search terms might have to be used. In any event, in regard to the search for and review of the actual copies of the documents, the thoroughness of the search has been adequately described. See, e.g., Def.'s Renewed Mot., Ex. 9 (Declaration of Cynthia Lawler) ("Lawler Decl. II"), ¶¶ 1, 2, 5 (noting that as a Paralegal Specialist, she understood the request sought copies of "all documents showing all money paid by the Bureau for lawsuits and claims against it," explaining that she "conducted this review by searching the hard copies of the . . . files. . . . [then] reviewed each file to determine accurate dates and relevancy to the request," and concluding that "the relevancy of the documents was confirmed by the attorneys in my office"); id., Ex. 10 (Declaration of Dorcia Casillas) ("Casillas Decl. II") ¶ 5 ("My office conducted this review by pulling each case file and reviewing the file for decisions and settlements that were issued during the specified period of time."). Finally, and perhaps most importantly, many of the declarants include clarified explanations which disclose that the individual searches were commenced by relying on the Bureau's litigation reports to create lists of potentially responsive documents. See, e.g., id., Ex. 12 (Second Declaration of Michael D. Tafelski) ("Tafelski Decl. II") ¶ 4 (discussing the development of a list based on the use of monthly reports reflecting cases in which a settlement or a judgment occurred); id., Ex. 13 (Declaration of Alecia S. Sillah) ("Sillah Decl.") ¶ 4 ("The only means of creating an accurate and complete list of responsive records maintained in the

Mid-Atlantic Regional Office, was to review the [Office's] Monthly Reports. . . . Each monthly report provides the litigation and tort claim settlements paid to a complainant/plaintiff."). The Court is thus satisfied that the defendant's employees commenced their searches at a logical starting point, and from there proceeded to collect all responsive documents.

The Court agrees with the plaintiff "that someone is keeping track of the [Bureau's] litigation records." Pl.'s Resp. at 6. This tracking of litigation not only enabled the Bureau to respond to the plaintiff's FOIA request, but also shaped the agency's response, which the Court now finds was adequate and "reasonably calculated to uncover all relevant documents."[5] Morley, 508 F.3d at 1114 (internal citation omitted). And, it must be remembered that "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis in original). Thus, the plaintiff's speculation, which stems from its possession of the monthly reports, is insufficient to rebut the Bureau's affidavits showing that its search for responsive documents was adequate.

---

[5]     The defendant differentiates between "monthly reports," which simply list litigation activity, and "litigation reports," which are reports "prepared by the [Bureau] for Assistant United States Attorneys as a result of litigation filed against the [Bureau] and represent[] the agency's legal analysis of the merits of a case, proposed legal theories concerning a case, and proposed resolutions of a case." Def.'s Reply at 9 (internal citation omitted). The defendant asserts that although the plaintiff may have "erroneously received some [l]itigation [r]eports during the release of information," id., it did not request litigation reports in its FOIA request and the documents attached to the plaintiff's opposition are monthly, rather than litigation, reports. Id. The defendant further asserts that even if the plaintiff had requested the litigation reports, Exemption 5 of the FOIA has been construed to exempt such documents as privileged attorney work product. Id. at 9-10. Because the plaintiff does not appear in its opposition and cross-motion to be seeking to obtain either litigation or monthly reports from the Bureau, and instead mentions such reports only as a means of cross checking the information produced by the Bureau, Pl.'s Opp'n at 6, and because the defendant has not withheld any documents pursuant to Exemption 5 (or so the Court understands after reviewing the Bureau's Vaughn index), the Court need not address whether these reports must be disclosed to the plaintiff.

Most importantly for the Court's current analysis, however, is the fact that the plaintiff has failed to show what significance, if any, its possession of the monthly reports has on the adequacy of the search. In other words, the plaintiff's mere possession of some of the monthly reports does not contradict the Bureau's account of its search or raise evidence of the defendant's bad faith, and this possession is therefore insufficient to overcome the presumption of good faith accorded to the Bureau's affiants. See SafeCard Servs., Inc., 926 F.2d at 1200 ("Agency affidavits [submitted in FOIA cases] are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" (internal citation omitted)).

Safecard Servs., 926 F.2d at 1200. Accordingly, because the plaintiff has not presented any

evidence that contradicts the agency's account of its search—indeed, the plaintiff's possession of

the monthly reports supports the agency's description of its search procedure—and does not

"rais[e] evidence of the defendant's bad faith," Moore, 916 F. Supp. at 35-36, the defendant's

renewed motion for summary judgment is granted insofar as it asks the Court for summary

judgment on the adequacy of the search, and the plaintiff's cross-motion challenging the

adequacy of the Bureau's search is denied.

## B. The Propriety of the Bureau's Reliance on the FOIA Exemptions

The defendant's Vaughn index,[6] submitted for the first time five years into this litigation

in conjunction with its Renewed Motion for Summary Judgment, indicates that the defendant has

redacted documents based on various combinations of Exemptions (2) Low, (6), and (7)(C).[7]

Accordingly, the Court will consider each categorical grouping in turn, noting at the outset that

"[i]f the Court determines that information properly is withheld under one exemption, it need not

determine whether another exemption applies to that same information," Coleman v. Lappin, 607

F. Supp. 2d 15, 23 (D.D.C. 2009) (citing Simon v. U.S. Dep't of Justice, 980 F.2d 782, 785 (D.C.

Cir. 1992)), while bearing in mind "that [the] FOIA mandates a 'strong presumption in favor of

---

[6]     Vaughn indices are a mainstay of FOIA proceedings at the district court level in this Circuit. "In Vaughn
[the District of Columbia Circuit] recognized the burden placed upon the district court when the government fails to
establish with sufficient specificity the basis of claimed exemption from FOIA disclosure of specific documents. To
alleviate that burden, [the Circuit] established the requirement for a Vaughn index so that a district judge could
examine and rule on each element of the itemized list." Summers, 140 F.3d at 1080-81 (internal citation omitted).
Although "[w]e have never required repetitive, detailed explanations for each piece of withheld information,"
Morley, 508 F.3d at 1122, "[t]he Vaughn index must 'adequately describe each withheld document or deletion from
a released document,' and 'must state the exemption claimed for each deletion or withheld document, and explain
why the exemption is relevant.'" Summers, 140 F.3d at 1080 (quoting Founding Church of Scientology, 603 F.2d at
949).

[7]     Although a "categorical approach" may sometimes be appropriate in a Vaughn index, this does not change
the fact that "substance is paramount." Defenders of Wildlife v. U.S. Dep't of Ag., 311 F. Supp. 2d 44, 58 (D.D.C.
2004). Thus, declarations offered to support a categorical Vaughn index must still "contain adequate substance to
determine whether [the agency] properly withheld records." Id.

disclosure,'" Multi AG Media LLC v. U.S. Dep't of Ag., 515 F.3d 1224, 1227 (D.C. Cir. 2008)

(citing Nat'l Ass'n of Homebuilders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002)).

      1.      Exemption 6

      Exemption 6 protects from disclosure "personnel and medical files and similar files the

disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5

U.S.C. § 552(b)(6).  "The term 'similar files' is construed broadly and is 'intended to cover

detailed Government records on an individual which can be identified as applying to that

individual.'" Concepcion v. FBI, 606 F. Supp. 2d 14, 35 (D.D.C. 2009) (quoting U.S. Dep't of

State v. Wash. Post Co., 456 U.S. 595, 602 (1982)). "The threshold is fairly minimal, such that

all information which applies to a particular individual is covered by Exemption 6, regardless of

the type of file in which it is contained." Concepcion, 606 F. Supp. 2d at 35 (internal quotations

and citation omitted). An agency's invocation of Exemption 6 demands a determination

> whether . . . disclosure would compromise a substantial, as opposed to a
> de minimis, privacy interest.  If no significant privacy interest is
> implicated (and if no other Exemption applies), [the] FOIA demands
> disclosure. . . . If, on the other hand, a substantial privacy interest is at
> stake, then [the Court] must weigh that privacy interest in non-disclosure
> against the public interest in release of the records in order to determine
> whether, on balance, disclosure would work a clearly unwarranted
> invasion of personal privacy.

Nat'l Ass'n of Retired Fed. Emps. v. Horner, 879 F.2d 873, 874 (D.C. Cir. 1989) (internal citation

omitted).  The Supreme Court has made clear that Exemption 6 is designed to protect personal

information, even if it is not embarrassing or of an intimate nature.  Id. at 875 (citing U.S. Dep't

of State v. Washington Post Co., 456 U.S. 595, 600 (1982)).  The agency, however, bears the

burden to persuade the Court that the Exemption applies.  Consumers' Checkbook, Ctr. for the

Study of Servs. v. U.S. Dep't of Health and Human Servs., 554 F.3d 1046, 1050 (D.C. Cir.

2009).

The Bureau's <u>Vaughn</u> index identifies four categories of documents containing redactions based solely on Exemption 6.[8]  <u>See</u> <u>Vaughn</u> index.  These categories are: (1) Labor Management Relations-Merit Systems Protection Board-Appeal Form; (2) Labor Law-Settlement Agreements; (3) Labor Law-Judgments; and (4) Labor Law-Judgments-Joint Stipulation for Entry of Final Judgment.  <u>Vaughn</u> index at 8-9.[9]  The index shows that the information redacted in the first category is "all social security numbers and all personal psychiatric/medical information," whereas the remaining three categories merely list the redaction of "all social security numbers."  Clearly, an individual's social security number has a specific relationship to that individual, thus meeting the threshold requirement for Exemption 6 protection.  <u>See</u> <u>Concepcion</u>, 606 F. Supp. 2d at 36.  Although the Bureau states only that "the disclosure of social security numbers . . . would constitute an unwarranted invasion of privacy," <u>Vaughn</u> index at 8, the Court finds that the privacy interest in one's social security number is self-evident.  <u>See</u> <u>Taitz v. Obama</u>, __ F. Supp. 2d. __, __, 2010 WL 4985895, * 3 (D.D.C. December 9, 2010) (explaining that in denying the plaintiff's first motion for reconsideration, the Court noted that social security numbers are not subject to disclosure under the FOIA).  Additionally, the plaintiff does not contest the redaction of social security numbers.  <u>See</u> Pl.'s Opp'n at 12 (acknowledging that the defendant properly redacted social security numbers).  Accordingly, because disclosure of the social security numbers "would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. §

---

[8]     The Court notes that the defendant's <u>Vaughn</u> index states that Exemption 6 was used where disclosure would "constitute an unwarranted invasion of personal privacy."  <u>Vaughn</u> index at 8.  This is not the correct standard in evaluating disclosure under Exemption 6; the FOIA expressly indicates that disclosure must be made unless doing so would result in a "<u>clearly</u> unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6) (emphasis added).  Thus, for Exemption 6 to apply, disclosure must be more than simply unwarranted.  <u>See</u> <u>Beck</u>, 997 F.2d at 1489 (explaining that the use of the adverb "clearly" in Exemption 6 gives rise to a requirement that disclosure constitute an actual, rather than just a likely, invasion of privacy).

[9]     Because the Bureau's <u>Vaughn</u> index is not paginated, the Court will refer to the pages in the order in which they appear on the Court's docket.

552(b)(6), and would not reveal to the public "what [its] government is up to," U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 773 (1989), the Court concludes that the redaction of social security numbers is a proper withholding under Exemption 6. See Nat'l Ass'n of Retired Fed. Emps., 879 F.2d at 879 (clarifying that "unless the public would learn something directly about the workings of the Government by knowing the [requested information, its] disclosure is not affected with the public interest" and holding that "we need not linger over the balance; something, even a modest privacy interest, outweighs nothing every time") (emphasis in original); Reporters Comm. for Freedom of Press, 489 U.S. at 773 (determining that disclosing "information about private citizens . . . that reveals little or nothing about an agency's own conduct" does not serve a relevant public interest under the FOIA).

Unlike the social security numbers, however, the Court currently lacks sufficient information to determine whether the redaction of "all personal psychiatric/medical information" from the Labor Management Relations-Merit Systems Protection Board-Appeal Forms is appropriate under Exemption 6. While it is true that "[i]n the FOIA context, courts have repeatedly held that medical records are exempt from disclosure because '[t]he privacy interest in [medical records] is well recognized, even under the stringent standard of exemption 6,'" Marzen v. Dep't of Health and Human Servs., 632 F. Supp 785, 811 (N.D. Ill. 1986) (quoting Bast v. Dep't of Justice, 665 F.2d 1251, 1254 (D.C. Cir. 1981)), the Bureau's Vaughn index does not offer a sufficiently detailed description of the "personal psychiatric/medical information" withheld to enable the Court to conclude that the withholding was appropriate under exemption 6.

In a number of other FOIA cases, the parties have agreed that the requested information at issue was covered by the term "medical files." See Plain Dealer Pub. Co. v. Dep't of Labor,

471 F. Supp. 1023, 1026-27 (D.D.C. 1979) (identifying other cases and observing that the parties in the case agreed that it was clear that the documents could be considered medical files). Here, however, the parties are not in agreement regarding the Bureau's use of exemption 6 to withhold "all personal psychiatric/medical information." Thus, while the Court suspects the Bureau's redactions were likely proper given the substantial privacy interests that exist in one's medical and psychiatric histories and information, the Court cannot simply take the Bureau's word for it. In other words, by merely asserting in conclusory terms that Exemption 6 "was applied to protect the personal psychiatric and medical records of individuals who filed a labor grievance against the [Bureau]," Vaughn index at 8, the Bureau has not "describe[d] the documents and the justifications for nondisclosure with reasonably specific detail," Military Audit Project, 656 F.2d at 738. While the assertion that it has withheld "all personal psychiatric/medical information" is a good start, the Vaughn index must provide greater specificity concerning how the redacted information falls within that category.[10]

    2.    <u>Exemptions 6 & 7(C)</u>

The next categories of responsive records identified by the Bureau contain redactions based on a combination of Exemptions 6 and 7(C). Exemption 7(C) allows an agency to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Thus, records may properly be withheld under Exemption 7 if the agency establishes that the records were

---

[10]     See Plain Dealer Pub. Co., 471 F. Supp. at 1027 n.5 (explaining that documents in the "medical files" category include: "physician's letters regarding claimant's condition, progress and ability to work; physician's letters regarding the cause of claimant's disability; a questionnaire regarding claimant's disability; a letter from the [m]edical [d]irector to claimant's physician regarding claimant's treatment; a clinical psychologist's evaluation of claimant; certificates of medical examinations; and doctor's statements.")

compiled for law enforcement purposes and the material satisfies one of the subparts of Exemption 7—here, subpart (C).[11] Pratt v. Webster, 673 F.2d 408, 413 (D.C. Cir. 1982). A court determining whether records were compiled for law enforcement purposes must "focus on how and under what circumstances the requested files were compiled, and whether the files sought to relate to anything that can fairly be characterized as an enforcement proceeding." Jefferson v. U.S. Dep't of Justice, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (internal quotations and citations omitted). As with Exemption 6, "an agency may not withhold records under exemption 7(C) solely because disclosure would infringe legitimate privacy interests, but must balance privacy interests against the public's interest in learning about the operations of its government." Campbell v. U.S. Dep't of Justice, 164 F.3d 20, 33 (D.C. Cir. 1998).[12]

The defendant's Vaughn index denotes five categories of documents containing redactions that the defendant claims are substantiated by Exemptions 6 and 7(C). The Bureau has titled those five categories: (1) Tort Claim Form SF – 95; (2) Tort Claim Judgments; (3) Tort Claim Vouch for Payment; (4) Litigation District Court Complaints; and (5) Litigation District Court Settlement Agreements and/or Settlement Stipulations. These five categories contain redactions of, in some combination of the following, "all personal names, all personal addresses, all personal telephone numbers, all personal Social Security Numbers, and all personal banking information." Vaughn index at 1-4. Again, much like the "personal psychiatric/medical

---

[11]     Subpart (C) pertains to the unwarranted invasion of privacy. Specifically, the FOIA provides for the withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

[12]     "'Exemptions 6 and 7(C), though similar, are not coextensive.'" Coleman, 607 F. Supp. 2d at 22 (quoting Beck v. U.S. Dep't of Justice, 997 F.2d 1489, 1492 (D.C. Cir. 1993)). Generally, the language of Exemption 7(C) is broader than that of Exemption 6. Coleman, 607 F. Supp. 2d at 22; see Nat'l Archives and Records Admin. v. Favish, 541 U.S. 157, 165-66 (distinguishing the level of privacy invasion that must be shown under Exemptions 6 and 7(C), respectively).

information" discussed previously, the Court suspects that it would be an invasion of privacy to produce the contact information (e.g., phone numbers, addresses, etc.) of individuals who work for the Bureau, but the defendant simply has not properly made the case for non-disclosure.

The Bureau's "rationales" for the use of the Exemptions in the five categories all strike the same tone. For example, with respect to Tort Claim Judgments, the <u>Vaughn</u> index states:

> Exemption[s] (b)(6) and (b)(7)(C) were applied to protect the names of individuals who filed a tort claim and the names of [Bureau] staff who filed a tort claim. Exemption[s] (b)(6) and (b)(7)(C) were applied to protect the personal addresses of [Bureau] staff who filed a tort claim. Exemption (b)(6) was applied to protect the Social Security Numbers of individuals and [Bureau] staff who have filed a tort claim. The disclosure of [p]ersonal [n]ames, [p]ersonal [a]ddresses, and [p]ersonal Social Security Numbers would constitute an unwarranted invasion of personal privacy.

<u>Vaughn</u> index at 2. The Bureau's affidavits fail to shed further light on its use of Exemptions 6 and 7(C) in the above-listed five categories of documents. Only one of the Bureau's affiants speaks to the use of these FOIA Exemptions, and he states simply that "[i]n response to the voluminous amount of responsive documents, the number of offices that provided responsive records, and the nature of the exemptions applied, I determined that the <u>Vaughn</u> index would be arranged by categories with the specific type of information redacted in each category and the reasons why the exemptions were applied." Def.'s Reply, Ex. 3 (Third Supplemental Declaration of Wilson J. Moorer) ¶ 7. Review of the defendant's <u>Vaughn</u> index, however, leads to the conclusion that Mr. Moorer's "reasons why the exemptions were applied" are too broad, too general, and therefore insufficient to support the defendant's redactions. <u>See</u> <u>Vaughn</u> index at 1-2 (explaining that "[e]xemption (b)6 and (b)7(C) were applied to protect the names of individuals who filed a tort claim and the names of BOP staff who filed a tort claim," and concluding that "the disclosure of personal names . . . would constitute an unwarranted invasion of personal privacy"). Further, in its Renewed Motion the Bureau merely states that the bases for the

"exemptions were set forth in Defendant's Cross Motion for Summary Judgment and [Opposition], and are incorporated herein."  Def.'s Renewed Mot. at 3.

Review of the defendant's initial motion shows that although the Bureau correctly cites the applicable legal authority and sets forth the proper tests to be used by the Court in determining whether an agency's reliance on the FOIA's Exemptions was properly asserted, it fails to yield a description of the particular documents and the particular corresponding justifications for redacting those documents with reasonably specific detail.  Moreover, what minimal description the Bureau does provide about some of the the redacted information strikes the Court as the type of information that could possibly be most relevant to the reasons motivating the plaintiff's FOIA request.  See, e.g., Def.'s July 2008 Mot. at 8-9 (explaining that the redacted information included "conclusions drawn from completed investigations" and "[o]ther redactions were of information relating to the core of the EEO complaint and the corrective action requested"). Thus, while the Bureau has repeatedly provided the Court with the law it must apply, it has not provided the Court with sufficient specificity of the underlying facts needed to appropriately apply that legal authority to the case at hand.  For example, because the District of Columbia Circuit has "consistently held that an individual has a substantial privacy interest under FOIA in his financial information," Consumers' Checkbook, 554 F.3d at 1050, the Court  could perhaps determine that the defendant's redaction of "all personal banking information" in the category of documents called "Tort Claim Voucher for Payment" was a proper use of Exemption 6 if only it knew what the term "all personal banking information" consisted of and could therefore undertake the required balancing; as it stands, however, the Court cannot determine whether this description was applied narrowly to cover information such as account numbers, or was applied broadly resulting in the redaction of settlement amounts

deposited into a claimant's account by the Bureau to settle or satisfy claims brought against it. In a situation in which the Court is tasked with "provid[ing] statements of law that are both accurate and sufficiently detailed to establish that the careful [d]e novo review prescribed by Congress [in the FOIA context] has taken place," Founding Church of Scientology, 603 F.2d at 950, the justifications underlying the redaction must be provided in reasonably specific detail, and not in conclusory or generalized terms. Yet, the Bureau merely provides the Court with justifications such as: "The above information, redacted by the BOP pursuant to Exemption 7(C), is personal in nature and the public's need to know does not outweigh this interest." Def.'s Reply at 19. Thus, because the Bureau has not sufficiently established—in any of its filings—that the documents comprising the above-listed five categories of documents were compiled for law enforcement purposes or provided the Court any facts from which it could balance the public and private interests at stake in regard to disclosure of the redacted information, the Court cannot categorically conclude that the defendant has properly invoked Exemptions 6 or 7(C) as to the five categories listed in the first four pages of its Vaughn index.[13] See Morley, 508 F.3d at 1122 (describing its ruling in King v. U.S. Dep't of Justice, 830 F.2d 210, 219, 224 (D.C. Cir. 1989), where the court held, in discussing the requirements of a Vaughn index, that "when an agency seeks to withhold information, it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply," and that a "categorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate"); Campbell, 164 F.3d at 33 (observing that to "justify

---

[13]       To the extent that the Bureau relies only on Exemption 6 to withhold the social security numbers encompassed in these five categories, the Court need not evaluate its applicability again, having already found that they are exempt from disclosure under Exemption 6.

summary judgment under exemption 7, the [agency] must explain why each withheld document or set of closely similar documents relate to a particular law enforcement purpose").

      3.      <u>Exemptions 2 Low, 6 & 7(C)</u>

Finally, the Bureau lists four categories of documents for which it made redactions pursuant to Exemptions 2 Low, 6, and 7(C).  Exemption 2 allows for the withholding of documents that are "related solely to the internal personnel rules and practices of an agency."[14]  5 U.S.C. § 552(b)(2).  Exemption 2 applies if the information sought meets two criteria.  <u>Coleman</u>, 607 F. Supp. 2d at 21.  First, such information "must be used for predominantly internal purposes."  <u>Id.</u> (internal quotation and citation omitted).  Second, "the agency must show either that disclosure may risk circumvention of agency regulation, or that the material relates to trivial administrative matters of no genuine public interest."  <u>Id.</u> (internal quotations and citation omitted).

The Bureau has classified these final four categories in its <u>Vaughn</u> index, in which it invokes Exemptions 2, 6, and 7, as: (1) General Correspondence – Emails, Fax Cover Sheets, Letters; (2) Merit Systems Protection Board – Settlement Agreements; (3) Equal Opportunity Commission-Settlement Agreements, Order of Dismissal, Settlement or Compromise Agreement, Notice of Settlement, Agency Offer of Resolution, and/or Stipulation of Dismissal; and (4) Complaint of Discrimination, Form DOJ 201.  The information redacted in these categories consists of "[a]ll [p]ersonal [n]ames, [a]ll [p]ersonal [a]ddresses, [a]ll [p]ersonal

---

[14]      Although the FOIA itself does not provide further subdivision of exemption 2, courts have adopted a 2(Low) component and a 2(High) component of the exemption.  <u>See</u> <u>Concepcion v. FBI</u>, 606 F. Supp. 2d 14, 31 (D.D.C. 2009) ("Predominantly internal documents the disclosure of which would risk circumvention of agency statutes are protected by the so-called high 2 exemption.  High 2 exempt information is not limited to situations where penal or enforcement statutes could be circumvented.  If the material at issue merely relates to trivial administrative matters of no genuine public interest, it is deemed low 2 exempt material." (internal quotations and citations omitted)).

[t]elephone [n]umbers, [a]ll [p]ersonal Social Security Numbers, and EEOC file/[a]gency file numbers," Vaughn index at 5, because "disclosure [of] personal names, addresses, telephone numbers, social security numbers and EEOC file numbers would constitute an unwarranted invasion of personal privacy."[15] Id. It might well be that the information is exempt from disclosure, but again, for the same reasons explained above, the defendant has failed to "describe the documents and the justifications for nondisclosure with reasonably specific detail [and] demonstrate that the information withheld logically falls within the claimed exemption," Military Audit Project, 656 F.2d at 738; instead, it has offered only "conclusory and generalized allegations of exemptions." Morley, 508 F.3d at 1114-15. Moreover, the Bureau has made no attempt at showing that the information withheld under Exemption 2—apparently the EEOC file numbers—was used for predominantly internal purposes or "that disclosure may risk circumvention of agency regulation, or that the material relates to trivial administrative matters of no genuine public interest." Coleman, 607 F. Supp. 2d at 21 (internal citation omitted). Indeed, in a case such as this one where the number of responsive pages produced climbs above 11,000, the EEOC file numbers may very much be in the public interest as a means for the effective organization and dissemination of the requested information. See Prison Legal News v. Lappin, 436 F. Supp. 2d 17, 25 (D.D.C. 2006) (concluding that "the plaintiff ha[d] established that the requested information is likely to contribute to public understanding of government operations or activities because it has not reached a threshold level of dissemination"). In other words, the EEOC file numbers may aid the plaintiff in organizing, understanding, and disseminating the information contained in those files. In any event, it is the Bureau's burden to

---

[15]    The Court has already decided the issue as to the disclosure of the social security numbers, concluding that the Bureau's redaction of social security numbers is an appropriate use of Exemption 6.

convince the Court that the Exemptions invoked apply, <u>Consumers' Checkbook</u>, 554 F.3d at 1050, and the Court is so far unconvinced.

## C.   The plaintiff's Organizational Request

The plaintiff now also asks the Court to issue an Order directing the Bureau to provide it "with a spreadsheet, showing the dates, types of cases, locations, how resolved, and amounts paid." Pl.'s Opp'n at 14.  The defendant counters that it has no responsibility under the FOIA to organize the responsive records in any particular manner or provide explanatory material to accompany the responsive records.  Def.'s Reply at 11.  The defendant also observes that the plaintiff cites no legal authority supporting its request to provide responsive documents in a particular format.  <u>Id.</u>  Because the Court agrees with the defendant that the FOIA does not require agencies to "organize documents to facilitate FOIA responses," <u>Id.</u> (quoting <u>Goulding v. I.R.S.</u>, 1998 WL 325202, No. 97 C 5628, at * 5 (N.D. Ill. June 8, 1998), the Court will not direct the defendant to provide the plaintiff with the requested spreadsheet or to organize the documents in any specific manner.

## IV.  CONCLUSION

For the foregoing reasons, the Court grants summary judgment to the defendant regarding the adequacy of its search for responsive documents, and to the plaintiff regarding the defendant's use of the FOIA exemptions (except, of course, as to the defendant's use of Exemption 6 to redact social security numbers).  The plaintiff's frustration with the long-standing, unresolved status of its FOIA request is understandable, <u>see</u> Pl.'s Opp'n at 5, and the Court hopes it has made clear its expectations of the Bureau so that this matter can finally be brought to closure.  However, if any ambiguity exists, the Court reiterates that in responding to this Opinion and clarifying its reliance on any of the FOIA's Exemptions, the Bureau must

provide "additional explanation about the relative weight of the competing public and private interests at stake," Campbell, 164 F.3d at 33, in a sufficiently detailed manner with the goal of enabling the Court to assess whether the exemptions are being properly asserted.  And considering the age of this case, the Court will issue a schedule for the defendant to bring itself into compliance with the requirements of Vaughn and its progeny to avoid an order requiring the disclosure of the withheld information or the imposition of monetary sanctions.  Further delay will not be tolerated in bringing this case to closure within the next several months.[16]

 

     **SO ORDERED** this ___ day of _____, 2010.


                         _____/s/_____
                         Reggie B. Walton
                         United States District Judge

---

[16]     An Order consistent with this Memorandum Opinion will be issued by the Court.